MAUREEN E. MCCLAIN (State Bar No. 062050)
Email: mcclain@kmm.com
MATTHEW P. VANDALL (State Bar No. 196982)
Email: vandall@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
One Post Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 421-3111
Facsimile: (415) 421-0938

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

ORIGINAL FILED
NOV 20 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

MHP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

Plaintiff,

v.

ALTA BATES SUMMIT MEDICAL CENTER; and DOES 1-20,

Defendants.

CASE NO. CV 07 5863
(Alameda County Superior Court Case No. RG 07352596)

**DEFENDANT'S NOTICE OF REMOVAL AND CERTIFICATION OF INTERESTED PARTIES**

**28 U.S.C. §§ 1331 & 1441(b)**
(Federal Question Jurisdiction)

**COMPLAINT FILED:** October 22, 2007
**TRIAL DATE:** No date set.

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Alta Bates Summit Medical Center (the "Medical Center") hereby removes to this Court the state court action described below and filed by Plaintiff Charlotte Kirton ("Plaintiff"). The statutory basis for removal is federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b).

1. On October 22, 2007, an action was commenced in the Superior Court of California in and for the County of Alameda, entitled Charlotte Kirton v. Alta Bates Summit Medical Center; and Does 1-20, Case No. RG 07352596 (the "Complaint"). True and correct copies of the summons and Complaint are attached as **Exhibit A.**

2. Plaintiff served the Medical Center with the summons and Complaint on October 25, 2007, by personal service. See Exhibit A at p. 1. Service was therefore complete as of that date. True and correct copies of the papers served on the Medical Center and contained in the state court's files (other than the summons and Complaint) are attached hereto as **Exhibit B.**

3. This Notice of Removal and Certification of Interested Parties Action is being filed within 30 days of the Medical Center's initial receipt of the Complaint. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999); Big B Automotive Warehouse Distrs., Inc. v. Cooperative Computing, Inc., 2000 U.S. Dist. LEXIS 16363, *5-*6 (N.D. Cal. 2000).

4. This action is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1331, and is one which may be removed to this Court by the Medical Center pursuant to the provisions of 28 U.S.C. §1441(b), in that the employment relationship between Plaintiff and the Medical Center is governed by a collective bargaining agreement, described below, and Plaintiff's third cause of action pleads a breach of the implied covenant of good faith and fair dealing (purportedly contained in an implied employment agreement between Plaintiff and the Medical Center (see Compl., ¶ 10)), which is preempted by Section 301 of the Labor Management

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

Relations Act, 29 U.S.C. § 185 (the "LMRA"). See Kirton v. Summit Medical Center, 982 F. Supp. 1381, 1386 (N.D. Cal. 1997) (upholding removal of Ms. Kirton's prior claims against Summit Medical Center (a predecessor entity of the Medical Center), including her previously asserted claim for breach of an implied covenant, on the ground that the implied covenant claim was completely preempted by Section 301 of the LMRA because the applicable collective bargaining agreement provided for job security).

5. Plaintiff was at all relevant times employed as a Registered Nurse for the Medical Center. See Compl. ¶¶ 1, 10-13; see also **Exhibit C** (Declaration of Jim De Angelis in Support of Defendant's Notice of Removal ("De Angelis Decl.")) at ¶ 3. Her employment with the Medical Center was governed by the terms of a collective bargaining agreement ("CBA") between the Medical Center and the California Nurses Association (the "CNA"), a true and correct copy of which is attached hereto as Exhibit 1 to the De Angelis Decl. See Exh. C (De Angelis Decl.) at ¶ 3 and Exh. 1; Compl., ¶ 12 (alleging that Plaintiff was informed of her termination through her Union). Plaintiff was terminated on December 14, 2005 (see Compl., ¶ 13), following two instances of insubordination occurring in November 2005 in which Plaintiff refused, on two separate occasions and at the direction of a superior, to float to a different patient care unit (where she was competent to work) while she was working an extra shift. Exh. C (De Angelis Decl.) at ¶ 3. Rules relating to floating are governed, in the Medical Center's view, by various provisions of the CBA, including Article 23 ("Seniority") and Appendix A ("Clusters for Reductions in Force (RIFS) and Daily Cancellations and Clinical Clusters for Floating"), as well as by the Medical Center's past practices in applying such provisions. Id. Further, all issues concerning whether there was a breach of the implied covenant of good faith and fair dealing arise under the just cause provision of the CBA (id. at Exh. 1, § 37.6, p. 70), and are subject to the grievance and arbitration provisions of the CBA (Id., Article 37 at pp. 65-71).

6. As described above, Plaintiff's third cause of action for breach of the implied covenant (Compl., ¶¶ 44-51) is based in part upon the alleged existence of an

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

implied in fact employment agreement (id. ¶ 10) which Plaintiff contends was breached when she was terminated "without good or sufficient cause" on December 14, 2005 (id., ¶ 47). The claim arises from the termination of Plaintiff's employment and a related grievance. See Exh. C (De Angelis Decl.), ¶ 4. Resolution of this claim necessarily will entail the Court's interpretation of the provisions of the CBA (referenced above) which created the alleged right that Plaintiff may only be terminated for "just cause" and which describes the applicable rules for floating. The state law contract claim relating to Plaintiff's discharge is therefore preempted by the federal jurisdiction of the LMRA. See e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985) ("state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements."); Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 689-90 (9th Cir. 2001) (Section 301 preempts "claims founded directly on rights created by collective-bargaining agreements"); see also Kirton, 982 F. Supp. at 1386 (holding that an implied covenant claim is preempted by Section 301 of the LMRA). Finally, resolution of Plaintiff's implied covenant claim depends entirely upon the meaning of the floating and "just cause" termination provisions of the CBA as well as the grievance procedure described therein. See Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir. 2007) ("Section 301 of the LMRA preempts a state-law claim 'if the resolution of [that] claim depends upon the meaning of a collective bargaining agreement.'") (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988)). The third cause of action is therefore completely preempted by Section 301 of the LMRA qualifying the action for removal on the basis of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b).

7. This action is removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). This Court may have original jurisdiction over first (Discrimination), second (Retaliation), sixth (Wrongful Termination), and seventh (Harassment) causes of action, however, the extent to which the Court

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

must rely upon the meaning of the provisions of the CBA in order to resolve these causes of action cannot be resolved as of the time the Notice of Removal and Certification of Interested Parties is being filed. See e.g., Delabali, 482 F.3d at 1203 (noting that LMRA preemption of wrongful termination and retaliation claims arising under the FEHA depends in part upon the existence of a "dispute over the meaning of any terms within the [collective bargaining] agreement."). The Medical Center therefore reserves its right to argue that the Court has original jurisdiction over the first, second, sixth, and seventh causes of action until such time as the parties determine whether disputes exist concerning the meaning of various provisions of the CBA. Whether or not the Court asserts original jurisdiction over the first, second, sixth and seventh causes of action, however, the Court has supplemental jurisdiction over such claims as well as the fourth (Intentional Infliction of Emotional Distress) and fifth (Negligence) causes of action pursuant to 28 U.S.C. § 1441(c).

8. Assignment of actions removed from the Superior Court for Alameda County to the San Francisco Division of the Northern District is proper pursuant to Local Rules 3-2(c) and (d).

9. No other defendant in this action has been served with the summons and complaint.

10. As required by 28 U.S.C. §1446(d), the Medical Center will provide prompt written notice to Plaintiff of removal of this action to federal court, by service upon her attorney of record.

11. As required by 28 U.S.C. 1446(d), the Medical Center will file a copy of this Notice of Removal with the Clerk of the Alameda County Superior Court, from which this action is removed.

//

//

//

//

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

12. Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Sutter Health.

DATED: November 20, 2007

Respectfully submitted,

KAUFF MCCLAIN & MCGUIRE LLP

By: [signature]
MAUREEN E. MCCLAIN
MATTHEW P. VANDALL

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

4828-0692-7874.1

- 6 -

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S NOTICE OF REMOVAL AND CERTIFICATION OF INTERESTED PARTIES

CASE NO. ____________ (ALAMEDA COUNTY SUPERIOR COURT CASE NO. RG 07352698)

# EXHIBIT A

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)

FILED
ALAMEDA COUNTY
OCT 2 2 2007
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Alta Bates Summit Medical Center, and DOES 1 - 20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Charlotte Kirton

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

CASE NUMBER: *(Número del Caso):* 07352596

The name and address of the court is:
*(El nombre y dirección de la corte es):*
SUPERIOUR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
1225 Fallon Street
Oakland, CA California

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel Etoh (Bar # 236563)
Amamgbo & Associates
7901 Oakport Street, Suite 4900, Oakland, CA 94621
Phone No. (510) 615-6000
Fax No. (510) 615-6025

DATE: *(Fecha)* OCT 2 2 2007 PAT S. SWEETEN Clerk, by *(Secretario)* [signature] Executive Officer/Clerk of the Superior Court, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL] SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:
under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] SUMMONS Code of Civil Procedure §§ 412.20, 465 LexisNexis® Automated California Judicial Council Forms

*6647923*

C. Donald Amamgbo, Esq. (SBN 164716)
Allen Iscandari, Esq. (SBN) 184307)
Daniel Fink, Esq. (SBN 236563)
Nick Agbo, Esq (SBN 236523)
AMAMGBO & ASSOCIATES, APC
7901 Oakport Street, Suite 4900
Oakland, California 94621
Telephone: (510) 615-6000
Facsimile: (510) 615-6025
Email. detoh@amamgbolaw.com

Attorneys for Plaintiff
CHARLOTTE KIRTON

FILED
ALAMEDA COUNTY
OCT 22 2007
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

SUPERIOR COURT OF CALIFORNIA
IN AND FOR THE COUNTY OF ALAMEDA
UNLIMITED JURISDICTION

| | |
|---|---|
| CHARLOTTE KIRTON<br>Plaintiff<br><br>vs.<br><br>ALTA BATES SUMMIT MEDICAL CENTER; and DOES 1 - 20<br>Defendants | CASE No. RG 07352596<br><br>COMPLAINT FOR:<br><br>1. Discrimination (Cal. Gov. Code §§12900 et seq., 12920 et seq);<br>2. Retaliation<br>3. Breach of Covenant of Good Faith and Fair Dealing<br>4. Intentional Infliction of Emotional Distress;<br>5. Negligence Civ. Code §§ 43, 1708;<br>6. Wrongful Termination<br>7. Harassment |

Plaintiff CHARLOTTE KIRTON, demanding a jury trial, brings this action against defendants ALTA BATES SUMMIT MEDICAL CENTER, and DOES 1 through 20 inclusive, for general, compensatory, punitive, and statutory damages, costs and attorneys' fees, resulting from defendants' unlawful and tortuous conduct, and as grounds therefor alleges as follows:

PARTIES

1. Plaintiff CHARLOTTE KIRTON (hereafter "Kirton" or "plaintiff") was at all time material to this action an employee of defendant ALTA BATES SUMMIT MEDICAL CENTER, at their Summit Campus located at 350 Hawthorne Avenue, Oakland, California.

2. Defendant ALTA BATES SUMMIT MEDICAL CENTER ( hereafter"Alta Bates") is a California Corporation carrying on business as a health care provider in several locations (know as Campuses) including 350 Hawthorne Avenue, Oakland, California. On information and belief, defendant Alta Bates maintains records relevant to plaintiff's employment and the claims herein at their office located at 350 Hawthorne Avenue, Oakland, California. On information and belief defendant Alta Bates employs in excess of 400 employees in its Campuses.

3. At times material to this complaint, JENNIFER STROUD ("Stroud") was a Nurse Manager with defendant, Alta Bates. Stroud in doing the actions mentioned below was acting within the course and scope of her authority as employee and with the permission and consent of defendant Alta Bates. Defendant, Alta Bates authorized and ratified her conduct alleged herein.

4. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-20, inclusive, and therefore sues these defendants by such fictitious names and capacities. Plaintiff is informed and believes, and on that basis alleges, that each defendant sued under such fictitious names is in some manner responsible for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were proximately caused by the conduct of such defendants.

5. Plaintiff is informed and believes and thereupon alleges that, at all times material herein, each of the defendants was functioning as the agent, servant, partner, employee and/or working in concert with his, her or its co-defendants and was acting within the course and scope of such agency, partnership, employment and/or concerted activity. To the extent that certain acts and omissions were perpetrated by certain defendants, the remaining defendants confirmed and ratified said acts and omissions of the co-defendants, and in doing the actions mentioned below was acting within the course and scope of his, her or its authority as such agent, servant, partner, and employee with the permission, consent and ratification of the co-defendants.

6. Plaintiff is informed and believes and thereupon alleges that, at all times material herein, each defendant was completely dominated and controlled by his, her or its co-defendant and each was the alter

ego of the other.

7. Whenever and wherever reference is made in this complaint to any act or failure to act by a defendant or defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each defendant acting individually, jointly, and severally. Whenever and wherever reference is made to individuals who are not named as plaintiff or defendants in this complaint but who were employees/agents of defendant, Alta Bates, such individuals at all relevant times acted on behalf of defendant, Alta Bates within the course and scope of their employment.

8. Plaintiff is informed and believes and thereupon alleges that, at all times material herein, defendants and each of them, and/or their agents/employees or supervisors, authorized, condoned and ratified the unlawful conduct of each other.

9. Plaintiff is informed and believes and thereupon alleges that, at all times material herein, defendants, and/or their agents/employees knew or reasonably should have known that unless they intervened to protect plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct of the employees of defendant, Heller, the remaining defendants and employees perceived the conduct and omissions as being ratified and condoned.

FACTUAL SUMMARY

10. In or about April, 1992, plaintiff entered into an employment agreement with defendant, Alta Bates as a Clinical Nurse 1. Parts of the employment agreement were memorialized in writing by such things as defendants' letter of offer of employment, but not limited to, Summary of Benefits, Policies, Procedure Handbooks or Practices. At the time of employment, defendant, Alta Bates made the following representations to plaintiff, which formed part of the employment agreement:

(a) defendant assured plaintiff that she would not be subject to differential standards of conduct from other employees;

(b) that plaintiff would work in an environment free of harassment, discrimination or hatred; and

(c) that in the event of a dispute with another employee or harassment by another employee, defendant promised plaintiff that they had a policy in place for investigating and dealing with any such matter promptly and decisively.

11. Plaintiff worked with defendant for several years until she was purportedly terminated in or about September of 1996. Plaintiff was re-instated following an arbitration which found that plaintiff' purported termination was wrongful. Thus, in 1997 Plaintiff was reinstated back to her job on the same terms and conditions as when she was employed in April, 1992.

12. Defendant Alta Bates not being a respecter of the terms and conditions of the contract of employment between it and the plaintiff, sometime in 2003, informed plaintiff through her Union that she had been terminated, but that the letter of termination was rescinded. Plaintiff continued to work for the defendant without incident since she was not issued with any letter terminating her employment regarding the purported termination of 2003.

13. Plaintiff continued to work for defendant, Alta Bates where she was elevated to Clinical Nurse 2, until December 14, 2005 when she was terminated. Up to and until plaintiff's termination on December 14, 2005, she was subjected to diverse form of egregious conduct by defendant. This included, but was not limited to discrimination, and harassment.

FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

14. On November 20, 2005, Plaintiff was on her day off, when she got a call from defendant's Staffing office to come and work an extra shift. Plaintiff agreed to work the extra shift but with the rider that she will only work on her unit 4 East. The Staffing co-ordinator agreed to plaintiffs request. While working this extra shift, plaintiff was asked to float to another unit by Carol Grappo (who was in charge that night), she politely turned down the request and informed Carol of the agreement she had reached with Staffing in regards to her working the extra shift that night. Carol seemed to have no problems with it as she said nothing about plaintiff floating that night. Plaintiff further states on information and belief, that the request for her to float that night was not in accordance with defendant's policy on floating which forms part of the terms and conditions of her employment which requires that Registry and Traveling Nurses shall be required to float before permanent staff. Plaintiff was neither a Register nor a Traveling Nurse at all times material to this incident.

15. Again on November 21, 2005, while working an extra shift, plaintiff was asked by Carol Grappo (charge nurse for 4 East that night) to float to another unit, as on the previous occasion, plaintiff politely turned down the request and informed Carol of the agreement she had reached with Staffing in regards to

her working the extra shift that night. Surprisingly, Carol Grappo called the night supervisor Ceann McNamara (a friend of hers) and informed her that plaintiff refused to float. The supervisor came over to the floor where plaintiff was, and without bothering to ascertain what happened asked plaintiff to go home. Plaintiff felt completely humiliated and embarrassed at the way she was treated by her Supervisor.

16. Plaintiff was still trying to recover from the shock of the incident of November 21, 2005, when she received a phone call from Jennifer Stroud, a Nurse Manager with defendant Alta Bates. She told plaintiff that she had called her regarding the incidents of November 20 and 21, 2005. Whatever hope plaintiff had that the phone call by Ms. Stroud was to resolve the issue was dashed, when rather than asking to know exactly what happened, she yelled some obscenities at plaintiff and told her that she was suspended, and hung up on plaintiff.

17. Plaintiff states on information and belief that defendant Alta Bates treats people of African American descent different from other races as far as floating is concerned.

18. When plaintiff resumed work following her suspension, she could not concentrate, as she felt beaten down depressed and less-than owing to the conduct of defendant's employee's above described.

19. The conduct of defendant Alta Bates employees as above described forced plaintiff to seek medical help and culminated in plaintiff filing for Worker's Compensation on or about December 2, 2005. Plaintiff was taken off work from November 27, 2005 following her filing of her Worker's Compensation claim, until an "undetermined" period.

21. Plaintiff was on leave from work awaiting the outcome of her Worker's Compensation claim when she was purportedly terminated by defendant Alta Bates on December 14, 2005.

22. On October 27, 2006, plaintiff filed a charge with the California Department of Fair Employment and Housing (DFEH).

23. On November 15, 2006, plaintiff was issued with a Right To Sue Letter by the Department of Fair Employment and Housing (DFEH).

24. Between November 20, 2005 and December 14, 2005, defendant, Alta Bates and/or its employees subjected plaintiff to severe harassment, intimidation, and retaliation, all of which were sufficiently severe and pervasive enough to force plaintiff to seek psychological help.

25. Defendant, Alta Bates did not exercise reasonable care to prevent and promptly correct any harassing discriminatory, retaliatory behavior involving defendants' employees state above.

26. Plaintiff states on information and belief that the person who discriminated and harassed her as described herein above were Supervisors as defined under the Fair Employment and Housing Act (FEHA).

27. Upon learning of plaintiff's complaint of racially motivated harassment, discrimination, and retaliation defendant, Alta Bates failed to undertake an effective, thorough, objective, and complete investigation in a manner which is free of stereotypical assumptions of the situation complained of.

28. Defendant, Alta Bates failed to consult with persons who they had reason to believe may have relevant information, including the complaining employee, the alleged harassers, any witnesses to the conduct, and victims of similar conduct that the employer had reason to believe there may be.

29. Plaintiff is informed and on that basis believes and contends that to the extent defendant, Alta Bates conducted an investigation, the result of any such investigation was not communicated to plaintiff, the alleged harassers and, as appropriate, to all others directly concerned.

30. Defendant, took no appropriate action against the offending employees.

31. Plaintiff is informed and on that basis believes and contends that to the extent defendant, Alta Bates conducted an investigation, any alleged investigation and/or remedial action taken as a result thereof was ineffective and not commensurate with the severity of the offenses complained of by plaintiff.

32. The discriminatory, harassing and retaliatory actions of defendant, Alta Bates employees including, as described herein above were committed within the scope of their employment or relationship with defendant.

33. Plaintiff is informed and on that basis believes and contends that defendant, Alta Bates could have reasonably anticipated the possibilities of harassment, racially motivated discriminatory conduct and retaliation occurring in its workplace.

**FIRST CAUSE OF ACTION**

*Discrimination — Cal. Gov. Code §12900 et seq.*

*(Against all Defendant Alta Bates and Does 1-20)*

34. The allegations set forth in Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35. At all times herein mentioned, defendant, Alta Bates employed five or more persons, and Government Code sections 12900 et seq. were in full force and effect and were binding on defendants. These sections requirs defendants to refrain from discriminating against any employee on the basis of race, among other things.

36. Plaintiff is a member of a protected class within the meaning of the aforesaid Government Code sections. At all material times hereto, plaintiff satisfactorily performed her duties and responsibilities as expected by defendants.

37. Plaintiff believes and thereon alleges that her race was a factor in defendants' actions including harassing and retaliation against her. Such discrimination is in violation of Government Code section 12940 et seq. and has resulted in damage and injury to plaintiff as alleged herein.

38. Within the time provided by law, plaintiff filed charges with the California Department of Fair Employment and Housing, in full compliance with these sections and received right-to-sue letters.

39. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

40. As a direct and proximate result of defendants' unlawful conduct, plaintiff has sustained and continues to sustain physical injuries, pain and suffering, and extreme and severe mental anguish and emotional distress; plaintiff has incurred and will continue to incur medical expenses for treatment, and for incidental medical expenses; and plaintiff has suffered and continued to suffer a loss of earnings, and other employment benefits. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

41. Defendants' conduct as described above was willful, despicable, knowing, and intentional; accordingly, plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

**SECOND CAUSE OF ACTION**

*( Retaliation Against All Defendants and Does 1 - 20)*

42. The allegations set forth in Paragraphs 1 through 41 are re-alleged and incorporated herein by

reference.

43. Plaintiff believes and thereon alleges that defendant, Alta Bate's adverse actions taken against her as set forth above occurred in retaliation for plaintiff's insistence on complying with the floating rules and for filing a Worker's Compensation claim as above alleged. Such actions are unlawful, discriminatory and retaliatory in violation of Government Code section 12940 et seq., and have resulted in damages and injury to plaintiff, as alleged herein.

**THIRD CAUSE OF ACTION**

*(Breach of Covenant of Good Faith and Fair Dealing*

*Against Defendant, Alta Bates and DOES 1 - 20)*

44. Plaintiff re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 43 above.

45. The aforesaid employment contract contained an implied covenant of good faith and fair dealing by which defendant, Alta Bates promised to give full cooperation to plaintiff and her performance under the said contract and to refrain from doing any act which would prevent or impede plaintiff's enjoyment of the fruits of the said contract. Specifically, the said covenant of good faith and fair dealing required defendant to fairly, honestly and reasonably perform the terms and conditions of the agreement.

46. Plaintiff as an individual employee, with no legal representation was in an inherently unequal bargaining position in her dealing with defendants, an international law firm with millions of dollars in assets. In addition, once plaintiff committed herself to the above-stated contract and took the reasonable actions alleged herein in reliance on the said contract, plaintiff was placed in a particularly vulnerable position because few openings existed in her field for persons of her experience and qualifications. Plaintiff had entrusted her entire livelihood to defendant, Alta Bates's willingness to perform its obligations under the contract, and risked suffering grave harm if defendant failed to perform. Defendant, Alta Bate were aware of plaintiff's vulnerability in this regard and took advantage of it.

47. Plaintiff is informed and on that basis believes that defendant, Alta Bates breached its contract with plaintiff without conducting any reasonable investigation concerning its obligations under the said contract, without good or sufficient cause, for reasons extraneous to the contract, and for the purpose of frustrating plaintiff's enjoyment of the benefits of the contract terminated plaintiff on December 14, 2005. Accordingly,

defendant, Alta Bates breached their implied duty of good faith and fair dealing.

48. Further, defendant, Alta Bates breached this covenant with regard to plaintiff through its conduct in:

a. subjecting plaintiff to differential standards of conduct from other employees by discriminating and harassing plaintiff;

b. retaliating against plaintiff ; and

c. failing to follow written personnel policies, or to apply the same personnel practices to other employees in the same manner that it was strictly applied to plaintiff.

49. As a result of defendant, Alta Bates's violation of said implied covenant of good faith and fair dealing and their reprehensible and wilful conduct, plaintiff has suffered harm in:

a. incurring of reasonable attorneys fees in her attempts to obtain the benefits due to her under the above-stated employment contract with defendant, Alta Bates;

b. loss of income and other benefits;

c. causing plaintiff to suffer and continue suffering humiliation, embarrassment, and mental anguish, all to her damage in an amount to be determined at trial.

50. The primary motivation of plaintiff in making the above-stated contract was to obtain secure employment and terms and conditions of employment which would permit her growth and development as well as allow her substantial autonomy, freedom of action, and a supportive work environment.

51. Defendant, Alta Bates committed the acts alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring plaintiff. Furthermore, defendant committed these acts for an improper and evil motive amounting to malice, and in conscious disregard of plaintiffs rights. Plaintiff is thus entitled to recover punitive damages in an amount according to proof.

## FOURTH CAUSE OF ACTION

*(Intentional Infliction of Emotional Distress Against All Defendants and Does 1- 20)*

52. Plaintiffs re-alleges and incorporates by reference Paragraphs 1 through 51 above, as if fully set herein.

53. Defendants' conduct in allowing the abuse of Plaintiff, and in firing plaintiff while she was on leave of absence as described above was extreme and outrageous, and went beyond all bounds of decency.

54. In committing the acts of abuse described above, defendants intended to cause, or recklessly disregarded the probability of causing, severe emotional distress to Plaintiff.

55. As a direct and proximate result of the conduct of defendants in treating plaintiff as above described, Plaintiff, suffered severe emotional distress for which she is still seeing a therapist.

56. As a direct and proximate result of defendant's wrongful actions and abuse as described above, Plaintiffs suffered the following serious injuries and damages: plaintiffs began to experience a number of psychological symptoms which included: difficulty sleeping; headaches; anger; anxiety/dread of going to work and encountering further harassment; loss of self-esteem; feeling of doubt; difficulty concentrating; ruminative thinking in which she found herself unable to stop "stewing" about the numerous insults she suffered; stomach upset; increased appetite; weight gain; and high blood pressure.

57. As a result of the discriminatory conduct above described, harassments at work, and retaliation plaintiff felt "beaten down", "less than human", extremely hurt, and devoid of confidence. She continues to feel extremely anxious about what she might encounter in each time she goes to work.

58. By engaging in the conduct described above, defendants were guilty of oppression, fraud, or malice. As a result, Plaintiff is entitled to an award of punitive damages.

59. As a direct and proximate result of defendants' conduct, Plaintiffs have suffered general damages in an amount to be determined by proof at trial.

60. Defendants conduct was done knowingly, willfully, and with malicious intent, and Plaintiff is entitled to punitive damages in an amount to be determined by proof at trial.

## FIFTH CAUSE OF ACTION

*(Negligence Civ. Code §§ 43, 1708*
*Against All Defendants and Does 1 to 20)*

61. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 60 above.

62. Plaintiffs alleges defendant, Alta Bates breached the duties imposed by Government Code Section 12940, 12900 et seq. and 2 Cal. Code Reg. § 7287.6 et seq.

63. Defendants actually or constructively created an intimidating, discriminatory, hostile or offensive

working environment.

64. Defendants permission of this intimidating, hostile or offensive working environment unreasonably interfered with plaintiff's work performance; and otherwise adversely affected plaintiff's employment opportunities.

65. Defendant, Alta Bates as employer, is responsible for acts of harassment, discrimination and retaliation in the workplace where, its agents or supervisory employees, knew or should have known of the conduct, and it did not take immediate and appropriate corrective action.

66. Defendant, Alta Bates, as employer, was obligated, both by laws, customs and practices of the industry and representations to plaintiffs at the time of hire that formed part of the basis for employment, to provide a workplace that was free of discrimination based on national origin, and retaliation. They failed to do so.

67. Defendant, Alta Bates had an affirmative obligation and duty to train managers on how to identify and respond effectively to harassment, discrimination and retaliation even in the absence of a complaint. They failed to do so.

68. Defendant, Alta Bates breached its duty by failing to provide plaintiff, a safe work place as it was obligated to do under California Fair Employment and Housing Act; California Civil Code section 51, et seq; Government Code section 12900 et seq. and the California Constitution Article 1, Section 8; which forbids discrimination, harassment and retaliation in a workplace on account of an employee's race, age, color, or national origin.

69. As a proximate result of defendant, Alta Bates' negligence, plaintiff suffered and continues to suffer humiliation, embarrassment, mental anguish, emotional distress and discomfort, and loss of salary increase, all to her damages in an amount in excess of $25,000.00. The precise amount of which will be proven at trial.,

**SIXTH CAUSE OF ACTION**

*( Wrongful Termination Against all Defendants)*

70. Plaintiff, re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 69 above.

71. Plaintiff was terminated without justification because of her race, color, and/or national origin.

72. Plaintiff state on information and belief that defendant, Alta Bates and its managers and other employees treated employees of Africon descent different from other employees in the terms and conditions of their employment including but not limited to floating arrangements.

73. In doing the acts described herein in paragraphs 14-69, defendant, Alta Bates deprived Plaintiff of prospective career and employment opportunities, as well as other benefits, by failing to perform its duties to administer and apply all State, and local laws, procedures and regulations.

74. Defendant, Alta Bates terminated plaintiff's employment in breach of public policy. The underlining public policy being those articulated in California State Constitution, California Fair Employment and Housing Act; Government Code section 12900, 12920 and 12940 *et seq.* and the California Constitution Article 1, Section 8; which forbids discrimination and harassment in a workplace on account of an employee's race, age, color, and/or national origin.

75. As a proximate result of defendant, Alta Bates' discriminatory actions against plaintiff, as alleged above, plaintiff have been harmed in that she suffered loss of salary, wages, benefits that she would have received but for the wrongful termination of her employment contract with defendant, Alta Bates.

76. Plaintiff is informed and believes, and on said information and belief alleges that the above-recited actions of defendant, Alta Bates were done with malice, fraud, and oppression, and in reckless disregard of the Plaintiff rights under California Law. As a result, Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**

*(For Harassment Based on Race and National Origin; Cal. Gov. Code §12940(j)(3) & (k), 2 Cal. Code Reg. §7287.6(b)(2) & (3) Against All Defendants)*

77. Plaintiff re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 76 above.

78. Unless otherwise alleged in this complaint, plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this complaint, the employees of defendant, Alta Bates were the agent of defendant, and/or their co-defendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

79. Plaintiff, Kirton is a member of a protected class as that term is defined under FEHA.

80. Defendant, Alta Bates discriminated against plaintiff on the basis of her race, and/or national origin by treating her and other persons of African descent different from other races in terms of conditions and privileges of her employment, and by engaging in and permitting acts that created a hostile work environment and that adversely affected the terms, conditions and privileges of her employment.

81. Defendant, Alta Bates knew or should have known of the discriminatory treatment of plaintiff.

82. Defendant, Alta Bates failed or refused to take reasonable action to prevent or promptly correct the discriminatory treatment of plaintiff.

83. Defendant, Alta Bates conduct as alleged in this complaint constitutes an unlawful employment practice in violation of Government Code section 12940(a).

84. As a direct, foreseeable, and proximate result of defendant's discriminatory acts, plaintiff suffered and continues to suffer humiliation, embarrassment, mental and emotional distress, and discomfort, all to plaintiff's damages in an amount in excess of $25,000.00, the precise amount of which will be proven at trial.

85. Defendant, Alta Bates, committed the acts described more particularly in paragraphs 14-69 of this complaint oppressively, fraudulently, and maliciously, thus entitling plaintiffs to an award of punitive damages against defendant, Alta Bates in an amount appropriate to punish and make an example of defendant, Alta Bates.

**RELIEF**

**WHEREOF,** Plaintiff prays for judgment against defendants as follows:

1. For special damages in an amount to be proven at trial;
2. For general damages in an amount to be proven at trial;
3. For exemplary and punitive damages in an amount to proven at trial;
4. For attorney fees;
5. For cost of suit;
6. For other and further relief as the court may deem just and proper.
7. Plaintiffs demands a jury trial.

Dated: October 8, 2007

AMAMGBO & ASSOCIATES, APC

C. Donald Amamgbo, Esq
Daniel Etoh, Esq
Attorneys for Plaintiff, Charlotte Kirton

# EXHIBIT B

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Daniel Etoh (State Bar # 236563)
Amamgbo & Associates
7901 Oakport Street, Suite 4900, Oakland, CA 94621
TELEPHONE NO.: (510) 615-6000 FAX NO.: (510) 615-6025
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland California
BRANCH NAME: Oakland

CASE NAME:
Charlotte Kirton v. Alta Bates Summit Medical Center; and DOES 1 -20

FOR COURT USE ONLY

"5647927"

FILED
ALAMEDA COUNTY
OCT 2 2 2007
CLERK OF THE SUPERIOR COURT
By [signature] Deputy

# CIVIL CASE COVER SHEET

[X] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

Complex Case Designation
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: RG 07352596
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [X] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (*not specified above*) (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (*specify*): SEVEN (7)
5. This case [ ] is [X] is not a class action suit.
6. This case [ ] is [X] is not a collections case under rule 3.740.
7. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: October 22, 2007
DANIEL I. ETOH
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, or a collections case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403; Standards of Judicial Administration, § 19 www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

... certain that is not more than $25,000, exclusive of interest, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: 1) tort damages, 2) punitive damages, 3) recovery of real property, 4) recovery of personal property, or 5) a prejudgment writ of attachment. The identification of a case as a collections case on this form means that it will be exempt from the general time for service requirements and case management rules, unless a defendant files a responsive pleading. A collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10) Claims
- Involving Mass Tort (40) Securities
- Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief from Late Claim
  - Other Civil Petition

ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKAGE
Effective April 15, 2005

**Instructions to Plaintiff / Cross-Complainant**

| In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff is required to serve a copy of this ADR information package on each defendant. |
|---|

California Rules of Court, Rule 201.9 (Excerpt)

(a) Each court must make available to the plaintiff, at the time of filing of the complaint, an Alternative Dispute Resolution (ADR) information package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution Programs Act (DRPA), information about the availability of local dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) Court may make package available on Web site . . .

**(c) The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR information package on any new parties to the action along with the cross-complaint.**

## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### *Mediation*

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### *Arbitration*

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### *Neutral Evaluation*

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

Mediation Services
22227B Redwood Road, Castro Valley, CA 94546
Phone: (510) 733-4940 fax: (510) 733-4945
Provides a panel of mediators to assist in the process of reaching an agreement in the areas of Neighborhood Disputes, Child Custody, Divorce, Parent/Teen Conflicts, Home Owners Association, Business, Real Estate, Employer/Employee, and Fremont Rent Increases.

East Bay Community Mediation
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Phone: (510) 548-2377 fax: (510) 548-4051
EBCM is a community-based mediation program created by the union of Berkeley Dispute Resolution Service and Conciliation Forums of Oakland. EBCM offers counseling on options and approaches to resolving a dispute, mediation, large-group conflict facilitation, and conflict resolution skills workshops.

Catholic Charities of the East Bay: Oakland -- Main Office
433 Jefferson Street, Oakland, CA 94607
Phone: (510) 768-3100 fax: (510) 451-6998
Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

Center for Community Dispute Settlement
1789 Barcelona Street, Livermore, CA 94550
Phone: (925) 373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

California Lawyers for the Arts: Oakland Office
1212 Broadway Street, Suite 837, Oakland, CA 94612
Phone: (510) 444-6351 fax: (510) 444-6352
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

| | | |
|---|---|---|
| ☐ Allen E. Broussard Justice Center<br>600 Washington Street, Oakland, CA 94607 | ☐ Berkeley Courthouse<br>2000 Center Street, 2nd Fl., Berkeley, CA 94704 | ☐ George E. McDonald Hall of Justice<br>2233 Shoreline Drive, Alameda, CA 94501 |
| ☐ Fremont Hall of Justice<br>39439 Paseo Padre Parkway, Fremont, CA 94538 | ☐ Gale/Schenone Hall of Justice<br>5672 Stoneridge Drive, Pleasanton, CA 94588 | ☐ Wiley W. Manuel Courthouse<br>661 Washington Street, Oakland, CA 94607 |
| ☐ Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | ☐ René C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | |

Plaintiff

vs.

Defendant

Case No.: ____________________

**STIPULATION FOR ALTERNATIVE DISPUTE RESOLUTION (ADR)**

The parties by and through their attorneys of record hereby stipulate to submit the within controversy to the following Alternative Dispute Resolution process:

______________________________________________________________

______________________________________________________________

______________________________________________________________

### ORDER

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on ____________________ at __________ a.m./p.m. in Department ________

Dated: ____________________

____________________________
JUDGE OF THE SUPERIOR COURT

(SEAL)

## *Superior Court of California, County of Alameda*

### *Notice of Judicial Assignment for All Purposes*

Case Number: RG07352596
Case Title: Kirton VS Alta Bates Summit Medical Center
Date of Filing: 10/22/2007

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**This case is hereby assigned for all purposes to:**

| | |
|---|---|
| **Judge:** | **Jon S. Tigar** |
| **Department:** | **21** |
| **Address:** | **Administration Building<br>1221 Oak Street<br>Oakland CA 94612** |
| **Phone Number:** | **(510) 272-6161** |
| **Fax Number:** | **(510) 267-1509** |
| **Email Address:** | **Dept.21@alameda.courts.ca.gov** |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

**Please note: In this case, any challenge pursuant to Code of Civil Procedure §170.6 must be exercised within the time period provided by law. (See Govt. Code 68616(i); Motion Picture and Television Fund Hosp. v. Superior Court (2001) 88 Cal.App.4th 488, 494; and Code Civ. Proc. §1013.)**

IT IS THE DUTY OF EACH PLAINTIFF AND CROSS COMPLAINANT TO SERVE A COPY OF THIS NOTICE IN ACCORDANCE WITH LOCAL RULES.

**General Procedures**

All pleadings and other documents must be filed in the clerk's office at any court location except when the Court permits the lodging of material directly in the assigned department. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ASSIGNED FOR ALL PURPOSES TO
JUDGE Jon S. Tigar
DEPARTMENT 21

Counsel are expected to know and comply with the Local Rules of this Court, which are available on the Court's website at: http://www.alameda.courts.ca.gov/courts/rules/index.shtml and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

The parties are always encouraged to consider using various alternatives to litigation, including mediation and arbitration, prior to the Initial Case Management Conference. The Court may refer parties to alternative dispute resolution resources.

(1) Counsel are expected to be familiar and comply with the Statement of Professionalism and Civility, Alameda County Bar Association, www.acbanet.org. (2) Appearances by attorneys who are not counsel of record are not permitted except for good cause. Failure to anticipate a non-emergency scheduling conflict is not good cause. (3) Except when requested in a particular case, chambers copies of filings are not necessary. The court appreciates receiving electronic courtesy copies of motions and proposed orders by e-mail to dept21@alameda.courts.ca.gov, with copies to all other counsel. (4) All references to "counsel" in this Order apply equally to self-represented litigants. The Court maintains a Self-Help Center at the Wiley W. Manuel Courthouse, 2nd Fl., 661 Washington St., Oakland.

**Schedule for Department 21**

The following scheduling information is subject to change at any time, without notice. Please contact the department at the phone number or email address noted above if you have questions. Contacts with Dept. 21 should be by email with copies to all other counsel after conferring about the matter in dispute and proposed hearing dates, if a hearing is required.

- Trials generally are held: Mondays: 10:30 a.m. to 4:30 p.m.; Tuesdays through Thursdays: 8:30 a.m. to 4:30 p.m. Counsel should expect to be in court from 8:00 a.m. to 5:00 p.m. Trial Readiness: Fridays at 8:45 a.m. A pretrial conference may be set one month before trial.
- Case Management Conferences are held: Mondays through Fridays at 8:30 a.m. and 8:45 a.m. Timely filed and complete case management conference statements may eliminate the need for in person conferences by allowing the court to issue a Tentative Case Management Order.
- Law and Motion matters are heard: Mondays and Fridays at 9:30 a.m.
- Settlement Conferences are heard: Friday afternoons and at such other times as may be available.
- Ex Parte matters are heard: Monday, Wednesday, and Friday at 8:30 a.m. E-mail Department 21 to obtain a reservation on these calendars or to specially set a time-sensitive emergency matter.
- (1) Counsel should consider and recommend creative, efficient approaches to valuing and resolving their case (CRC §3.724). (2) Potential discovery and other problems should be anticipated and discussed. (3) No discovery motion shall be filed without prior serious efforts to resolve it. If those efforts are unsuccessful, the parties should jointly send an e-mail to the court outlining the dispute in a few sentences. The court will then confer with counsel and determine whether there is a way to resolve the matter short of motion.

**Law and Motion Procedures**

To obtain a hearing date for a Law and Motion or ex parte matter, parties must contact the department as follows:

- Motion Reservations
  Email: Dept.21@alameda.courts.ca.gov

  Limited hearings are available for summary judgments, preliminary injunctions and other time-intensive motions.

- Ex Parte Matters
  Email: Dept.21@alameda.courts.ca.gov

  Counsel must comply with Local Rule 4.14.

**Tentative Rulings**

The court will issue tentative rulings in accordance with the Local Rules. Tentative rulings will become the Court's order unless contested in accordance with the Local Rules. Tentative rulings will be available at:

- Website: www.alameda.courts.ca.gov/domainweb, Calendar information for Dept. 21
- Phone: 1-866-223-2244

Dated: 10/23/2007

Executive Officer / Clerk of the Superior Court

By [signature]
Deputy Clerk

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown on the attached Notice of Initial Case Management Conference and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 10/24/2007

By [signature]
Deputy Clerk

CALENDARED

Amamgbo & Associates
Attn: Etoh, Daniel I
7901 Oakport Street
Ste 4900
Oakland, CA 94621

**Superior Court of California, County of Alameda**

Kirton
Plaintiff/Petitioner(s)
vs.
Alta Bates Summit Medical Center
Defendant/Respondent(s)
(Abbreviated Title)

No. RG07352596

**NOTICE OF CASE MANAGEMENT CONFERENCE AND ORDER**
Unlimited Jurisdiction

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD.

Notice is given that a Case Management Conference has been scheduled as follows:

| Date: 03/05/2008<br>Time: 08:30 AM | Department: 21<br>Location: Administration Building<br>Fourth Floor<br>1221 Oak Street, Oakland CA 94612<br>Internet: http://www.alameda.courts.ca.gov | Judge: Jon S. Tigar<br>Clerk: Pamela Drummer-Williams<br>Clerk telephone: (510) 272-6161<br>E-mail: Dept.21@alameda.courts.ca.gov<br>Fax: (510) 267-1508 |
|---|---|---|

**ORDERS**

1. You must:
   a. Serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (CRC 3.110(b));
   b. Give notice of this conference to any party not included in this notice and file proof of service;
   c. Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 3.724 no later than 30 calendar days before the date set for the Case Management Conference;
   d. File and serve a completed Case Management Conference Statement (use of Judicial Council Form CM 110 is mandatory) at least 15 days before the Case Management Conference (CRC 3.725)

2. If you do not follow the orders above, you are hereby ordered to show cause why you should not be sanctioned under CRC 2.30. The hearing on the Order to Show Cause re: Sanctions will be at the same time as the Case Management Conference. Sanctions may include monetary sanctions and any other sanction permitted by law, including striking pleadings or dismissing the action.

3. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

4. The Direct Calendar Judge will issue orders at the conclusion of the conference that should include:
   a. Referring to ADR and setting an ADR completion date
   b. Dismissing or severing claims or parties
   c. Setting a trial date.

*Telephonic appearances at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties may make arrangements by calling 1-888-882-6878, or faxing a service request to 1-888-882-2946. This service is subject to charges by the vendor.

**CLERK'S CERTIFICATE OF MAILING**

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice of Hearing by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 10/24/2007.

By [signature]
Deputy Clerk

# EXHIBIT C

MAUREEN E. MCCLAIN (State Bar No. 062050)
Email: mcclain@kmm.com
MATTHEW P. VANDALL (State Bar No. 196962)
Email: vandall@kmm.com
KAUFF MCCLAIN & MCGUIRE LLP
One Post Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 421-3111
Facsimile: (415) 421-0938

Attorneys for Defendant
ALTA BATES SUMMIT MEDICAL CENTER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

Plaintiff,

v.

ALTA BATES SUMMIT MEDICAL CENTER; and DOES 1 - 20,

Defendants.

CASE NO.
(Alameda Superior Court Case No. RG 07352596)

**DECLARATION OF JIM DE ANGELIS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL**

**28 U.S.C. 1441(b) [Fed. Question]**

COMPLAINT FILED: October 22, 2007
TRIAL DATE: No date set.

I, Jim De Angelis, do hereby declare:

1. I am employed by Alta Bates Summit Medical Center ("Medical Center") in the position of Employee and Labor Relations Specialist. I have been so employed since April 16, 2001. I submit this declaration to identify the collective bargaining relationship existent between the Medical Center and the California Nurses Association ("CNA") governing the employment conditions of Medical Center employees employed as Registered Nurses. My responsibilities include advising management regarding the application of provisions of the various collective bargaining agreements between the Medical Center and union representatives of its employees, including the CNA. I am responsible for representing the Medical Center in grievance processing under such

4844-7655-1778.2

KAUFF MCCLAIN & MCGUIRE LLP
One Post Street
Suite 2600
San Francisco, CA 94104
Telephone (415) 421-3111

DECLARATION OF JIM DE ANGELIS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

CASE NO.
(ALAMEDA SUPERIOR COURT CASE NO. RG 07352596)

collective bargaining agreements. I also have responsibility for the maintenance of employee grievance files and related personnel files. I therefore have personal knowledge of the facts contained in this declaration.

2. The Medical Center has had a long-standing collective bargaining relationship with the CNA, spanning at least the time period of Plaintiff's employment with the Medical Center. Such period of employment was from May 1993 to Ms. Kirton's final termination date of December 14, 2005. I say final as our grievance files show that Ms. Kirton was terminated by a predecessor organization, Summit Medical Center, in October 1995. She was reinstated to employment with Summit Medical Center in April, 1996 pursuant to an agreement between the Medical Center and the CNA reached during an arbitration of her discharge which was held pursuant to the grievance-arbitration provisions of the then applicable CNA-Summit Medical Center collective bargaining agreement.

3. Attached as **Exhibit 1** is a true and correct copy of the collective bargaining agreement ("CBA") governing the employment of Registered Nurses working at the Medical Center, including Plaintiff, and in effect at the time of Ms. Kirton's December 2005 discharge. Such discharge was due to two November 2005 instances of insubordination (occurring on November 20th and 21st) considered in conjunction with previous instances of unprofessional behavior for which Plaintiff had received multiple warnings, including final written warnings and a suspension. In November, 2005, on two separate occasions, Ms. Kirton refused to float to a different patient care unit (where she was competent to work) when she was working an extra shift. Rules relating to floating are governed, in the Medical Center's view, by various provisions of the CBA, including Article 23 ("Seniority") and Appendix A ("Clusters for Reductions In Force (RIFS) and Daily Cancellations and Clinical Clusters for Floating"), as well as by past practices of the Medical Center in applying such contract provisions.

4. The grievance-arbitration clause of Exhibit A is Article 37 ("Adjustment and Arbitration"). Such procedures govern grievances challenging whether terminations are

4844-7598-1774.2

- 2 -

DECLARATION OF JIM DE ANGELIS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

CASE NO.
(ALAMEDA SUPERIOR COURT CASE NO. RG 07352698)

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

for just cause under Article 37.6 of Exhibit A. The CNA initially grieved Plaintiff's December 14, 2005 discharge. I represented the Medical Center at a Step Two grievance meeting held on January 13, 2006 among Union and Medical Center representatives. Plaintiff also attended such meeting which was held in accordance with Article 37.2.2 of **Exhibit 1**. We did not resolve the grievance at the Step Two meeting. The CNA did not thereafter submit the grievance contesting Plaintiff's termination to any further step of the grievance procedure. In failing to take timely action to prosecute the grievance to further steps of the procedure in accordance with the requirements of the CBA (Article 37.2.4 and 37.3), the Union essentially dropped the grievance.

I have read this declaration and do hereby declare under penalty of perjury under the laws of the United States of America and the State of California, that the foregoing is true and correct. Executed this 19th day of November, 2007, at Oakland, California.

JIM DE ANGELIS

4844-7665-1776.2 - 3 -

DECLARATION OF JIM DE ANGELIS IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL

CASE NO.______
(ALAMEDA SUPERIOR COURT CASE NO. RG 07352596)

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

# EXHIBIT 1

AGREEMENT

BETWEEN

CALIFORNIA NURSES ASSOCIATION

AND

ALTA BATES SUMMIT MEDICAL CENTER

JULY 4, 2005-JULY 3, 2007

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| ARTICLE 1. | RECOGNITION | 1 |
| ARTICLE 2. | COVERAGE | 1 |
| ARTICLE 3. | ASSOCIATION SECURITY | 1 |
| ARTICLE 4. | PERSONNEL CATEGORIES | 3 |
| ARTICLE 5. | COMPENSATION | 4 |
| ARTICLE 6. | CHANGE IN STATUS | 14 |
| ARTICLE 7. | HOURS OF WORK | 15 |
| ARTICLE 8. | SICK LEAVE | 23 |
| ARTICLE 9. | VACATIONS | 25 |
| ARTICLE 10. | HOLIDAYS | 27 |
| ARTICLE 11. | GROUP HEALTH, DENTAL AND DRUG PLANS | 30 |
| ARTICLE 12. | GROUP LIFE INSURANCE | 32 |
| ARTICLE 13. | LONG TERM DISABILITY INSURANCE | 33 |
| ARTICLE 14. | BENEFITS FOR NURSES WORKING LESS THAN FULL-TIME | 33 |
| ARTICLE 15. | LEAVES OF ABSENCE | 34 |
| ARTICLE 16. | RETIREMENT | 36 |
| ARTICLE 17. | PAID EDUCATIONAL LEAVE | 39 |
| ARTICLE 18. | SABBATICAL | 43 |
| ARTICLE 19. | PAY FOR JURY DUTY | 45 |
| ARTICLE 20. | BEREAVEMENT LEAVE | 46 |
| ARTICLE 21. | UNEMPLOYMENT & DISABILITY COMPENSATION | 46 |
| ARTICLE 22. | PHYSICAL EXAMINATION | 46 |
| ARTICLE 23. | SENIORITY | 46 |
| ARTICLE 24. | TERMINATION NOTICE | 51 |
| ARTICLE 25. | BULLETIN BOARDS | 51 |
| ARTICLE 26. | PROFESSIONAL PERFORMANCE COMMITTEE | 51 |
| ARTICLE 27. | STAFFING | 54 |
| ARTICLE 28. | QUALITY CARE LIAISON PROGRAM | 58 |
| ARTICLE 29. | PROGRAMS FOR BCLS, ACLS AND SAFETY | 60 |
| ARTICLE 30. | IN-SERVICE EDUCATION | 60 |
| ARTICLE 31. | CONSCIENTIOUS OBJECTION | 60 |
| ARTICLE 32. | REGISTERED NURSE VACANCIES AND REPLACEMENTS | 61 |
| ARTICLE 33. | UTILIZATION OF SPECIALTIES IN CASUAL ASSIGNMENTS | 61 |
| ARTICLE 34. | POSITION POSTING AND FILLING OF VACANCIES | 61 |
| ARTICLE 35. | REFERRAL SOURCE | 64 |
| ARTICLE 36. | NURSE REPRESENTATIVES | 64 |
| ARTICLE 37. | ADJUSTMENT AND ARBITRATION | 65 |
| ARTICLE 38. | CHILD CARE COMMITTEE | 71 |
| ARTICLE 39. | SUCCESSORS | 71 |
| ARTICLE 40. | NURSE MANAGER EVALUATIONS | 72 |
| ARTICLE 41. | ANNUAL PERFORMANCE APPRAISALS | 72 |
| ARTICLE 42. | PARKING | 72 |
| ARTICLE 43. | WORKPLACE SAFETY & SECURITY | 73 |
| ARTICLE 44. | TECHNOLOGY | 74 |
| ARTICLE 45. | TERM OF AGREEMENT | 75 |
| APPENDIX A | CLUSTERS FOR REDUCTIONS IN FORCE (RIFS) AND DAILY CANCELLATIONS AND CLINICAL CLUSTERS FOR FLOATING | 77 |
| APPENDIX B | CLINICAL LADDER | 79 |
| APPENDIX C | EXAMPLES OF CERTIFICATIONS IN SPECIALTY | 85 |
| APPENDIX D | CHARGE NURSES AT ALL ALTA BATES, SUMMIT, AND HERRICK CAMPUSES | 86 |
| APPENDIX E | RETENTION AND RECRUITMENT OF REGISTERED NURSES | 87 |
| APPENDIX F | JOB SHARE AGREEMENT | 88 |
| APPENDIX G | RETIREMENT PLAN OPTIONS FOR NURSES EMPLOYED ON DECEMBER 31, 1975 | 91 |
| APPENDIX H | 12-HOUR SHIFTS | 94 |
| APPENDIX I | RETIREE HEALTH COVERAGE | 99 |
| APPENDIX J | PAYROLL PRACTICES | 101 |
| SIDE LETTER | REGARDING STAFFING AND PATIENT CARE ISSUES | 104 |
| MISCELLANEOUS SIDE LETTER AGREEMENTS | | 106 |

ADDENDUM: STAFF NURSE II, QUALITY CARE LIAISON ............ 106
INDEX ............ I

AGREEMENT BETWEEN
CALIFORNIA NURSES ASSOCIATION
AND
ALTA BATES MEDICAL CENTER AND SUMMIT MEDICAL CENTER

JULY 4, 2005-JULY 3, 2007

THIS AGREEMENT is made and entered into by and between Alta Bates Summit Medical Center (hereinafter referred to as "the Medical Center") and the California Nurses Association, representatives of Registered Nurses (hereinafter referred to as "the Association").

ARTICLE 1. RECOGNITION

The Medical Center hereby recognizes the Association as the sole agent representing the Nurses covered by this agreement for the purpose of collective bargaining. The Medical Center shall not offer available bargaining unit work to registry Nurses if qualified bargaining unit Nurses are available, except as provided in Article 34.6, Temporary Vacancies. A registry Nurse may be used in place of a bargaining unit Nurse on a premium shift unless that bargaining unit Nurse has been confirmed by the Medical Center to work on that shift.

ARTICLE 2. COVERAGE

2.1 Scope of Bargaining Unit

The Nurses covered by this agreement are all graduate, Registered Nurses, employed by the Medical Center, and excluding only supervisors as defined in the National Labor Relations Act, administrative or executive personnel having authority to hire, discipline, or discharge or determine personnel policies.

2.2 Newly-Created Positions

The Medical Center will notify the Association each month in writing of any newly-created non-supervisory position requiring a current RN license which the Medical Center has designated as a non-bargaining unit position. Upon request of the Association, the Medical Center will provide within 14 days of such request copies of the job description for such position to the Association.

ARTICLE 3. ASSOCIATION SECURITY

3.1 Preamble

3.1.1 The parties hereto recognize the basic function of the Medical Center is to provide care for the sick and that it is the basic purpose of the California Nurses Association to advance the standards of nursing practice to the end that better nursing may be achieved.

3.1.2 The Medical Center recognizes that the Association has responsibility for and contributes to fostering high standards of nursing practice and that through membership in the Association the professional nursing staff in the Medical Center will be improved.

3.1.3 The Medical Center and the Nurses are committed to the highest levels of patient care in terms of the patient's health and safety. Recognizing that Registered Nurses are responsible for performing the nursing process (assessment, formulating a nursing diagnosis, planning, implementation and evaluation), the parties agree that the Nurse shall not practice, nor shall the Nurse be required to practice, in any manner which is inconsistent with the above or which places the Nurse's license in jeopardy.

3.1.4 The Medical Center recognizes the important role of RNs as patient advocates, both on the job and in the public, subject to patient confidentiality obligations and as otherwise provided by law.

3.2 Required Membership

3.2.1 All employees shall, not later than the thirty-first (31st) day following the commencement of their employment, become and remain members of the Association in good standing. "Membership in good standing" shall be defined to mean employed members in the Association who tender periodic dues and initiation fees uniformly required by the Association as a condition of acquiring or retaining membership.

3.2.2 New Employee Notices: The Association will provide copies of membership applications and the Collective Bargaining Agreement to the Medical Center and the Medical Center will furnish each new employee with a copy of this Agreement and a membership application at the time of employment. Each new employee shall be informed of the provisions of this Section immediately upon employment.

3.2.3 New Employee Orientation: The Medical Center shall provide an up to thirty (30) minute period after the lunch break for each New Registered Nurse orientation for a Nurse Representative or her/his designee to provide new members of the bargaining unit with information about the Contract and the Association. The Nurse Representative must be on her/his own non-work time but may be eligible for payment by the Medical Center, up to thirty (30) minute orientation provision, subject to the limits under Section 36.4. The Nurse Representative will request a list of the scheduled dates for nursing orientation from Nursing Education.

3.2.4 The Medical Center shall supply the Association with a written notice of the names and addresses and classifications of work of new employees, and the names of employees terminated, such notice to be furnished not later than the tenth (10th) of the following month.

3.2.5 Maintenance of Membership: Upon notice from the Association and after counseling by Association and Medical Center representatives, an employee who fails to meet required membership shall be given 14 days' notice of termination or shall be allowed to resign with proper notice to the Medical Center.

3.2.6 In cases of such termination by the Medical Center, the employee may appeal this matter to a committee equally composed of Medical Center and Association Representatives. Unless so appealed, the discharge shall be completed within fourteen (14) days.

3.3 Voluntary Written Assignment of Wages

3.3.1 During the term of this Agreement, the Medical Center will honor written assignments of wages to the Association for payment of monthly dues, provided such assignments are submitted in a form agreed to by the Medical Center and the Association.

3.3.2 The Medical Center will promptly remit the monies deducted pursuant to such assignments with a written statement of the names of the employees for whom deductions were made.

3.3.3 Normally, the deduction of such assigned wages will be made on the first pay period of each month for the then current Association membership fees. However, the Association and the Medical Center may make other arrangements by mutual consent.

3.3.4 The Association will hold harmless the Medical Center against any claim or obligation which may be made by any person by reason of the deduction of Association membership fees, including the cost of defending against such claim or obligation. The Association will have no monetary claim against the Medical Center by reason of failure to perform under this Section.

3.4 No Discrimination.

3.4.1 There shall be no discrimination by the Medical Center against any employee or applicant for employment on account of membership in or activity on behalf of the Association.

3.4.2 Neither the Medical Center nor the Union shall discriminate against any employee or applicant for employment by reason of race, color, sex, age, disability, veteran status, sexual orientation, marital status or medical condition (cancer or genetic testing), all as defined by applicable law.

ARTICLE 4. PERSONNEL CATEGORIES

4.1 Definitions of Personnel Categories

4.1.1 Full-time Nurse. A Nurse who is regularly employed to work a predetermined schedule of forty hours per week.

4.1.2 Part-time Nurse. A Nurse who is regularly employed to work a predetermined schedule of at least twenty but less than forty hours per week.

4.1.3 Short-hour. A Nurse who is regularly scheduled to work on a predetermined work schedule of less than twenty hours per week.

4.1.4 Casual. A Nurse who is employed to work on an intermittent or availability basis.

4.1.5 Temporary. A Nurse who is hired as an interim replacement or for temporary work on a predetermined schedule for a period of up to three months unless that period is mutually extended by the RN, the Association and the Medical Center.

4.2 Staff Nurse Classifications

4.2.1 Staff Nurse I. A Nurse employed by the Medical Center who has less than six (6) months of recent hospital, clinic, or similar nursing experience.

4.2.2 Staff Nurse II. A Nurse employed by the Medical Center who has at least six (6) months of recent hospital, clinic, or similar nursing experience.

4.2.3 Staff Nurse III (ABSMC). A Nurse employed by Alta Bates Summit Medical Center who has successfully completed the Staff Nurse III requirements outlined in the Staff Nurse III program adopted on June 22, 1994.

4.2.4 Clinical Nurse III (SMC). A Nurse employed by Summit Medical Center who meets the performance standards and qualifications of the Clinical Nurse III position as set forth in Appendix "C".

4.2.5 Clinical Nurse IV (SMC). A Nurse employed by Summit Medical Center who meets the performance standards and qualifications of the Clinical Nurse IV position as set forth in Appendix "C".

4.2.6 Charge Nurse. A Nurse who has been selected for a Charge Nurse position as provided in Appendix B.

ARTICLE 5. COMPENSATION

5.1 Salaries

5.1.1 A Staff Nurse I shall receive the appropriate Staff Nurse I salary for the first six months of employment and will move automatically to the first step for Staff Nurse II upon the completion of six months of employment. Upon the completion of one (1) year of employment, the Nurse will move to the second step for the Staff Nurse II and will thereafter continue to advance each year through the remaining steps.

| Rates effective [illegible] | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Contract Increase | 3.0% | | | | | | | | | | |
| Shift Differentials | PM | NOC | | | | | | | | | |
| Hospital | 4.30 | 7.47 | | | | | | | | | |
| Per Diem/Short Hour | 4.30 | 9.24 | | | | | | | | | |
| | | | | | | | Tenure Steps | | | | |
| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | [illegible] Year | 11th Year | [illegible] Year | 20th Year | 25th Year |
| Staff Nurse I | Day | 38.97 | | | | | | | | | |
| RN Coordinator I | PM | 40.37 | | | | | | | | | |
| | NOC | 43.84 | | | | | | | | | |
| Staff Nurse II | Day | 37.35 | [illegible] | [illegible] | 41.15 | [illegible] | [illegible] | 44.75 | [illegible] | 46.57 | 47.60 |
| RN Coordinator II | PM | 41.85 | 42.72 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | 44.82 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 54.04 | [illegible] |
| Certified Staff Nurse II | Day | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 47.50 | [illegible] |
| Certified RN Coordinator II | PM | 42.40 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 52.73 |
| | NOC | [illegible] | [illegible] | 47.72 | 48.44 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Staff Nurse III | Day | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 47.84 | [illegible] | [illegible] |
| | PM | [illegible] | [illegible] | 45.74 | [illegible] | [illegible] | [illegible] | [illegible] | 52.24 | [illegible] | [illegible] |
| | NOC | [illegible] | 47.40 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Certified Staff Nurse III | Day | [illegible] | 41.14 | [illegible] | 45.08 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | PM | [illegible] | 45.44 | [illegible] | [illegible] | [illegible] | [illegible] | 52.23 | [illegible] | [illegible] | [illegible] |
| | NOC | 47.47 | [illegible] | [illegible] | 51.55 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Certified Staff Nurse IV | Day | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 50.13 | 51.14 | [illegible] | [illegible] |
| | PM | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 57.40 | [illegible] | [illegible] | [illegible] |
| Charge Nurse I | Day | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | PM | [illegible] | [illegible] | [illegible] | 49.17 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | 5th Year | [illegible] Year | [illegible] Year | 20th Year | 25th Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Charge Nurse I | Day | 41.99 | 43.05 | 44.21 | 45.10 | 46.18 | 47.19 | [illegible] | 51.14 | 52.16 | [illegible] |
| | PM | 46.19 | 47.25 | [illegible] | 50.40 | [illegible] | [illegible] | 54.45 | [illegible] | [illegible] | 57.50 |
| | NOC | [illegible] | [illegible] | 51.[illegible] | [illegible] | [illegible] | 54.82 | 57.[illegible] | [illegible] | [illegible] | [illegible] |
| Staff Nurse II-PD/Short hour | Day | [illegible] | [illegible] | [illegible] | 51.48 | 52.76 | [illegible] | [illegible] | 47.27 | [illegible] | [illegible] |
| RN Coordinator II-PD/Short hour | PM | 50.[illegible] | [illegible] | 53.94 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | 57.28 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 47.53 | [illegible] |
| Certified Staff Nurse II-PD/Short hour | Day | 47.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 57.06 | [illegible] | [illegible] | [illegible] |
| Certified RN Coordinator II-PD/Short hr | PM | [illegible] | 53.59 | [illegible] | 56.79 | 39.14 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | 54.87 | [illegible] | 58.85 | 61.80 | 64.19 | [illegible] | [illegible] | 67.34 | [illegible] | [illegible] |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rates effective 10/05/2008 | | | | | | | | | | | |
| Contract Increase | | 3.0% | | | | | | | | | |
| Shift Differentials | PM | NOC | | | | | | | | | |
| Benefited | 4.[illegible] | 7.[illegible] | | | | | | | | | |
| Per Diem/Short Hour | 4.[illegible] | [illegible] | | | | | | | | | |
| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | 5th Year | [illegible] Year | [illegible] Year | [illegible] Year | 25th Year |
| Staff Nurse I | | 37.1[illegible] | | | | | | | | | |
| RN Coordinator I | | 41.57 | | | | | | | | | |
| | | 44.[illegible] | | | | | | | | | |
| Staff Nurse II | Day | [illegible] | 38.57 | 40.64 | [illegible] | 44.57 | [illegible] | [illegible] | 47.03 | 47.[illegible] | [illegible] |
| RN Coordinator II | PM | [illegible] | [illegible] | 43.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 51.44 | [illegible] | 52.34 |
| | NOC | [illegible] | 47.[illegible] | [illegible] | 50.07 | 52.[illegible] | [illegible] | [illegible] | 54.71 | [illegible] | [illegible] |
| Certified Staff Nurse II | Day | [illegible] | 40.[illegible] | 41.40 | 43.2[illegible] | 45.[illegible] | [illegible] | 47.03 | 47.[illegible] | [illegible] | [illegible] |
| Certified RN Coordinator II | PM | 43.[illegible] | [illegible] | 45.[illegible] | 47.[illegible] | [illegible] | [illegible] | 51.44 | [illegible] | 53.24 | 54.[illegible] |
| | NOC | [illegible] | 46.05 | 48.14 | [illegible] | 52.[illegible] | [illegible] | 54.71 | [illegible] | [illegible] | 57.[illegible] |
| Staff Nurse III | Day | 41.[illegible] | 41.[illegible] | 42.[illegible] | 44.80 | [illegible] | 47.46 | 48.[illegible] | [illegible] | [illegible] | 51.[illegible] |
| | PM | 44.[illegible] | [illegible] | 47.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | 48.24 | [illegible] | 52.[illegible] | 54.22 | [illegible] | [illegible] | 57.07 | [illegible] | [illegible] |
| Certified Staff Nurse III | Day | 41.20 | [illegible] | 43.56 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 51.[illegible] | [illegible] |
| | PM | [illegible] | [illegible] | 47.34 | [illegible] | 51.[illegible] | [illegible] | [illegible] | 54.7[illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | 50.07 | 51.21 | [illegible] | [illegible] | [illegible] | 57.07 | [illegible] | [illegible] | [illegible] |

6

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Certified Staff Nurse IV | Day | [illegible] | 44.22 | 45.54 | 47.[illegible] | [illegible] | [illegible] | 51.[illegible] | 52.[illegible] | 53.71 | [illegible] |
| | PM | 47.30 | 48.74 | [illegible] | 51.[illegible] | 54.[illegible] | 55.04 | [illegible] | 57.0[illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | 52.01 | [illegible] | 55.17 | [illegible] | [illegible] | [illegible] | [illegible] | 61.2[illegible] | 62.47 |
| Charge Nurse I | Day | 47.[illegible] | 42.1[illegible] | [illegible] | 45.1[illegible] | [illegible] | [illegible] | [illegible] | 51.27 | 52.[illegible] | [illegible] |
| | PM | [illegible] | 47.55 | [illegible] | 50.[illegible] | [illegible] | [illegible] | 54.[illegible] | 55.[illegible] | [illegible] | 57.77 |
| | NOC | [illegible] | 50.[illegible] | 51.[illegible] | [illegible] | [illegible] | [illegible] | 57.[illegible] | [illegible] | [illegible] | 61.24 |
| Charge Nurse II | Day | 42.0[illegible] | 44.[illegible] | 45.54 | 47.[illegible] | [illegible] | 50.[illegible] | 51.[illegible] | [illegible] | 53.71 | 54.78 |
| | PM | 47.[illegible] | 48.74 | [illegible] | 51.30 | 54.05 | [illegible] | [illegible] | 57.[illegible] | 64.[illegible] | 58.[illegible] |
| | NOC | 50.77 | 52.01 | 53.[illegible] | 55.17 | 57.32 | [illegible] | [illegible] | [illegible] | 61.[illegible] | 62.47 |
| Staff Nurse II-PD/Short hour | Day | [illegible] | 44.48 | 50.[illegible] | [illegible] | [illegible] | 56.50 | [illegible] | [illegible] | [illegible] | 61.16 |
| RN Coordinator II-PD/Short hour | PM | 52.51 | [illegible] | 55.22 | 57.40 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | 57.71 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 47.[illegible] | [illegible] | [illegible] | 70.77 |
| Certified Staff Nurse II-PD/Short hour | Day | 44.[illegible] | 50.45 | 31.81 | 54.04 | [illegible] | [illegible] | [illegible] | [illegible] | 61.[illegible] | 62.38 |
| Certified RN Coordinator II-PD/Short hr | PM | [illegible] | 54.57 | 56.[illegible] | [illegible] | 50.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | 61.45 | [illegible] | [illegible] | 67.2[illegible] | [illegible] | [illegible] | 70.77 | 72.05 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Rates effective [illegible] | | | | | | | | | | | |
| Contract Increase | 3.0% | | | | | | | | | | |
| Shift Differentials | PM | NOC | | | | | | | | | |
| Benefited | 4.[illegible] | 7.[illegible] | | | | | | | | | |
| Per Diem/Short Hour | 4.[illegible] | [illegible] | | | | | | | | | |
| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | 5th Year | [illegible] Year | [illegible] Year | [illegible] Year | 25th Year |
| Staff Nurse I | Day | [illegible] | | | | | | | | | |
| RN Coordinator I | PM | 42.[illegible] | | | | | | | | | |
| | NOC | [illegible] | | | | | | | | | |
| Staff Nurse II | Day | [illegible] | 40.7[illegible] | 41.[illegible] | [illegible] | 45.64 | [illegible] | 47.[illegible] | [illegible] | [illegible] | [illegible] |
| RN Coordinator II | PM | 44.19 | 45.[illegible] | 48.42 | [illegible] | [illegible] | 51.11 | 52.04 | [illegible] | [illegible] | [illegible] |
| | NOC | 47.54 | [illegible] | [illegible] | 51.57 | [illegible] | [illegible] | [illegible] | [illegible] | 57.32 | [illegible] |
| Certified Staff Nurse II | Day | 40.41 | 41.[illegible] | 42.70 | 44.[illegible] | 45.53 | 47.[illegible] | [illegible] | 41.40 | 30.[illegible] | 51.40 |
| Certified RN Coordinator II | PM | 44.[illegible] | [illegible] | 47.[illegible] | 48.[illegible] | 61.11 | 52.04 | [illegible] | [illegible] | 54.[illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | 52.41 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Staff Nurse III | Day | 41.[illegible] | 42.[illegible] | 43.[illegible] | [illegible] | 47.[illegible] | [illegible] | [illegible] | 50.[illegible] | [illegible] | [illegible] |
| | PM | 45.16 | 47.[illegible] | 48.51 | 50.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 57.48 |
| | NOC | [illegible] | [illegible] | 51.[illegible] | [illegible] | [illegible] | [illegible] | 57.[illegible] | [illegible] | [illegible] | 60.[illegible] |

7

| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Tenure Steps 9th Year | 11th Year | 16th Year | 20th Year | 25th Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Certified Staff Nurse III | Day | [illegible] | [illegible] | 44.33 | 45.75? | [illegible] | [illegible] | [illegible] | 61.48? | 62.92? | [illegible] |
| | PM | [illegible] | 48.22 | [illegible] | 51.81? | [illegible] | 54.42? | [illegible] | [illegible] | 67.78? | [illegible] |
| | NOC | [illegible] | [illegible] | 52.78? | 54.67? | [illegible] | 57.78? | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Certified Staff Nurse IV | Day | 44.57? | [illegible] | [illegible] | [illegible] | 51.31? | 52.14? | [illegible] | [illegible] | [illegible] | [illegible] |
| | PM | [illegible] | [illegible] | 51.47? | [illegible] | [illegible] | [illegible] | 57.74? | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 61.10? | 62.16? | 63.24? | [illegible] |
| | | | | | | | | | | | |
| Charge Nurse I | Day | [illegible] | 44.46? | [illegible] | 47.56? | 49.75? | 50.76? | 51.77? | [illegible] | [illegible] | [illegible] |
| | PM | 47.33? | [illegible] | 50.19? | 52.14? | [illegible] | [illegible] | [illegible] | 57.57? | [illegible] | [illegible] |
| | NOC | 51.11 | [illegible] | [illegible] | [illegible] | 57.47? | [illegible] | [illegible] | 60.73? | 61.79? | [illegible] |
| | | | | | | | | | | | |
| Charge Nurse II | Day | 44.37? | [illegible] | [illegible] | [illegible] | 51.12? | 52.16? | [illegible] | 54.24? | [illegible] | [illegible] |
| | PM | [illegible] | [illegible] | 51.47? | [illegible] | [illegible] | [illegible] | 57.74? | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 61.70? | 62.14? | 63.24? | [illegible] |
| | | | | | | | | | | | |
| Staff Nurse II-PD/Short hour | Day | [illegible] | [illegible] | 52.28? | 54.58? | [illegible] | [illegible] | 59.39? | [illegible] | 61.75? | [illegible] |
| RN Coordinator II-PD/Short hour | PM | 54.08? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 65.10? | [illegible] | 67.58? |
| | NOC | 64.44? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 70.45? | [illegible] | 72.80? |
| | | | | | | | | | | | |
| Certified Staff Nurse II-PD/Short hour | Day | [illegible] | 51.39? | [illegible] | 56.85? | 58.19? | [illegible] | [illegible] | 61.78? | [illegible] | [illegible] |
| Certified RN Coordinator II-PD/Short hr | PM | [illegible] | [illegible] | 57.84? | [illegible] | 62.75? | [illegible] | [illegible] | [illegible] | 67.[illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 70.48? | 71.[illegible] | 72.80? | 74.15? |

| [illegible] | | |
|---|---|---|
| | | |
| Contract Increase: | [illegible]% | |
| | | |
| Shift Differentials | PM | NOC |
| [illegible] | 4.[illegible] | [illegible] |
| Per [illegible] Hour | 4.[illegible] | 10.[illegible] |

| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Tenure Steps 5th Year | 11th Year | 16th Year | 20th Year | 25th Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Staff Nurse I | Day | 38.44? | | | | | | | | | |
| RN Coordinator I | PM | 44.10 | | | | | | | | | |
| | NOC | 47.27? | | | | | | | | | |
| | | | | | | | | | | | |
| Staff Nurse II | Day | [illegible] | [illegible] | [illegible] | [illegible] | 47.01? | 47.35? | [illegible] | [illegible] | 50.89? | [illegible] |
| RN Coordinator II | PM | [illegible] | [illegible] | 47.31? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | 50.14? | [illegible] | [illegible] | 55.17? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Certified Staff Nurse II | Day | 41.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 51.81? | [illegible] |
| Certified RN Coord II | PM | [illegible] | 47.31? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 54.60? | [illegible] |
| | NOC | [illegible] | [illegible] | 52.14 | 54.0[illegible] | [illegible] | 57.07? | [illegible] | [illegible] | [illegible] | 61.11? |

| Classification | Shift | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Tenure Steps 9th Year | 11th Year | 16th Year | 20th Year | 25th Year |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Staff Nurse III | Day | [illegible] | 44.06? | [illegible] | 47.21? | [illegible] | [illegible] | 61.30? | [illegible] | [illegible] | [illegible] |
| | PM | 47.84? | 44.77? | [illegible] | [illegible] | 54.05? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | 51.81? | [illegible] | 52.24? | [illegible] | 57.62? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Certified Staff Nurse III | Day | 43.71 | [illegible] | [illegible] | [illegible] | [illegible] | 51.28? | [illegible] | [illegible] | 64.51? | [illegible] |
| | PM | 48.40? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | 51.87? | 53.12? | 54.65? | [illegible] | [illegible] | [illegible] | [illegible] | 61.40? | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Certified Staff Nurse IV | Day | [illegible] | 47.02? | [illegible] | 50.37? | [illegible] | [illegible] | 54.77? | [illegible] | [illegible] | [illegible] |
| | PM | [illegible] | 51.71 | [illegible] | [illegible] | 57.34? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | 55.18? | [illegible] | [illegible] | [illegible] | 61.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Charge Nurse I | Day | [illegible] | 41.76? | 47.00? | [illegible] | 51.54? | [illegible] | 53.31? | [illegible] | [illegible] | [illegible] |
| | PM | 49.17? | 50.45 | 51.[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 61.57? |
| | NOC | [illegible] | [illegible] | 54.11? | 57.17? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 64.74? |
| | | | | | | | | | | | |
| Charge Nurse II | Day | 45.70 | 47.02? | [illegible] | [illegible] | [illegible] | 54.70? | 64.77? | [illegible] | [illegible] | 58.17? |
| | PM | 50.39? | 51.71? | 53.01? | [illegible] | 57.34? | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Staff Nurse II-PD/Short hour | Day | [illegible] | 52.48? | [illegible] | 54.20? | [illegible] | 59.54? | [illegible] | 62.59? | [illegible] | [illegible] |
| RN Coordinator II-PD/Short hour | PM | 55.70? | 57.17 | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 67.05? | [illegible] | [illegible] |
| | NOC | 61.21? | [illegible] | 64.10? | [illegible] | [illegible] | 70.14? | 71.34? | [illegible] | [illegible] | [illegible] |
| | | | | | | | | | | | |
| Certified Staff Nurse II-PD/Short hour | Day | 52.04? | 53.[illegible] | [illegible] | 57.[illegible] | [illegible] | 61.14? | [illegible] | [illegible] | [illegible] | [illegible] |
| Certified RN Coordinator II-PD/Short hr | PM | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 67.[illegible] | [illegible] | [illegible] | 70.[illegible] |
| | NOC | [illegible] | [illegible] | [illegible] | [illegible] | 70.14 | 71.[illegible] | 72.5[illegible] | [illegible] | [illegible] | [illegible] |

5.2 Tenure Increases

5.2.1 Regular Nurses. Upon completion of each twelve (12) months of continuous employment, the Nurse shall receive the appropriate tenure increase in accordance with the schedule listed in Article 5.1, Salaries. A Nurse must have completed eight (8), ten (10), , fifteen (15), twenty (20), or 25 years of service with the Medical Center, respectively, to be eligible for the 9th, 11th, 16th, 21st, or 25th year steps.

5.2.2 Short-hour and Casual Nurses. Short-hour and Casual Nurses shall be eligible for progression to the next tenure step upon the accumulation of one thousand (1000) hours of work, provided no Nurse shall advance more than one (1) tenure step during the twelve (12) month period commencing with the date of employment or the date of the Nurse's most recent tenure advancement.

5.2.3 Procedure for payment of tenth year of service step to short-hour and Casual Nurses. A Short-hour or Casual Nurse who has eight (8) or more years of service, but has not

completed 1,000 hours of work since achieving Step 5, will remain at Step 5 until the 1,000 hours are worked. The Nurse then will be moved to the 9th year step if at least twelve (12) months have elapsed since achieving Step 5. Similarly, Short-hour and Casual Nurses will progress to the 11th, 16th 21st, and 25th year steps based upon the completion of 10,15, or 25 years of service, respectively, and the completion of at least 1000 hours of work and 12 months since the last step increase.

5.2.4 A short-hour or Casual Nurse who is currently on a step lower than Step 5 and who has ten (10) or more years of service, will remain on the Nurse's current step until completing 1,000 hours and will then move to the next step in the scale as stated in Article 5.2.2.

5.3 Credit For Previous Experience

5.3.1 Tenure Credit. Newly employed Nurses shall receive one (1) year tenure credit, for salary purposes only, for each year of previous experience within the last nine (9) years prior to the date of employment at the Medical Center and therefore may be hired at up to the 9th Year Step. Regular Nurses hired between January 1, 1998 and July 1, 2002, at Step 5, who would have been hired at the 9th Year Step under the collective bargaining agreement in effect as of July 1, 2002, shall be moved to the 9th Year Step, effective at the start of the first payroll period following ratification. Such nurses must meet the tenure obligations of the agreement to move to other tenure steps.

5.3.2 Automatic Credit. Newly employed Nurses shall receive tenure credit for previous experience, pursuant to Article 5.3.1 above, automatically where a Nurse has been previously employed by an accredited hospital or any facility attached thereto or accredited nursing home with "accredited" defined to be accreditation by the Joint Commission or Medicare accreditation. Credit for previous experience shall also be given automatically where a Nurse has been previously employed by accredited foreign hospitals, such as Canadian hospitals, or by military or civilian hospitals operated by the federal government.

5.3.3 Related Experience. Tenure credit for previous employment which does not fully conform to the above definition of previous experience shall apply if such experience has been bona fide Registered Nurse work and the professional experience relates to the requirements of the position filled.

5.3.4 Previous Part-Time Experience. For the purpose of this section, any previous Part-time experience which has been on a regular predetermined basis of twenty (20) hours per week or more shall be considered as if it were Full-time experience.

5.3.5 Other Experience. Tenure credit for previous employment which does not fully conform to the above definition of previous experience shall be discussed at the request of the Association or the Medical Center.

5.3.6 Inter-Affiliate Employment. The Medical Center shall recognize an employee's system-wide seniority for benefits purposes only consistent with the applicable Inter-

Affiliate Employment Policy. For a reduction in force, recall or bidding, only Medical Center seniority shall be used, consistent with the terms of this Agreement. Recognition of an employee's system-wide seniority for the purposes provided in the applicable policy shall not result in the displacement or the reduction in hours of any employee of the Medical Center.

5.4 Promotion

Any Nurse promoted by the Medical Center will retain her/his current step when moving to the new classification.

5.5 Differentials

5.5.1 Shift Differentials. Regular, Short-hour and Casual Nurses who commence a shift of four (4) hours or more at or after 12:00 noon and prior to 6:00 a.m. and terminating after 6:00 p.m. shall be paid a shift differential; if half or more of the hours are scheduled to be worked after 11 PM, the shift is defined as a night shift. Regular and Short-hour Nurses assigned to evening shift work shall receive an additional 11.5% of the first year rate of the Staff Nurse II day salary. Those assigned to night shift work shall receive an additional twenty percent (20%) of the first year rate of the Staff Nurse II day salary, except that Casual and Short-hour Nurses assigned to night shift work shall receive an additional twenty percent (20%) of the first year rate of the Staff Nurse II-Casual and Short-hour day salary.

5.5.2 Shift Differential While on Overtime. A Nurse who works beyond his/her normal eight (8) hour shift by four (4) hours or more shall be paid at the next shift rate for those overtime hours except in the case of a night shift Nurse who works beyond her/his regularly scheduled eight (8) hours into the day shift, in which case the overtime hours shall be paid at the night shift rate.

5.5.3 Weekend Differential. All Nurses working a weekend shift shall be paid one additional dollar ($1.00) per hour for each shift worked.

5.5.4 Cross-Campus Floating. The parties shall work together to develop a program relating to the issues of floating between campuses, i.e., SMC and ABSMC. During the term of this Agreement, Nurses regularly assigned to either SMC or ABSMC who agree to float between campuses shall receive a differential of one dollar ($1.00) per hour. (Nurses in a cross-campus float pool established pursuant to Appendix B, Section III, are not eligible for the float differential.)

5.5.5 Preceptor Differential

5.5.5.1 Newly hired nurses and nurses who have transferred to a new facility or cluster will not be counted in the staffing complement while being precepted. The length of precepting shall be based on the nurse's prior experience and/or training and determined by the Nurse Manager/designee. A preceptor is a Nurse appointed and responsible for precepting another hospital employee, Paramedic, or a final semester A.D.N., BSN or MSN student. The preceptorship

will be based on the existing unit/program-based orientation/precepting packet, which shall include skills checklists and competencies and shall include written objective, measurable and time-limited goals. All documents are to be provided to the Nurse Manager/designee at the end of the preceptor period.

5.5.5.2 Nurses assigned by a facility to perform as a preceptor shall attend a preceptor training program at the request of the facility. The cost of the training program shall be borne by the facility, and the nurse shall be paid her/his regular hourly rate of pay for attending the training, and will receive continuing education units for participation in the training.

5.5.5.3 The Nurse shall be paid a premium of $1.00 for each hour the RN is engaged in precepting.

5.6 Standby and Call-Back Pay

5.6.1 Unscheduled Standby Nurses on standby shall be paid at the rate of one-half (½) the straight-time rate when on standby, including shift differential.

5.6.2 Holiday Standby Nurses on standby on a paid holiday will be paid at the rate of three quarters (3/4) the straight-time rate for such Nurse, including shift differential.

5.6.3 On Standby If called to work when on standby, a Nurse shall be compensated at time and one-half (1½) the straight-time rate, including shift differential, for all time worked when on standby.

5.6.4 Not on Standby A regular Full-time Nurse called back on the Nurse's regularly scheduled days-off under the provisions of this paragraph shall receive pay at the rate of time and one-half (1½) including shift differential for all hours worked when called back.

5.6.5 Guaranteed Pay Nurses recalled to work in accordance with this section will be guaranteed three (3) hours of work or payment in lieu thereof, except that a Nurse who is not on standby and who is called back within the Nurse's working day shall receive a guarantee of four (4) hours' work or payment in lieu thereof.

5.7 Early Call-In

Nurses who are called in and agree to begin work prior to the commencement of their assigned shifts shall be compensated as follows:

Day Shift: A day shift Nurse will receive NOC shift differential for all hours worked on the NOC shift. When the day shift begins, the day shift rate will apply.

PM Shift: A PM shift Nurse will receive PM shift differential for all hours worked when work commences on the day shift.

NOC Shift: A NOC shift Nurse will receive NOC shift differential for all hours worked when work commences on the PM shift.

5.8 Late Call-In

In the case where an employee is called to work less than one hour prior to the start of a shift and only works seven hours of the shift, such Nurse shall be compensated for eight (8) hours of work. In cases where a Nurse is called to work less than one hour prior to the start of a shift and arrives within one (1) hour of the time the Nurse was called, the Nurse will be paid for time worked plus an additional hour, not to exceed eight (8) hours.

5.9 Charge Pay

Each unit and shift shall have an RN assigned to be in charge when more than one staff member is present. All RNs so assigned shall receive additional compensation of $2.50 per hour. Nurses relieving the Charge Nurse will be specifically designated and oriented to the role and responsibilities prior to assignment. Such designation and assignment shall be voluntary, except that the Medical Center may assign the relief Charge role to a regular Nurse on duty if no previously designated Nurse is available on duty on that shift in that unit. Registry Nurses will not be assigned the charge role, and float or per diem Nurses will be assigned only if regular unit staff are not available. For the purposes of this subsection only, "staff member" means either a second RN, or another nursing department employee assigned to that unit under the clinical supervision of the RN. Eligibility for Charge Pay does not mean that the Nurse receiving this compensation is defined as a Charge Nurse for any other purpose.

5.10 Specialty Certification

From July 1, 2000, to and including May 31, 2001, Article 5.10 will apply to SMC Nurses only. The role of specialty certifications in the ABSMC Clinical Ladder program shall be discussed by the Clinical Ladder task force. Effective June 1, 2001, this Article shall also apply to ABSMC Nurses, unless the parties otherwise mutually agree.

5.10.1 Any regular, Short-hour or Casual Nurse who acquires certification (as defined in Appendix C, Examples of Certifications in Specialty) in her/his area of specialty shall receive additional compensation of two percent (2%) above the Nurse's current salary. The Nurse shall continue to be compensated at this increased salary rate as long as s/he maintains the certification and continues to work in the specialty area for which s/he has attained certification. The date upon which the Nurse presents proof of certification shall be the effective date of the Nurse's increased compensation.

5.10.2 A Nurse assigned to work in more than one specialty area shall choose from among those areas the specialty in which s/he becomes certified.

5.10.3 If no certification currently exists in a Nurse's area of specialty, the Nurse may choose to acquire certification either as a CCRN or through the ANA Med-Surg Certification Exam.

The current list of certifications (Appendix D) shall be updated as certification becomes available in a particular specialty.

5.11 Effective Date of Increases

Wage increases will be implemented on the nearest starting biweekly payroll period to the effective date set forth above.

5.12 Standard Rounding

All wage increases will be calculated on the basis of standard rounding to the nearest one cent.

ARTICLE 6. CHANGE IN STATUS

6.1 Application

When a Nurse changes from a Full-time to a Part-time schedule or from a Part-time to a Full-time schedule, the Nurse shall be subject to the following rules with respect to tenure steps and accumulation of fringe benefits.

6.2 Regular Full-Time to Regular Part-Time

(a) stay in same tenure step;

(b) keep same anniversary date for tenure and benefits;

(c) carry over fringe benefit accumulation to date of change, prorated fringe benefits after date of change.

6.3 Regular (Full-Time or Part-Time) To Short-hour or Casual

(a) stay in same tenure step;

(b) further tenure step movement on next anniversary date, provided Nurse meets the one thousand (1,000) hour work requirement set forth above (Article 5.2.2, Short-hour and Casual Nurses);

(c) pay off the earned and accrued vacation for which the Nurse is eligible and pay off earned and unpaid holidays.

6.4 Regular Part-Time to Regular Full-Time

(a) stay in same tenure step;

(b) keep same anniversary date for tenure and benefits;

(c) carry over fringe benefits accumulated as of date of change; after date of change, accumulate fringe benefits at Full-time rate.

6.5 Short-hour or Casual to Regular Full-Time

(a) stay in same tenure step;

(b) further tenure step movement on next anniversary date, provided the Nurse meets the one thousand (1,000) hour work requirement as set forth above (Article 5.2.2);

(c) starts fringe benefit accumulation at Full-time rate as of date of change in status. However, if the Nurse previously was a regular Full-time or regular Part-time Nurse at the Medical Center with no break in service, the Nurse retains for fringe benefit accumulations the same date the Nurse had when a regular Full-time or regular Part-time Nurse, adjusted forward for the length of time in Short-hour or Casual status. The Nurse also in such cases retains any unused sick leave accumulated while in regular Full-time or regular Part-time status.

6.6 Short-hour or Casual to Regular Part-Time

(a) stay in same tenure step;

(b) further tenure step movement on next anniversary date, provided the Nurse meets the one thousand (1,000) hour work requirement as set forth above (Article 5.2.2);

(c) starts fringe benefit accumulation at prorated basis as of date of change in status. However, if the Nurse previously had been a regular Full-time or regular Part-time Nurse at the Medical Center with no break in service, the Nurse retains for fringe benefit accumulations the same date the Nurse had when a regular Full-time or regular Part-time Nurse, adjusted forward for the length of time in Short-hour status. The Nurse also in such cases retains any unused sick leave accumulated while in regular Full-time or regular Part-time status.

ARTICLE 7. HOURS OF WORK

7.1 Straight-Time

The straight-time work week shall be forty (40) hours, five (5) days per week. A straight-time day's work will consist of no more than eight (8) hours. For provisions applying to 12-hour shifts, see Appendix I.