1   MAUREEN E. MCCLAIN (State Bar No. 062050)
    Email: mcclain@kmm.com
2   DANIELLE M. ELLIS (State Bar No. 226581)
    Email: ellis@kmm.com
3   KAUFF MCCLAIN & MCGUIRE LLP
    One Post Street, Suite 2600
4   San Francisco, California 94104
    Telephone:   (415) 421-3111
5   Facsimile:   (415) 421-0938

6   Attorneys for Defendant
    ALTA BATES SUMMIT MEDICAL CENTER
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  CHARLOTTE KIRTON,                          CASE NO. CV 07-05863 MHP

12              Plaintiff,                     **DEFENDANT'S NOTICE OF
                                               MOTION AND MOTION FOR
13  v.                                         SUMMARY JUDGMENT, OR IN
                                               THE ALTERNATIVE, PARTIAL
14  ALTA BATES SUMMIT MEDICAL CENTER;          SUMMARY JUDGMENT;
    and DOES 1-20,                             MEMORANDUM OF POINTS AND
15                                             AUTHORITIES IN SUPPORT
                Defendants.                    THEREOF**
16
                                               **DATE:**      June 2, 2008
17                                             **TIME:**      2:00 p.m.
                                               **COURTROOM:** 15, 18th Flr.
18                                             **JUDGE:**     Hon. Marilyn Hall Patel

19                                             COMPLAINT FILED: October 22, 2007
                                               TRIAL DATE: No date set.
20

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                CASE NO. CV 07-05863 MHP

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION..................................................................................2

II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND ...........................2

   A.  Kirton's Employment History.........................................................2

   B.  Kirton's Numerous Disciplinary Actions .......................................3

   C.  The 1996 Arbitration ...................................................................4

   D.  CBA Floating Policy.....................................................................4

   E.  Kirton's November 20 & 21, 2005 Refusal To Float......................5

III. ARGUMENT ...................................................................................5

   A.  Standard Of Proof Under Fed. R. Civ. P. 56................................5

   B.  Kirton's Claims Are Preempted By Section 301 Of The Labor-
       Management Relations Act...........................................................6

       1.  Plaintiff's First Cause Of Action For Discrimination Is
           Preempted..........................................................................7

       2.  Kirton's Second Cause Of Action For Retaliation Is
           Preempted ...........................................................................8

       3.  Kirton's Third Cause Of Action For Breach Of The Covenant
           Of Good Faith And Fair Dealing Is Preempted. ..................8

       4.  Kirton's Fourth Cause Of Action For Intentional Infliction Of
           Emotional Distress Is Preempted.......................................8

       5.  Kirton's Fifth Cause Of Action For Negligence Is Preempted ..........9

       6.  Kirton's Sixth Cause Of Action For Wrongful Termination Is
           Preempted ........................................................................10

       7.  Kirton's Seventh Cause Of Action For Harassment Is
           Preempted. ........................................................................10

       8.  All Of Plaintiff's Claims Are Subject To Dismissal Because
           The Applicable Six-Month Statute Of Limitations Has Expired. .....10

   C.  Assuming, Arguendo, That Kirton's First Cause Of Action For
       Discrimination Is Not Preempted, It Still Fails The Test Provided In
       McDonnell Douglas Corp. v. Green. ..........................................11

       1.  Kirton Cannot Establish A Prima Facie Case Of Race or
           National Origin Discrimination...........................................11

       2.  Kirton Has No Evidence Of An Intent To Discriminate Based
           On Her Race Or National Origin. .......................................12

       3.  Assuming Arguendo Kirton Could Establish A Prima Facie of
           Discrimination (And Surely She Cannot) ABSMC Has More
           Than Ample Evidence To Rebut It. ....................................15

       4.  ABSMC Is Entitled To Summary Judgment Because Kirton
           Has No Evidence Whatsoever Of Pretext, Much Less Any
           Evidence Of Race Discrimination. .....................................16

- i -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY
JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

## TABLE OF CONTENTS
### (continued)

Page

    a.    Kirton Has No Evidence To Support The Theory That She Was Treated Differently Than Other Similarly Situated Nurses...............................................................17

D.    Kirton's Second Cause Of Action For Retaliation Fails Because Defendant Had Legitimate And Non-Retaliatory Business Reasons For Its Employment Decisions......................................................18

E.    Assuming, Arguendo, Plaintiff's Third Cause Of Action For Breach Of The Covenant Of Good Cause And Fair Dealing Is Not Preempted, This Claim Still Fails Because There Was Good Cause For Her Termination. ...........................................................19

F.    Assuming, Arguendo, Plaintiff's Fourth Cause Of Action For Intentional Infliction Of Emotional Distress Is Not Preempted, Kirton's Claims Still Fail Because There Is No Evidence Of Intent Or Extreme Conduct..........................................................19

G.    Assuming, Arguendo, That Plaintiff's Fifth Cause Of Action For Negligence Is Not Preempted, Kirton's Claim Still Fails. ..........................20

H.    Assuming, Arguendo, that Plaintiff's Sixth Cause Of Action for Wrongful Termination Is Not Preempted, Kirton's Claim Still Fails ...........20

I.    Assuming, Arguendo, Plaintiff's Seventh Cause Of Action For Harassment Based On Race And National Origin Is Not Preempted, The Claim Still Fails.............................................................21

J.    Kirton Cannot Meet Her Burden Of Establishing Any Entitlement To Punitive Damages. ................................................................23

IV.    CONCLUSION ................................................................................24

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. CV 07-05863 MHP

# TABLE OF AUTHORITIES

Page(s)

## FEDERAL CASES

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202, 220 (1985) ..............................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 256 (1986) ...........................................................5, 6

*Busey v. P.W. Supermarkets, Inc.*,
    368 F. Supp. 2d 1045, 1054 (N.D. 2005)..................................8

*Carmen v. San Francisco Unified Sch. Dist.*,
    237 F.3d 1026, 1028 (9th Cir. 2001)........................................14

*Caterpillar, Inc. v. Williams*,
    482 U.S. 386, 394 (1987) ..............................................................6

*Celotex Corporation v. Catrett*,
    477 U.S. 317, 325 (1986) ..............................................................6

*DelCostello v. Int'l Bhd. Of Teamsters*,
    462 U.S. 151, 171-172 (1983) ...................................................10

*Domingo v. New England Fish Co.*,
    727 F.2d 1429, 1438 (9th Cir. 1984)........................................11

*Evens v. S&K Equip. Co.*,
    2005 U.S. Dist. LEXIS 36706 (E.D. Mich. 2005).................8

*Faragher v. City of Boca Raton*,
    524 U.S. 775, 141 L.Ed.2d 662, 118 S. Ct. 2275 (1998) .........22

*Fisher v. San Pedro Peninsula Hosp.*,
    214 Cal. App. 3d 590, 610 (1999)............................................22

*Fonseca v. Sysco Food Servs. of Ariz., Inc.*,
    374 F.3d 840, 850 (9th Cir. 2004)............................................11

*Hansen v. United States*,
    7 F.3d 137, 138 (9th Cir. 1993)................................................14

*Harris v. Alumax Mill Prods, Inc.*,
    897 F.2d 400, 403 (9th Cir. 1990)..............................................9

*Harris v. Forklift Sys.*,
    510 U.S. 17, 21 (1993) ................................................................22

- iii -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. CV 07-05863 MHP

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Hyles v. Mensing*,
4
  849 F. 2d 1213, 1216 (9th Cir. Cal. 1988) ................................................................9

5

*Ibarra v. Sunset Scavenger Co.*,
  2003 U.S. Dist. LEXIS 8711, 16-17 (N.D. Cal. 2003) ...............................................16

6

*Kang v. U. Lim Am., Inc.*,
7
  296 F.3d 810, 817 (9th Cir 2002)...............................................................................22

8

*Kirton v. Summit Medical Center*,
  982 F. Supp. 1381, 1386 (N.D. Cal. 1997) .................................................................4
9

*Kohler v. Ericcson, Inc.*,
10
  847 F. 2d 499, 502 (9th Cir. 1988)...........................................................................19

11

*Lindsey v. Shalmy*,
12
  29 F.3d 1382, 1385 (9th Cir. 1994).............................................................................14

13
*Madison v. Motion Picture Set Painters & Sign Writers Local 729*,
  132 F. Supp. 2d 1244, 1253-1254 (C.D. Cal. 2000) .....................................................7
14

*Matsushita Electrical Industry Co. v. Zenith Radio Corp.*,
15
  475 U.S. 574, 586-587 (1986) ......................................................................................6

16
*McDonnell Douglas Corp. v. Green*,
17
  411 U.S. 792 (1973) ...............................................................................................11, 16

18
*Nidds v. Schindler Elevator Corp.*,
  113 F.3d 912, 917-918 (9th Cir. 1996) .......................................................................15
19

*Palmer v. United States*,
20
  794 F.2d 534, 536-539 (9th Cir. 1986) .......................................................................11

21
*Singh v. Estate of Lunalilo*,
22
  779 F Supp 1265, 271 (D. Hawaii 1991) ...................................................................10

23
*Smith v. United Parcel Service, Inc.*,
  776 F.2d 99, 100 (4th Cir. 1985)...............................................................................11
24

*St. Mary's Honor Ctr. v. Hicks*,
25
  509 U.S. 502, 515 (1993) .............................................................................................16

26
*Strother v. Southern Cal. Permanente Med. Group*,
27
  79 F.3d 859, 871 (9th Cir. 1996)..................................................................................21

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA  94104
TELEPHONE (415) 421-3111

- iv -

# TABLE OF AUTHORITIES
## (continued)

Page

*Villiarimo v. Aloha Island Air, Inc.,*
281 F.3d 1054, 1064 (9th Cir. 2002)........................................................................18

*Yartzoff v. Thomas,*
809 F.2d 1371, 1374 (9th Cir. 1987)........................................................................11

## STATE CASES

*Aguilar v. Avis Rent-A-Car System,*
21 Cal. 4th 121, 128 (1999)................................................................................21, 22

*Alcorn v. Anbro Eng'g, Inc.,*
2 Cal. 3rd 493, 499 n.5 (1969)...................................................................................20

*Aquino v. Superior Court,*
21 Cal. App. 4th 847, 856-857 (1993) ......................................................................24

*California Fair Employment and Housing Comm'n v. Gemini Aluminum Corp.,*
122 Cal. App. 4th 1004, 1024-1025 (2004).........................................................18, 23

*Christensen v. Superior Court (Pasadena Crematorium),*
54 Cal. 3d 868, 903 (1991).................................................................................19, 20

*Colarossi v. Coty U.S. Inc.,*
97 Cal. App. 4th 1142, 1152 (2002)..........................................................................18

*Etter v. Veriflo Corp.,*
67 Cal. App. 4th 457, 463-464 (1998) ......................................................................22

*Foley v. Interactive Data Corp.,*
47 Cal.3d 654, 720 (Cal. 1988).................................................................................19

*Guz v. Bechtel Nat'l Inc.,*
24 Cal. 4th 317 (2000)..............................................................................................8

*Janken v. GM Hughes Electronics,*
46 Cal. App. 4th 55-80 (1996) ..................................................................................20

*Nelson v. United Techs.,*
74 Cal. App. 4th 597, 613 n.4 (1999)........................................................................21

*Phillips v. St. Mary Reg'l Med. Ctr.,*
96 Cal. App. 4th 218, 230 & n.35 (2002) ..................................................................21

*Rojo v. Kliger,*
52 Cal.3d 65, 89-91 (1990)........................................................................................21

- v -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. CV 07-05863 MHP

# TABLE OF AUTHORITIES
### (continued)

Page

*Rowe v. Superior Court,*
  15 Cal. App. 4th 1711, 1724 (1993).............................................................24

*Ryan v. International Union of Operating Engineers,*
  F.2d 641, 647 (11th Cir. Fla. 1986)..............................................................9

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,*
  78 Cal. App. 4th 847, 892 (2000)...............................................................24

*Starzynski v. Capital Public Radio,*
  88 Cal. App. 4th 33, 39 (2001).....................................................................8

*Torres v. Parkhouse Tire Serv.,*
  26 Cal. 4th 995, 1001 (2001) ....................................................................20

*Turner v. Anheuser-Busch, Inc.,*
  7 Cal. 4th 1238, 1256 (1994) ....................................................................21

### STATE STATUTES

California Civil Code § 3294(a) .....................................................................24

California Civil Code § 3294(c) .....................................................................24

California Civil Code § 3330............................................................................19

Cal. Gov't Code § 12940................................................................................11

Cal. Gov't Code § 12940(h) ..........................................................................18

Cal. Labor Code §§ 3600, 3601 & 3602.........................................................20

Article I, Section 8 of the California Constitution ............................................21

### FEDERAL REGULATIONS

28 U.S.C. §§ 1331 and 1441(b) ......................................................................2

42 U.S.C. § 2000e-3(a).................................................................................18

29 U.S.C § 185 ......................................................................................... passim

### FEDERAL RULES

Fed. R. Civ. P. 56............................................................................................5

Fed. R. Civ. P. 56(e).......................................................................................6

- vi -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1    PLEASE TAKE NOTICE that on June 2, 2008 at 2:00 p.m., or as soon

2  thereafter as counsel may be heard in Courtroom 15 of the above-entitled Court, located

3  at 450 Golden Gate Ave., 18th Floor, San Francisco, CA, Defendant Alta Bates Summit

4  Medical Center ("ABSMC" or "Hospital") shall ask that the Court to grant summary

5  judgment or in the alternative partial summary judgment in its favor and against Plaintiff

6  Charlotte Kirton ("Kirton" or "Plaintiff") pursuant to Fed. R. Civ. P. 56.

7    ABSMC's motion shall be based upon this Notice of Motion and Motion for

8  Summary Judgment, the accompanying Memorandum of Points and Authorities in

9  support thereof, the excerpts of relevant deposition testimony, the Declarations of

10  Danielle M. Ellis, and Jim DeAngelis, as well as all records and proceedings in this

11  action, and on such other and further matters as may be presented to the Court in

12  connection with the hearing.

13  DATED:    April 28, 2008         Respectfully submitted,

14                        KAUFF MCCLAIN & MCGUIRE LLP

15

16                        By:_____/S/_____

17                             MAUREEN E. MCCLAIN
                             DANIELLE M. ELLIS

18                        Attorneys for Defendant
                        ALTA BATES SUMMIT MEDICAL
19                        CENTER

20

21

22

23

24

25

26

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

-1-

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT / PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

1          **MEMORANDUM OF POINTS AND AUTHORITIES**

2      **I.    INTRODUCTION.**

3              Defendant Alta Bates Summit Medical Center ("ABSMC" or "Hospital")

4      seeks an order granting summary judgment of all claims asserted by Plaintiff Charlotte

5      Kirton ("Kirton") on the grounds that: (1) Kirton's claims are preempted by Section 301 of

6      the Labor Management Relations Act ("LMRA") as pivotal issues surrounding her claims

7      necessitate the Court's interpretation of the collective bargaining agreement; (2) Kirton's

8      claims are barred by the six-month statute of limitations set forth by Section 301 of the

9      LMRA, as the last alleged act of discrimination, harassment and retaliation occurred

10     approximately two years prior to the commencement of this action; and (3) assuming

11     Kirton's claims are not preempted (which they are) she has provided no supporting

12     evidence to substantiate any of her claims.  If the court declines to grant summary

13     judgment as to the entire action, ABSMC seeks partial summary judgment.

14     **II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND.**

15             On October 22, 2007, Plaintiff filed this action in the Superior Court of

16     California in and for the County of Alameda, entitled *Charlotte Kirton v. Alta Bates*

17     *Summit Medical Center; and DOES 1-20*, Alameda County Superior Court Case No. RG

18     07352596 ("Complaint").  On November 20, 2007, ABSMC removed this matter to the

19     United States District Court, on the basis of federal question jurisdiction under 28 U.S.C.

20     §§ 1331 and 1441(b).  The Complaint asserts seven causes of action: (1) discrimination;

21     (2) retaliation; (3) breach of the implied covenant of good faith and fair dealing; (4)

22     intentional infliction of emotional distress; (5) negligence; (6) wrongful termination; and

23     (7) harassment.

24         **A.    Kirton's Employment History.**

25             Kirton began her employment with ABSMC as a Clinical Nurse I in or about

26     April of 1993 (Complaint ¶10).  During that time, Kirton's regular unit was 4-East.  At

27     times, however, Kirton, as well as the other registered nurses, would be required to float

28

- 2 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. CV 07-05863 MHP

1    to other units of the Hospital based on the patient census[1] in the other units.  At the time

2    of her termination in 2005, Kirton was a Clinical Nurse II.  (Kirton Depo. 60:24-25 & 61:1-

3    3).

4    **B.    Kirton's Numerous Disciplinary Actions.**

5    Kirton has received numerous disciplinary actions and suspensions while

6    employed by ABSMC and has been given ample opportunities for improvement.  Some

7    of these disciplinary actions include:

8    • Final Written Warning and an eight hour suspension for failing to

9    maintain her Basic Life Support certification, May 2000.  (DeAngelis Decl. ¶3, Exh. B).

10    • Final Written Warning and three day suspension for abandoning a

11    patient assignment, January 2001.  (DeAngelis Decl. ¶4, Exh. C).

12    • Formal Written Warning for bringing husband into the break room

13    and causing another employee to feel intimidated, March 2001.  (DeAngelis Decl. ¶5,

14    Exh. D).

15    • Formal Written Warning for her patient being found with his gown

16    and bed saturated with blood from a leaking IV port; medication error and improper entry

17    on medical chart, January 2003.  (DeAngelis Decl. ¶6, Exh. E).

18    • Last and Final Written Warning and three day suspension for

19    exhibiting rude and threatening behavior toward a respiratory therapist, October 2004.

20    (DeAngelis Decl. ¶7, Exh. F).

21    • Last and Final Warning and three day suspension in lieu of

22    termination for unacceptable behavior, March 2005.  (DeAngelis Decl. ¶8, Exh. G).

23    • Last and Final Written Warning for unsatisfactory job performance

24    and for performing unsafe nursing practices for leaving a morphine sulfate syringe

25    containing 2 mg of morphine sulfate in a patient's room while taking a break, October

26    2005.  (DeAngelis Decl. ¶9, Exh. H).

27

28

---

[1] "Patient census" refers to the number of patients on a unit at one time.

- 3 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1          •    Termination for refusal to float, December 2005.  (DeAngelis Decl.

2   ¶2, Exh. A).

3          **C.    The 1996 Arbitration.**

4          Kirton filed suit against ABSMC on or about September 13, 1996 based on

5   a 1996 suspension and subsequent termination involving alleged improper disposal and

6   handling of medication.  That suit was dismissed based on Section 301 of the Labor

7   Management Relations Act, 29 U.S.C. § 185 preemption grounds.[2]  The case was

8   subsequently sent to arbitration.  The Arbitration was terminated prior to its conclusion;

9   there was no finding against ABSMC.  (DeAngelis Decl. ¶10).  Instead, ABSMC and the

10  California's Nurses Association, acting on Kirton's behalf, reached a settlement.  The

11  Settlement provided that Kirton would be reinstated into her previous position with

12  ABSMC with the same seniority she had at the time she was terminated.  In 1997 Kirton

13  was reinstated.  (DeAngelis Decl. ¶10, Exh. I).

14         **D.    CBA Floating Policy.**

15         The Floating Policy is governed by the Collective Bargaining Agreement

16  ("CBA") between the California Nurses Association and ABSMC.  Nurses are called in to

17  work extra shifts based on Hospital need.  (DeAngelis Decl. ¶13).  Once a nurse is called

18  in to work an extra shift he or she will go to their regular unit.  If a nurse from that unit is

19  required to float, the nurse working an extra shift will be required to float before a

20  regularly scheduled nurse.  The floating selection is applied in a non-discriminatory

21  manner; it has no relation to the race, color or national origin of any of the nurses.

22  (DeAngelis Decl. ¶13).  If a unit does not have a nurse working an extra shift available to

23  float, the nurse who floats next is determined by the units themselves.  (DeAngelis Decl.

24  ¶13, Exh. K).  Some units base floating on seniority and others base it on turn (i.e., who

25  is next in line to float).  The Staffing Office does not have the authority to make decisions

26  pertaining to floating.  (DeAngelis Decl. ¶13).  In the case of 4-East, the nurses float in

27

28  [2] *Kirton v. Summit Medical Center*, 982 F. Supp. 1381, 1386 (N.D. Cal. 1997).

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1  turn; the last nurse to float has his or her name placed at the end of the list. That nurse

2  will only be required to float again if he or she works an extra shift or if his or her name

3  comes back up as next in line to float. (DeAngelis Decl. ¶14).

4      **E.    Kirton's November 20 & 21, 2005 Refusal To Float.**

5          On November 20, 2005 Kirton was called in to work an extra shift. When

6  Kirton arrived on 4-East she was asked to float by her Charge Nurse, Carol Grappo

7  ("Grappo"). Kirton refused to float by advising Grappo that she made an agreement with

8  the Staffing Office to work an extra shift if she only worked on her unit, 4-East. (Kirton

9  Depo. 105:17-19). Kirton remained on 4-East and another nurse working his regular

10 schedule was required to float in her stead.

11         On November 21, 2005 Kirton made herself available to work an extra

12 shift. Again, like the previous night, the patient census went up and Kirton was called in

13 to work an extra shift. When Kirton arrived at her unit, 4-East, she was asked to float by

14 Grappo. (Kirton Depo. 110:4-6). Kirton advised Grappo that she made an agreement

15 with the Staffing Office that if she agreed to work the extra shift, she would work only on

16 her unit, essentially refusing to take directives from her supervisor. (Kirton Depo.

17 110:11-17). Grappo became frustrated with Kirton for refusing to take directive, and

18 contacted the Administrative Nursing Supervisor, Ceanne McNamara ("McNamara").

19 Grappo advised McNamara of Kirton's refusal to float. She advised McNamara that this

20 was the second, consecutive evening where Kirton refused to take this directive from her

21 Supervisor. McNamara directed that Kirton be sent home and told not to return until she

22 had an opportunity to speak with her Nurse Manager, Jennifer Stroud ("Stroud").

23 Kirton's employment with ABSMC was terminated on or about December 14, 2005.

24 (Complaint ¶13, DeAngelis Decl. ¶2, Exh. A).

25 **III.    ARGUMENT.**

26      **A.    Standard Of Proof Under Fed. R. Civ. P. 56.**

27          On its motion for summary judgment, ABSMC bears the initial burden of

28 demonstrating the absence of a genuine issue of material fact. *See Anderson v. Liberty*

- 5 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. CV 07-05863 MHP

1    *Lobby, Inc.*, 477 U.S. 242, 256 (1986). It need not disprove Kirton's case, however.

2    *See Celotex Corporation v. Catrett*, 477 U.S. 317, 325 (1986). If ABSMC meets its initial

3    burden, then Kirton "may not rely merely on allegations or denials in [her] own pleading;

4    rather, [Kirton's] response must--by affidavits or as otherwise provided in this rule--set

5    out specific facts showing a genuine issue for trial. If [she] does not so respond,

6    summary judgment should, if appropriate, be entered against that party." *See* Fed. R.

7    Civ. P. 56(e).

8        Moreover, Kirton "must do more than simply show that there is some

9    metaphysical doubt as to the material facts. Where the record taken as a whole could

10    not lead a rational trier of fact to find for [Kirton], there is no genuine issue for trial.

11    *See Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587

12    (1986). Summary judgment is "properly regarded not as a disfavored procedural

13    shortcut, but rather as an integral part of the Federal Rules as a whole, which are

14    designed 'to secure the just, speedy and inexpensive determination of every action.'"

15    *See Celotex*, 477 U.S. at 327. "[T]he mere existence of a scintilla of evidence" is

16    insufficient to create a genuine issue of material fact. *See Anderson*, 477 U.S. at 252.

17    **B.    Kirton's Claims Are Preempted By Section 301 Of The Labor-Management Relations Act.**

18

19        Section 301 of the LMRA, 29 U.S.C. §185 provides federal court

20    jurisdiction over suits for violations of contracts between employers and unions. The

21    statute preempts any claim which is founded directly on rights created by a collective

22    bargaining agreement or whose resolution is substantially dependent on the

23    interpretation of such an agreement. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394

24    (1987). "When resolution of a state law claim is substantially dependent upon analysis

25    of the terms of an agreement made between the parties in a labor contract, that claim

26    must be treated as a §301 claim or be dismissed as preempted by federal labor contract

27    law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1            Kirton has alleged seven causes of action, claiming in essence that she

2 was wrongfully disciplined and terminated based on her race and national origin. These

3 claims are covered by the provision of the CBA between ABSMC and Kirton's Union, the

4 California Nurses Association, and are therefore preempted by Section 301. The CBA

5 specifically provides for the floating policies that are at the core of Plaintiff's claims:

6                        Nurses may volunteer to float to any unit in the Hospital.
7                        Nurses may be required to float within the nursing areas
                       outlined in Appendix A... Floating shall occur according to
8                        the written guidelines established by staff nurses for each
                       unit. (DeAngelis Decl. ¶13, Exh. K)

9 Kirton alleges that her refusal to float was in accordance to the CBA's policy on floating;

10 because it was not her regular day to work, it was not her turn to float. (Kirton Depo.

11 198:6-11). As such, she alleges that her suspension and subsequent termination for

12 refusing to float were wrongful and instead based on retaliatory and discriminatory

13 motives. (Complaint ¶ 71). All of Kirton's claims require a determination as to whether

14 or not she complied with floating policies promulgated by ABSMC pursuant to the CBA.

15           **1.**    **Plaintiff's First Cause Of Action For Discrimination Is**
16                **Preempted.**

17            Kirton's First Cause of Action alleges that ABSMC discriminated against

her based on her race and national origin. (Complaint ¶¶ 34-41). Kirton alleges that her
18
discipline and termination are evidence of ABSMC's discrimination, as she believes that
19
the Hospital's supporting evidence for the termination does not comport with governing
20
CBA's floating policies. It is for this very reason that Kirton's discrimination claim is
21
preempted. In order to determine whether this adverse employment action was justified
22
(as the Hospital contends) or unjustified (as Kirton contends), the Court must first
23
determine if ABSMC complied with the Floating Policies set forth in the CBA. The Court
24
must look into the CBA to determine whether ABSMC's claims of insubordination is
25
pretextual. *See Madison v. Motion Picture Set Painters & Sign Writers Local 729*, 132 F.
26
Supp. 2d 1244, 1253-1254 (C.D. Cal. 2000) (concluding that a discrimination claim was
27
preempted where plaintiff's prima facie case required reliance on the CBA and where it
28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF        CASE NO. CV 07-05863 MHP

1     was almost certain that defendant's articulated non-discriminatory reason for its actions

2     would also require reliance on the CBA).

### 2.    Kirton's Second Cause Of Action For Retaliation Is Preempted.

4          Kirton's Second Cause of Action alleges that ABSMC retaliated against her

5     for her insistence on complying with the floating rules. (Complaint ¶43). ABSMC,

6     however, argues that her refusal to float was in violation of the CBA provisions on

7     floating. (DeAnglis Decl. ¶2). As such, interpretation of the CBA is required to

8     determine the validity of these claims. An employer is entitled to summary judgment for

9     an action for wrongful discharge in retaliation for filing grievances if an employee's claim

10    is inextricably intertwined with terms of the collective bargaining agreement. *Evens v.*

11    *S&K Equip. Co.*, 2005 U.S. Dist. LEXIS 36706 (E.D. Mich. 2005).

### 3.    Kirton's Third Cause Of Action For Breach Of The Covenant Of Good Faith And Fair Dealing Is Preempted.

         Kirton's Third Cause of Action alleges that ABSMC breached the covenant

of good faith and fair dealing by frustrating her enjoyment of benefits under the contract

when ABSMC terminated her employment on December 14, 2005. (Complaint ¶¶ 44-

51). However, "[t]he covenant of good faith and fair dealing cannot impose substantive

terms and conditions beyond those to which the parties actually agreed." *Starzynski v.*

*Capital Public Radio*, 88 Cal. App. 4th 33, 39 (2001) (citing *Guz v. Bechtel Nat'l Inc.*, 24

Cal. 4th 317 (2000)). As a result, Section 301 of the LMRA, 29 U.S.C. Section 185(a)

preempts claims for breach of the implied covenant of good faith and fair dealing when

an employee is covered by a collective bargaining agreement. *See Busey v. P.W.*

*Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1054 (N.D. 2005) (holding that section 301 of

the LMRA preempts claims for the implied covenant of good faith and fair dealing when

an employee has comparable job security under the CBA).

### 4.    Kirton's Fourth Cause Of Action For Intentional Infliction Of Emotional Distress Is Preempted.

27          Kirton's Fourth Cause of Action alleges that ABSMC's conduct, including

28    terminating her employment, was extreme and outrageous and went beyond all bounds

- 8 -

KAUFF MCCLAIN &amp;
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF      CASE NO. CV 07-05863 MHP

1   of decency. (Complaint ¶¶ 52-60). The relationship between Kirton and ABSMC is

2   governed by the CBA which governs the dispute at the heart of her claims – whether her

3   actions were in accordance or in violation of the CBA. As such, Kirton's claims are

4   preempted. *See Harris v. Alumax Mill Prods, Inc.*, 897 F.2d 400, 403 (9th Cir. 1990)

5   (holding that a claim for intentional infliction of emotional distress was preempted where

6   it was based on the same conduct as a preempted claim for breach of the covenant of

7   good faith and fair dealing). In this case, the Court must analyze and interpret the CBA

8   to determine whether ABSMC acted appropriately in terminating her for violation of the

9   Floating Policies. *See Hyles v. Mensing*, 849 F. 2d 1213, 1216 (9th Cir. Cal. 1988)

10  (emotional distress claims preempted where court has to interpret the collective

11  bargaining agreement to determine defendant's scope of authority). As result, the claim

12  is preempted.

13              **5.    Kirton's Fifth Cause Of Action For Negligence Is Preempted.**

14              Kirton's Fifth Cause of Action alleges that her termination was wrongful and

15  because ABSMC applied the Floating Policies discriminatorily against her and not in

16  accordance to the CBA. (Kirton Depo. 98:20-25 & 99:1-4). By allowing this, Kirton

17  argues that ABSMC breached a duty owed. Kirton's negligence claim is preempted as

18  she is alleging that ABSMC did not follow its obligations (i.e. not to discriminate and to

19  properly apply the floating policies) under the CBA. *See Ryan v. International Union of

20  Operating Engineers, Local 675* 794, F.2d 641, 647 (11th Cir. Fla. 1986) (state action

21  brought by union member against union for on-the-job injuries inflicted by its member

22  alleging negligent breach of obligation under collective bargaining agreement is pre-

23  empted by federal law where plaintiff stated that duty of care regarding negligence count

24  derived from collective bargaining agreement since all counts assert rights under

25  agreement.). As with Kirton's other causes of action, interpretation of the CBA is

26  necessary to determine whether ABSMC implemented the floating policies properly

27  without racial motivation.

28

- 9 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. CV 07-05863 MHP

### 6.    Kirton's Sixth Cause Of Action For Wrongful Termination Is Preempted.

Kirton's Sixth Cause of Action alleges that she was wrongfully terminated without justification because of her race, color and/or national origin. (Complaint ¶¶ 70-76). The CBA contains the Floating Policies, as well as a requirement that "The Medical Center shall have the right to discharge or assess disciplinary action for just cause." (DeAngelis Decl. ¶12, Exh. J). Section 301 preempts this claim since interpretation of the CBA is necessary to determine whether Plaintiff's refusal to float was in accordance or in violation of the CBA. See *Singh v. Estate of Lunalilo*, 779 F Supp 1265, 271 (D. Hawaii 1991) (employee's state law claims for wrongful discharge, intentional and negligent infliction of emotional distress, and retaliatory discharge were preempted by § 185, since determination of validity of plaintiff's claims requires analysis of whether her discharge was justified under terms of collective bargaining agreement).

### 7.    Kirton's Seventh Cause Of Action For Harassment Is Preempted.

Kirton's Seventh Cause of Action alleges that her termination and suspension were a result of ABSMC applying the floating policies in a discriminatory manner. (Complaint ¶¶ 77-85). However, interpretation of Kirton's underlying claims is necessary to determine whether ABSMC's actions were in violation or conformity with the CBA. As such, Kirton's harassment claims are preempted by Section 301.

### 8.    All Of Plaintiff's Claims Are Subject To Dismissal Because The Applicable Six-Month Statute Of Limitations Has Expired.

As discussed in Section III (B), all of Kirton's claims (Counts I-VII) are preempted by LMRA Section 301. A six-month statute of limitations applies to actions under the Act brought by an employee against his employer for breach of a collective bargaining agreement. *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 171-172 (1983). Each of Kirton's claims requires a determination as to whether ABSMC's stated justification for terminating Kirton – her violation of the floating policies – is valid. As a result, Kirton's allegations require a determination whether ABSMC breached the

- 10 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

1  collective bargaining agreement.  The six-month statute of limitations for breach of a

2  collective bargaining agreement applies to all such claims.  *See Smith v. United Parcel*

3  *Service, Inc.*, 776 F.2d 99, 100 (4th Cir. 1985).  All of the conduct Kirton complains of

4  ceased at the time of her termination on December 14, 2005.  (Kirton Depo. 246:11-25 &

5  247:1-8).  Almost **two** years have past since the alleged wrongful conduct stopped and

6  the October 2007 filing of her Complaint.  Kirton's claims are well beyond the six-month

7  period allowed by statute and thus should be dismissed.

8       C.     **Assuming, *Arguendo*, That Kirton's First Cause Of Action For
               Discrimination Is Not Preempted, It Still Fails The Test Provided In
9              *McDonnell Douglas Corp. v. Green.*

10      In evaluating disparate treatment claims under Cal. Gov't Code Section

11  12940 *et seq.* courts apply the analysis set forth in *McDonnell Douglas Corp. v. Green*,

12  411 U.S. 792 (1973).  *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840,

13  850 (9th Cir. 2004).  The applicable test under *McDonnell Douglas* is as follows:

14          A plaintiff must first establish a prima facie case of
            discrimination.  If the plaintiff establishes a prima facie case,
15          the burden then shifts to the defendant to articulate a
            legitimate nondiscriminatory reason for its employment
16          decision.  Then, in order to prevail, the plaintiff must
            demonstrate that the employer's alleged reason for the
17          adverse employment decision is a pretext for a discriminatory
            motive.
18
19  *Green*, 411 U.S. at 802-805.  The bottom line in discrimination cases is straightforward:

20  "proof of intent to discriminate is **necessary** to establish a violation."  *Domingo v. New*

21  *England Fish Co.*, 727 F.2d 1429, 1438 (9th Cir. 1984) (emphasis added).  Here, Kirton's

22  claim fails because she cannot establish a *prima facie* case and because she has no

23  evidence whatsoever of pretext, much less actual race-based discrimination.

24       1.     **Kirton Cannot Establish A *Prima Facie* Case Of Race or
                National Origin Discrimination.**

25      In order to establish her *prima facie* case, Kirton must offer evidence that

26  "gives rise to an inference of unlawful discrimination."  *See Yartzoff v. Thomas*, 809 F.2d

27  1371, 1374 (9th Cir. 1987).  If she fails to show "specific facts" that establish a *prima*

28  *facie* case, summary judgment is appropriate.  *Id.* at 1374; *see also Palmer v. United*

- 11 -

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. CV 07-05863 MHP

1  *States*, 794 F.2d 534, 536-539 (9th Cir. 1986).  Kirton has not offered any evidence to

2  support her contentions that the disciplinary actions and termination were based on her

3  race.

### 2.  Kirton Has No Evidence Of An Intent To Discriminate Based On Her Race Or National Origin.

First, Kirton's claim for national origin discrimination should be dismissed

as she concedes there is no discrimination against her by ABSMC based on her national

origin.  (Kirton Depo. 184:24-25, 185:1-3, 185:18-25 & 186:1).

Second, Kirton has no evidence to support her allegation that her

termination in 1996 was racially motivated.  (Kirton Depo. 75:17-24).  Kirton alleges the

Arbitrator found that her termination was wrongful.  (Complaint ¶11).  She has not,

however, offered any evidence to support her allegation.  Her supporting evidence is

mere speculation and conjecture based on the single fact that her employment was

reinstated.  (Kirton Depo. 90:12-15).  The truth of the matter is that there was no finding

by the Arbitrator.  Instead, ABSMC and Kirton's Union, acting on her behalf, settled the

matter.  The terms of the Settlement provided for Kirton's reinstatement into her previous

position with the Hospital.  (DeAngelis Decl. ¶10, Exh. I).  Despite Kirton's belief that her

work environment at ABSMC was racially discriminatory she agreed to return to the

alleged discriminatory environment and in April of 1997 she was reinstated.  (Complaint

¶11; Kirton Depo. 76:14-17).

Third, Kirton has no evidence to support her allegation that in 2003

ABSMC informed her, through her union, that she had been terminated (which she also

alleges was subsequently rescinded by ABSMC).  (Complaint ¶12).  While she cannot

recall the stated reason for the alleged termination she somehow is certain that the

termination was racially discriminatory.  (Kirton Depo. 98:2-8).  However, she has no

evidence to support this allegation, as her employment was not terminated.  (DeAngelis

Decl. ¶15).  She hasn't seen the supposed letter of termination and her knowledge of its

existence is based on a statement allegedly made by her Union representative.  (Kirton

- 12 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. CV 07-05863 MHP

1   Depo. 86:5-12 & 88:2-6). If Kirton had reasonably believed that she was terminated, she

2   would have contacted at least one of her supervisors at ABSMC, which she did not.

3   (Kirton Depo.128:18-24).

4          Fourth, Kirton has no evidence to support her allegation that ABSMC

5   applied the Floating Policies differently to her than to similarly situated Caucasian

6   nurses. Kirton cannot establish that she was similarly situated as she has no personal

7   knowledge of whether the Caucasian nurses received as many disciplinary actions

8   resulting from their insubordination. (Kirton Depo. 196:6-14). Even more, Kirton testified

9   that agreements to float are made with minorities and Caucasians alike and that her

10  alleged interpretation of the policy is being applied to Filipinos, Caucasians, American-

11  Indians and *African-Americans* and no one gets terminated for those deals, *regardless of*

12  *race*. (Kirton Depo. 157:19-25 & 158:1-4). Further, Kirton has only been able to attest to

13  one nurse that did not float due to an alleged prior arrangement with the Staffing Office,

14  who was not terminated; this nurse was American-Indian, not Caucasian:

15          **Q:**    You mentioned earlier that there was one other nurse
               who agreed to work on her unit on a day and she was sent
16             home rather than fired; is that right?

17          **A.**    Yes.

18          **Q.**    Who was that?

19          **A.**    Paula Gann.

20          **Q.**    Is there any other nurse that you can identify who
               attempted to adhere to the floating policy that you have
21             described, which is to say that they came in on their day off
               and had an agreement not to float and were sent home?
22

23          **A.**    No. (Kirton Depo. 103:21-25, 104:1-2 & 104:12-18).

            Fifth, Kirton has no evidence to support her allegation that the Caucasian
24
     traveler and registry nurses were treated better than her because they received
25
     promotions and she did not. Kirton received a promotion from Staff Nurse I to Staff
26
     Nurse II during her employment and has almost doubled her salary since commencing
27
     her employment with ABSMC. (Kirton Depo. 60:19-25, 61:1-3, & 43:2-11). Further, she
28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF        CASE NO. CV 07-05863 MHP

1    has admitted that it was not only her, but all regular staffed registered nurses (which

2    interestingly includes Caucasians) that were passed over for the promotional opportunity

3    over other regularly staffed nurses:

> **Q.**    And you believe those promotions are evidence of
> Summit favoring white employees over black employees?
>
> **A.**    Yes.
>
> **Q.**    Did you have something that you wanted to add?
>
> **A.**    Yeah.  What I was going to say was you - I've been
> there -- I was at Summit for -- at the time, for 13 years, 14
> years, something like that, on staff as a registered nurse.
> And then they came and brought the Caucasian travelers *and
> put them over the regular staff*.  That created problems with
> the regular staff and especially with the white Caucasian and
> the black RN, me.  (Kirton Depo. 251:24-25 & 252:1-11)

12    Kirton's mere belief that discrimination occurred, without specific supporting facts, is

13    insufficient to avoid summary judgment.

> A plaintiff's belief that a defendant acted from an unlawful
> motive, without evidence supporting that belief, is no more
> than speculation or unfounded accusation about whether the
> defendant really did act from an unlawful motive.  To be
> cognizable on summary judgment, evidence must be
> competent.

18    *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001)

19    (emphasis added); *See also Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994)

20    ("Mere conclusory assertions of discriminatory intent, embodied in affidavits or

21    deposition testimony, cannot be sufficient to avert summary judgment."); *Hansen v.*

22    *United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only

23    on its own affidavits to oppose summary judgment, it cannot rely on conclusory

24    allegations unsupported by factual data to create an issue of material fact.").

25         Based upon the foregoing, the Court should find that Kirton has not

26    established a *prima facie* case of discrimination.

27

28

- 14 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF    CASE NO. CV 07-05863 MHP

3.   **Assuming *Arguendo* Kirton Could Establish A *Prima Facie* of Discrimination (And Surely She Cannot) ABSMC Has More Than Ample Evidence To Rebut It.**

To rebut Kirton's *prima facie* case, ABSMC "must merely articulate a legitimate, nondiscriminatory reason for the action." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917-918 (9th Cir. 1996). "Once the employer meets this burden, the presumption of discrimination drops away." *Id.*

Kirton speculates that, Nurse Manager, Jennifer Stroud had racial motivation and bases this allegation on the number suspensions she received. (Kirton Depo. 99:9-18, 99:24-25 & 100:1-6). She alleges that when any other Caucasian person reported anything to Stroud she would automatically take the Caucasian employee's side. (Kirton Depo. 100:16-25 & 101:1-9). However, these suspensions were based, not on Kirton's race, but, as indicated in the disciplinary actions themselves, on Kirton's insistent failure to follow ABSMC's policies. (DeAngelis Decl. ¶¶ 2, 3-9, 12, & Exhs. A-H).

Kirton was afforded ample opportunity to challenge and/or provide written commentary concerning her disciplinary actions and her suspensions at the time they were given. (Kirton Depo. 103:11-20). She was also allowed to have a Union representative present. (Kirton Depo. 103:4-7). Regardless, a Union representative was not always present and rarely did she provide written commentary contesting and/or explaining her actions. Even more, Kirton has admittedly failed to follow ABSMC's narcotic wasting procedures on 2-3 separate occasions. (Kirton Depo. 78:21-25, 79:1-4 & 83:16-20).

There is not a scintilla of evidence that anyone operated from anything other than a good-faith business-related motivation. Indeed, the disciplinary reports themselves establish the legitimate and nondiscriminatory motive for Kirton's termination. DeAngelis' Declaration explains:

> ABSMC's actions concerning Kirton's disciplines and termination were at all times undertaken for the exclusive reason that Kirton failed to follow ABSMC policies and

- 15 -

KAUFF MCCLAIN & MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. CV 07-05863 MHP

1     procedures. Her 2005 termination was merely a result of
continuous acts of insubordination which ABSMC could no

2     longer tolerate. It was in the best interest of ABSMC's
patients and employees that such conduct no longer be

3     allowed to continue. At <u>no</u> time did I or anyone act with any
racially discriminatory motivation. ABSMC treats all

4     employees equally, regardless of race, color or national
origin. I never observed anyone in the process acting for

5     reasons other than fostering the quality of patient care. In
each instance, my actions were taken in consultation with

6     other management and were approved by counsel.

7  (DeAngelis Decl. ¶17).

8       Kirton cannot show that the decision to terminate her employment was

9  racially motivated. The Hospital issued her a number of final written warnings. Had its

10  main goal been to terminate her, it could have done so in March 2005 after receiving the

11  October 2004 Final Written Warning or in January 2005, after receiving the March 2005

12  written warning. Kirton simply cannot prove that the termination of her longtime

13  employment was based on her race or national origin. *See Ibarra v. Sunset Scavenger*

14  *Co.*, 2003 U.S. Dist. LEXIS 8711, 16-17 (N.D. Cal. 2003) (granting summary judgment

15  for employer on a race discrimination claim where plaintiff argued that management did

16  not want Latinos to be promoted to management positions, but offered no evidence of

17  ongoing racial discrimination during his 20-year employment).

18       **4.**    **ABSMC Is Entitled To Summary Judgment Because Kirton Has**

19              **No Evidence Whatsoever Of Pretext, Much Less Any Evidence
Of Race Discrimination.**

20       The final step of the *McDonnell Douglas* test requires Kirton to show

21  "pretext." However, a "reason cannot be proved to be 'a pretext for discrimination'

22  unless it is shown both that the reason was false, and that discrimination was the real

23  reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). As discussed above,

24  Kirton has no evidence of discrimination, either direct or indirect. Nor can she show that

25  ABSMC's reasons for terminating her employment are somehow false. This type of

26  "dispute" is simply not one of material fact.

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1

        **a.**    **Kirton Has No Evidence To Support The Theory That She Was Treated Differently Than Other Similarly Situated Nurses.**

2

3           One contention made by Kirton is that she was subjected to far harsher

4  treatment than all other similarly situated Registered Nurses based on the amount of

5  disciplinary actions she received.  (Kirton. Depo: 196:15-25, 197:1).  However, when

6  questioned about different ethnicities, Kirton could not provide any factual evidence to

7  support her allegations.  When questioned about Hispanic, Filipino, American-Indian and

8  Caucasian nurses, Kirton admitted that she did not have any personal knowledge of their

9  disciplinary history:

10          **Q.**    Do you contend that you have been treated less favorably than Hispanic nurses at Summit Medical Center?

11

12          **A.**    Yes.

           **Q.**    So you have no personal knowledge of their

13      disciplinary history; is that correct?

14          **A.**    No.  I talked to Hispanic nurses there.

15          **Q.**    You would have no way of knowing one way or the other whether or not they are telling you the truth based on

16      their actual personnel history; is that correct?

17          **A.**    No.

18          **Q.**    Have you been treated less favorably than Filipino nurses for the same reasons?

19

20          **A.**    Yes.

           **Q.**    And you have no personal knowledge of what their

21      disciplinary histories are, correct?

22          **A.**    I have no personal knowledge except for what they tell me.

23

24          **Q.**    Do you have any -- do you contend that you're treated less favorably than American Indian nurses at Summit Medical Center?

25

26          **A.**    Yes.

           **Q.**    Right.  But your race is the reason you believe that you

27      received this disciplinary history, correct?

28          **A.**    Yes.  Yes.

- 17 -

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1

**Q.**    And you believe that you were treated less favorably than American Indian nurses based on that disciplinary history, correct?

2

3

**A.**    Yes.

4

**Q.**    And you have no personal knowledge of the disciplinary history of any of the American Indian nurses at Summit Medical Center; is that correct?

5

6

**A.**    Other than what they tell me. The only one that's there is Paula.

7

**Q.**    And you have no personal knowledge, correct?

8

**A.**    Only what she tells me.

9

**Q.**    Do you have personal knowledge of what her personnel file contains?

10

11

**A.**    No.

12

**Q.**    Thank you. Do you contend that you've been treated less favorably than any other group of employees at Summit Medical Center; Caucasian, Chinese-American, Chinese, any other race or ethnicity?

13

14

15

**A.**    Caucasians. I'm treated less favorably.

16

**Q.**    Okay. And do you have personal knowledge of the disciplinary history of any Caucasian nurse at Summit Medical Center?

17

18

**A.**    No personally.

(Kirton Depo. 191:8-12, 193:1-9, 194:11-18, 194:23-25, 195:1, 195:6-25 & 196:1-14)

19

**D.**    **Kirton's Second Cause Of Action For Retaliation Fails Because Defendant Had Legitimate And Non-Retaliatory Business Reasons For Its Employment Decisions.**

20

21

California Fair Employment and Housing Act ("FEHA") prohibits an

22

employer from retaliating against an employee because the employee has contested

23

illegal employment practices.  *See* 42 U.S.C. § 2000e-3(a); Cal. Gov't Code § 12940(h).

24

To establish retaliation, Kirton must demonstrate that:  (1) she engaged in statutorily

25

protected activity; (2) she suffered an adverse employment action; and (3) there is a

26

causal link between her protected activity and the adverse employment action.  *See e.g.,*

27

*Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1064 (9th Cir. 2002); *Colarossi v. Coty*

28

- 18 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

1  *U.S. Inc.*, 97 Cal. App. 4th 1142, 1152 (2002).  Again, the claim fails because Kirton

2  cannot point to any evidence to suggest that the adverse employment actions were

3  based on anything but non-retaliatory legitimate business reasons.

4  　　　　Likewise, Plaintiff cannot establish pretext for ABSMC's non-discriminatory

5  because as described in Section III D(4)(a), she has no evidence to show that she was

6  treated differently than other similarly situated Caucasian nurses and that her termination

7  was based on anything other than her own continuous acts of insubordination.

8  　　E.　　**Assuming, *Arguendo,* Plaintiff's Third Cause Of Action For Breach Of**
9  　　　　　　**The Covenant Of Good Cause And Fair Dealing Is Not Preempted,**
　　　　　　　**This Claim Still Fails Because There Was Good Cause For Her**
10　　　　　　**Termination.**

　　　　Even if Kirton could show a breach of implied covenant of good faith and
11
fair dealing, which she cannot, her recovery would be limited to contract damages.
12
*Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 720 (Cal. 1988).  Civil Code Section 3330
13
states:
14

15　　　　　　　　For the breach of an obligation arising from contract, the
　　　　　　　　measure of damages, except where otherwise expressly
16　　　　　　　　provided by this Code, is the amount which will compensate
　　　　　　　　the party aggrieved for all the detriment proximately caused
　　　　　　　　thereby, or which, in the ordinary course of things, would be
17　　　　　　　　likely to result therefrom.

18  In other words, there must be a causal connection between the breach complained of

19  and the Kirton's damages.  Kirton is not entitled to damages, as her termination was

20  based on her continuous and outright failure to follow ABSMC policies, and damages do

21  not flow from a failure to follow personnel policies.  *Kohler v. Ericcson, Inc.*, 847 F. 2d

22  499, 502 (9th Cir. 1988).

23  　　F.　　**Assuming, *Arguendo,* Plaintiff's Fourth Cause Of Action For**
　　　　　　　**Intentional Infliction Of Emotional Distress Is Not Preempted, Kirton's**
24　　　　　　　**Claims Still Fail Because There Is No Evidence Of Intent Or Extreme**
　　　　　　　**Conduct**
25
　　　　Kirton's intentional infliction of emotional distress claims against ABSMC
26
fails for two reasons.  First, there is no evidence that the Hospital intended to cause
27
Kirton to suffer extreme emotional distress.  *Christensen v. Superior Court (Pasadena*
28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

1  *Crematorium)*, 54 Cal. 3d 868, 903 (1991) (requiring evidence of intent).  Nor is there

2  evidence that ABSMC should have known its conduct would cause Kirton such distress.

3  *Id.*  Second, even if Kirton could surpass the "intent" hurdle, her claim still fails because

4  ABSMC did not engage in conduct so extreme "as to go beyond all possible bounds of

5  decency, and to be regarded as atrocious, and utterly intolerable in a civilized

6  community."  *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3rd 493, 499 n.5 (1969)(citations

7  omitted).  Even taken as true, Kirton's allegations against ABSMC do not meet this

8  standard.  *See Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55-80 (1996)

9  (managing personnel, including demoting, terminating, and laying off plaintiffs, not

10  outrageous as a matter of law).

11        **G.**    **Assuming, *Arguendo,* That Plaintiff's Fifth Cause Of Action For**
12              **Negligence Is Not Preempted, Kirton's Claim Still Fails.**

13          Kirton's claim Fifth Cause of Action for negligence is barred by the

14  exclusivity provisions of the Workers' Compensation Law.  "[A]n employee who sustains

15  an industrial injury "arising out of and in the course of the employment" is limited to

16  recovery under the workers' compensation system.  *See Torres v. Parkhouse Tire Serv.*,

17  26 Cal. 4th 995, 1001 (2001).  The exclusivity of this rule prevents tort lawsuits by

18  employees against both employers and co-employees.  *Id.; see also* Cal. Labor Code

19  §§ 3600, 3601 & 3602.  Based upon the immunity provided under these sections, Kirton

20  cannot sue ABSMC for tort damages.

21          Further, Kirton has no evidence of any breach of duty.  While Kirton has

22  alleged that ABSMC failed to take appropriate action against the "offending employees"

23  she admits that she has no knowledge either way indicating if any action was taken.

24  (Kirton Depo. 272:23-25, 273:1-25 & 274:1-9).

25        **H.**    **Assuming, *Arguendo*, that Plaintiff's Sixth Cause Of Action for**
            **Wrongful Termination Is Not Preempted, Kirton's Claim Still Fails.**

26          Kirton's Sixth Cause of Action for wrongful termination in violation of public

27  policy must be dismissed because her underlying FEHA discrimination claims fail, and

28  because she fails to state a claim of discrimination based on race or national origin in

KAUFF McCLAIN &
McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

1  violation of Article I, Section 8 of the California Constitution. (Complaint ¶¶ 70-76). The

2  law is well-settled that to sustain a claim of wrongful termination in violation of public

3  policy, a plaintiff must prove that his or her termination violated a policy that is

4  (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or

5  constitutional provision. *See Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256

6  (1994) (citation omitted). Both the FEHA and Article I, Section 8 can form the basis of

7  public policy claim. *See e.g., Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218,

8  230 & n.35 (2002); *Rojo v. Kliger*, 52 Cal.3d 65, 89-91 (1990). An Article I, Section 8

9  claim may only be brought when a plaintiff "has been denied entrance into a profession

10  or particular employment or terminated from the same." *Strother v. Southern Cal.*

11  *Permanente Med. Group*, 79 F.3d 859, 871 (9th Cir. 1996). If Kirton cannot prove a

12  violation of the underlying statute or fundamental public policy, the wrongful termination

13  claims fail as well. *See e.g., Nelson v. United Techs.*, 74 Cal. App. 4th 597, 613 n.4

14  (1999) (dismissing CFRA and wrongful termination claims under same analysis). As

15  explained in section D above, Kirton fails to state a claim of discrimination under the

16  FEHA on the basis of a race or national origin. For the same reasons, Plaintiff fails to

17  state a claim of race or national origin discrimination under Article I, Section 8. Without a

18  viable claim under the FEHA or Article I, Section 8, Kirton has not stated an actionable

19  wrongful termination claim. The Sixth Cause of Action must be dismissed.

20      **I.**      **Assuming, *Arguendo,* Plaintiff's Seventh Cause Of Action For**

21                **Harassment Based On Race And National Origin Is Not Preempted, The Claim Still Fails.**

22          Kirton does not have sufficient evidence to establish that she was

23  subjected to harassment based on her race or national origin. In order to establish a

24  claim for racial harassment in violation of FEHA, Kirton must show that she was

25  subjected to unwelcome offensive racial comments that were sufficiently severe or

26  pervasive to alter the conditions of employment and create an abusive work

27  environment. *See Aguilar v. Avis Rent-A-Car System*, 21 Cal. 4th 121, 128 (1999)

28  (adopting FEHA and Title VII sexual harassment standards for FEHA race harassment

- 21 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

CASE NO. CV 07-05863 MHP

1   claim). To be sufficiently pervasive, "[A]cts of harassment cannot be occasional,

2   isolated, sporadic, or trivial." *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d

3   590, 610 (1999). "[S]imple teasing, offhand comments, and isolated incidents (unless

4   extremely serious) will not amount to discriminatory changes in the terms and conditions

5   of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 141 L.Ed.2d 662, 118 S.

6   Ct. 2275 (1998). Here, Kirton simply has no evidence of harassment based on her

7   national origin or her race.

8          First, Kirton concedes that she was not harassed based on her national

9   origin. (Kirton Depo. 185:9-25 & 186:1).

10         Second, Kirton has no evidence to show that the alleged telephone call

11  with Stroud was sufficiently severe and pervasive to rise to the level of harassment. She

12  has testified that the sum and substance of the harassment claim was that Stroud was

13  short with her on the phone and hung up on her before she had finished speaking.

14  According to Kirton there was no evidence that would indicate that Stroud had a racial

15  motivation. (Kirton Depo. 182:22-25 & 183:1-14).

16         Third, Kirton has no evidence of racial epithets directed to her, far less any

17  evidence of the "severe or pervasive" conduct required to state a claim of racial

18  harassment. Under both Title VII and the FEHA, to be actionable harassment must be

19  "sufficiently pervasive so as to alter the conditions of employment and create an abusive

20  working environment. . . . [H]arassment cannot be occasional, isolated, sporadic, or

21  trivial; rather the plaintiff must show a concerted pattern of harassment of a repeated,

22  routine or a generalized nature." *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121,

23  130-131 (1999). More than the "mere utterance" of a racial epithet is required to pass

24  this threshold. Trivial, occasional, sporadic, or isolated incidents of verbal abuse are not

25  enough. *See Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 463-464 (1998); *Harris v.*

26  *Forklift Sys.*, 510 U.S. 17, 21 (1993).

27         The fact that Kirton cannot offer *any* evidence of racial epithets is telling.

28  *See Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 817 (9th Cir. 2002) ("Generally, a plaintiff

- 22 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF                    CASE NO. CV 07-05863 MHP

1   alleging racial or national origin harassment would present facts showing that he was

2   subjected to racial epithets in the workplace."). Kirton has never personally heard or

3   learned from any source any verbal comments made based on her race, color or

4   national origin. (Kirton Depo. 129:20-25 & 130:1-6). She has never heard or learned

5   from any source of any jokes being made at ABSMC based on race, color or national

6   origin. (Kirton Depo. 134:24-25 & 135:1-2). She has never personally heard or learned

7   from any source of any epithet or derogatory name based on her race, color or national

8   origin. (Kirton Depo. 135:9-19). She has not personally seen or learned from any

9   source any writings or drawings at ABSMC that she believes were based on race, color

10  or national origin. (Kirton Depo. 135:20-25, 136:1-3 & 137:9-16).

11         Fourth, Kirton has no evidence to support her allegation that ABSMC failed

12  to take appropriate action against the "offending employees". She has no personal

13  knowledge indicating whether any action was taken against Stroud, McNamara, Grappo

14  or her former Nurse Manager, Laurel Galletch. (Kirton Depo. 272:23-25, 273:1-25 &

15  274:1-9). The evidence does show, however, that ABSMC took affirmative action to

16  prevent discrimination and/or harassment from occurring, including promulgating and

17  disseminating an anti-harassment policy and complaint procedure, and training its

18  employees in preventing harassment and responding to complaints, all of which Kirton

19  received. (Kirton Depo. 257:22-25 & 258:1-22). See e.g. California Fair Employment

20  and Housing Comm'n v. Gemini Aluminum Corp., 122 Cal. App. 4th 1004, 1024-1025

21  (2004) (reasonable steps necessary to prevent discrimination and harassment from

22  occurring may include prompt investigation of complaints, the establishment and

23  promulgation of antidiscrimination policies, and the implementation of effective

24  procedures to handle complaints and grievances regarding discrimination).

25         **J.    Kirton Cannot Meet Her Burden Of Establishing Any Entitlement To Punitive Damages.**

26

27         ABSMC is entitled to summary judgment on Kirton's prayer for punitive

28  damages. Punitive damages do not flow automatically from the commission of a wrong.

- 23 -

KAUFF McCLAIN & McGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT /PARTIAL SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF          CASE NO. CV 07-05863 MHP

1    To recover punitive damages, the plaintiff bears the "onerous" burden of proving "by

2    clear and convincing evidence" that the defendant is "guilty of 'oppression, fraud or

3    malice.'" *Aquino v. Superior Court*, 21 Cal. App. 4th 847, 856-857 (1993); Cal. Civ. Code

4    § 3294(a).  This "onerous" higher burden applies on a motion for summary judgment.

5    *See Rowe v. Superior Court*, 15 Cal. App. 4th 1711, 1724 (1993).

6    Applying these standards, the Court in *Shade Foods, Inc. v. Innovative*

7    *Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 892 (2000), held that conduct

8    can be considered a "willful and conscious disregard of the rights . . . of others" within

9    the definition of "malice," or "cruel and unjust hardship in conscious disregard of that

10   person's rights" within the definition of "oppression" under Civil Code Section 3294(c),

11   yet still not be sufficiently "despicable" to permit punitive damages:

12          The requirement of despicable conduct represents a
             *substantive limitation* on punitive damage awards.  Used in its
13          ordinary sense, the adjective despicable is a powerful term
             that refers to circumstances that are *base, vile, or*
14          *contemptible.*

15   *Id.* (internal citations omitted; emphasis added).

16   Kirton has no evidence that ABSMC engaged in the sort of "despicable

17   conduct" required for a punitive damages award.

18   **IV.    CONCLUSION**

19   For the reasons set forth above, all of Kirton's claims are preempted by §

20   301 of the LMRA and are barred by the statute of limitations.  Even if these claims are

21   not preempted, the Court should grant summary judgment because the claims lack

22   evidentiary support.

23   DATED:       April 28, 2008          Respectfully submitted,
                                          KAUFF MCCLAIN & MCGUIRE LLP
24

25                                        By:_____/S/_____
26                                                MAUREEN E. MCCLAIN
                                                  DANIELLE M. ELLIS
27                                        Attorneys for Defendant
                                          ALTA BATES SUMMIT MEDICAL CENTER
28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111