# Exhibit 2

1  MAUREEN E. MCCLAIN (State Bar No. 062050)
   Email: mcclain@kmm.com
2  DANIELLE M. ELLIS (State Bar No. 226581)
   Email: ellis@kmm.com
3  KAUFF MCCLAIN & MCGUIRE LLP
   One Post Street, Suite 2600
4  San Francisco, California 94104
   Telephone:   (415) 421-3111
5  Facsimile:   (415) 421-0938

6  Attorneys for Defendant
   ALTA BATES SUMMIT MEDICAL CENTER
7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  CHARLOTTE KIRTON,                    CASE NO.  CV 07-05863 MHP

12              Plaintiff,               **DECLARATION OF JIM
                                         DEANGELIS IN SUPPORT OF
13  v.                                   DEFENDANT'S MOTION FOR
                                         SUMMARY JUDGMENT, OR IN
14  ALTA BATES SUMMIT MEDICAL CENTER;    THE ALTERNATIVE, PARTIAL
    and DOES 1-20,                       SUMMARY JUDGMENT**
15
                Defendants.              **DATE:**     June 2, 2008
16                                       **TIME:**     2:00 p.m.
                                         **COURTROOM:**  15, 18th Flr.
17                                       **JUDGE:**    Hon. Marilyn Hall Patel

18                                       **COMPLAINT FILED:** October 22, 2007
                                         **TRIAL DATE:** No date set.
19

20          I, Jim DeAngelis, hereby declare:

21          1.      I have been the Employee and Labor Relations Specialist at Alta

22  Bates Summit Medical Center since 2001.  As the Employee and Labor Relations

23  Specialist, my duties include reviewing corrective actions to ensure they meet Alta Bates

24  Summit Medical Center's standards. I have personal knowledge of the information set

25  forth in this declaration and, if called as a witness, would be competent to testify

26  concerning that information.

27          2.      In December 2005, Charlotte Kirton was terminated for refusing to

28  take directive from her supervisor by refusing to float on November 20 & 21, 2005.  This

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

1   refusal was in violation of the collective bargaining policies concerning floating.  Attached

2   as **Exhibit A** is a true and correct copy of the December 2005 termination letter.

3           3.      In May of 2000, Kirton received a Final Warning and an eight hour

4   suspension for failing to maintain her Basic Life Support certification.  Attached as

5   **Exhibit B** is a true and correct copy of the May 2000 Final Written Warning.

6           4.      In January of 2001, Kirton received a Final Written Warning and

7   three day suspension for abandoning a patient assignment.  Attached as **Exhibit C** is a

8   true and correct copy of the January 2001 Final Written Warning.

9           5.      In March of 2001, Kirton received a Formal Written Warning for

10  bringing her husband into the break room and causing another employee to feel

11  intimidated.  Attached as **Exhibit D** is a true and correct copy of the March 2001 Formal

12  Written Warning.

13          6.      In January of 2003, Kirton received a Formal Written Warning for

14  her patient being found with his gown and bed saturated with blood from a leaking IV

15  port; a medication error and an improper entry on a medical chart.  Attached as **Exhibit

16  E** is a true and correct copy of the January 2003 Formal Written Warning.

17          7.      In October of 2004, Kirton received a Last and Final Written

18  Warning and three day suspension for exhibiting rude and threatening behavior toward a

19  respiratory therapist..  Attached as **Exhibit F** is a true and correct copy of the October

20  2004 Last and Final Written Warning.

21          8.      In March of 2005, Kirton received a Final Written Warning and three

22  day suspension in lieu of termination for unacceptable behavior.  Attached as **Exhibit G**

23  is a true and correct copy of the March 2005 Last and Final Written Warning.

24          9.      In October 2005, Kirton received a Last and Final Written Warning

25  for unsatisfactory job performance and for performing unsafe nursing practices for

26  leaving a morphine sulfate syringe containing 2 mg of morphine sulfate in a patient's

27  room while taking a break.  Attached as **Exhibit H** is a true and correct copy of the

28  October 2005 Last and Final Warning.

- 2 -

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DECLARATION OF JIM DEANGELIS IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

CASE NO. CV 07-05863 MHP

1    10.    In or about September 13, 1996, Kirton filed a suit against ABSMC.
2    The case was sent to arbitration.  The dispute was resolved prior to the arbitrator issuing
3    a decision.  ABSMC and the California Nurses Association, acting on Kirton's behalf,
4    reached a settlement which provided in part that Kirton would be reinstated to her
5    previous position with ABSMC.  Kirton was reinstated into her position in 1997.  Attached
6    as **Exhibit I**, is a true and correct copy of the Arbitration transcript which contains the
7    terms of the September 1996 Agreement.

8    11.    The Floating Policy is governed by the collective bargaining
9    agreement ("CBA") between the California Nurses Association and ABSMC.  According
10   to the Policy, nurses are called in to work extra shifts based on hospital need.

11   12.    Kirton's termination was based on her refusal to take directives from
12   her supervisor and float in accordance to the Floating Policies.  Her termination was in
13   accordance with the provisions of the CBA, which provides that "The Medical Center
14   shall have the right to discharge or assess disciplinary action for just cause."  Attached
15   as **Exhibit J** is a true and correct copy of the relevant provisions of the CBA pertaining to
16   termination.

17   13.    As the patient census rises, the Staffing Office will in call one of the
18   nurses from a list of those available to work an extra shift.  Once a nurse is called in,
19   unless directed otherwise, the nurse will go directly to his or her unit.  If a permanent
20   nurse from that unit is required to float, the nurse working the extra shift is the one
21   required to float.  The floating selection is applied in a non-discriminatory manner, it has
22   no relation to the race, color or national origin of any of its nurses.  If a unit does not
23   have a nurse working an extra shift available to float, the units themselves determine
24   who will float, based on either a seniority or an in turn schedule.  The Staffing Office
25   does not have the authority to make any decisions pertaining to floating.  Attached as
26   **Exhibit K** is a true and correct copy of the relevant floating provisions set forth in the
27   CBA.

28

- 3 -

KAUFF McCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

DECLARATION OF JIM DEANGELIS IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION    CASE NO. CV 07-05863 MHP

1   14.    In the case of 4-East, the nurses float in turn; the last nurse to float

2   has his or her name placed at the end of the list.  That nurse will only be required to float

3   again if he or she works an extra shift or if his or her name comes back up as next in line

4   to float.

5   15.    ABSMC did not terminate Ms. Kirton's employment in 2003.

6   16.    ABSMC's actions concerning Kirton's disciplines and termination

7   were at all times undertaken for the exclusive reason that Kirton failed to follow ABSMC

8   policies and procedures.  Her 2005 termination was merely a result of continuous acts of

9   insubordination which ABSMC could no longer tolerate.  It was in the best in interest of

10  ABSMC's patients and employees that such conduct no longer be allowed to continue.

11  At no time did I or anyone act with any racially discriminatory motivation.  ABSMC treats

12  all employees equally, regardless of race, color or national origin.  I never observed

13  anyone in the process acting for reasons other than fostering the quality of patient care.

14  In each instance, my actions were taken in consultation with other management and

15  were approved by counsel.

16  17.    Kirton has been given numerous opportunities to improve her

17  performance and conduct in the workplace, as evidence by all of the Final and Written

18  Warnings that Kirton received without facing termination.  Despite its efforts, Kirton's

19  performance and conduct did not improve.

20

21  I declare under penalty of perjury under the laws of the United States of

22  America that the foregoing is true and correct.  Executed this 28th day of April, 2008 at

23  Oakland, California.

24

25  JIM DeANGELIS

26  4846-6996-4034.1

27

28

KAUFF MCCLAIN &
MCGUIRE LLP
ONE POST STREET
SUITE 2600
SAN FRANCISCO, CA 94104
TELEPHONE (415) 421-3111

- 4 -

DECLARATION OF JIM DEANGELIS IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION        CASE NO. CV 07-05863 MHP

# EXHIBIT A



## Alta Bates Summit
## Medical Center

A Sutter Health Affiliate

December 14, 2005                    <u>Sent Via Certified & Regular Mail</u>

Ms. Charlotte Kirton, RN
416 "B" Street
Richmond, CA 94801

Re: Employment Status

Dear Ms. Kirton,

You were suspended on November 26, 2005. An investigation into the
circumstances around your refusal to float has been completed.

Your Nurse Manager, Jennifer Stroud, has attempted unsuccessfully to contact
you several times since December 8, 2005. Your voicemail is full and not
accepting messages.

Therefore, we are notifying you that your employment with Alta Bates Summit
Medical Center is being terminated effective with this letter dated December 14,
2005.

Your final paycheck and documents are being sent to you by certified mail.

If you have any questions please call your Manager or the number listed below.

Sincerely,

Jim De Angelis
Alta Bates Summit Medical Center
Employee & Labor Relations Specialist
Phone: 510-655-4000 ext. 4247

CC:    Jennifer Stroud, Nurse Manager
       Shawn Bartlett, C.N.A. Representative

530 Hawthorne Avenue
Oakland, CA 94609

**D0050**

# EXHIBIT B

# SUMMIT MEDICAL CENTER
## NOTICE OF DISCIPLINARY ACTION

EMPLOYEE:  Charlotte Kirton    #  5165

DEPARTMENT:  4TE Renal Metabolic    #  6092

JOB:  Registered Nurse    CODE 201

DISCIPLINARY ACTION:

___  PERSONNEL MEMORANDUM
___  FORMAL WRITTEN WARNING
_X_  FINAL WARNING/SUSPENSION FOR ____ DAY(S)
___  TERMINATION

REASON FOR DISCIPLINARY ACTION (Attach additional sheets or documentation):

Failure to maintain current BLS certification. BLS expired March 31, 1999. Suspended for 8 hours on 4/14/00 until BLS renewed.

PLAN OF CORRECTIVE ACTION:

Maintain all licensure and certificiation as current.
Renew all licensure and certification prior to expiration.

NOTE:  Failure to follow Plan of Corrective Action and/or other violation of Medical Center Policies and Procedures or work rules will result in further disciplinary action, including termination.

EMPLOYEE COMMENTS (Attach additional sheets or documentation):

_____  5/15/00  _____
Human Resources Approval          Date          Manager/Supervisor Signature  5/11/00
Date

_____  _____
Witness (If applicable)          Date          Employee Signature
Date

**D0032**

# EXHIBIT C

# ALTA BATES SUMMIT
# MEDICAL CENTER

## NOTICE OF DISCIPLINARY ACTION

Date: 1|26|01
Employee: Charlotte Kirton    #5165
Department: 4TE Renal Metabolic #6092
Job: RN    Title RN Code 201

**DISCIPLINARY ACTION:**
☐ PERSONNEL MEMORANDUM/DOCUMENTED VERBAL
☐ FORMAL WRITTEN WARNING
☒ FINAL WRITTEN WARNING/SUSPENSION FOR ____3____ DAY(S) 1|26, 27, 28|01
☐ TERMINATION

**REASON FOR DISCIPLINARY ACTION ( ATTACH ADDITIONAL SHEETS OR DOCUMENTS):**
Insubordination
Abandonment of patient assignment placing patients
safety and well being at risk

**PLAN OF CORRECTIVE ACTION:**
Follow the direction of the charge nurse.
Always accept the assignment and grieve it later

**NOTE:** Failure to follow Plan of corrective action and/or other violation of Medical Center Policies and Procedures or work rules will result in further disciplinary action, including termination.
** Referral made to the Alta Bates Summit Employee Assistance program (EAP)?   ☐ YES   ☐ NO

**EMPLOYEE COMMENTS (ATTACH ADDITIONAL SHEETS OR DOCUMENTATION):**
I came to work Not Feeling Well. I thought I could
work. It's too Bad No one believed me when I said
I was Not Feeling Well asking about the assignment
only seemed to escalate my illness. I Never abandoned
any assignment; I Never even had a chance to write the
assignment
I was sick

_____  8/2/01      _____ 1/29/01
Human Resources Approval    Date       Manager/Supervisor Signature    Date

                                       Charlotte Kirton  2/2/01
_____  _____      _____ _____
Witness (If applicable)    Date        Employee Signature*    Date

* Employee signature acknowledges only receipt of this notice.

**D0031**

# EXHIBIT D

# ALTA BATES SUMMIT MEDICAL CENTER
## NOTICE OF DISCIPLINARY ACTION

EMPLOYEE:    Charlotte Kirton

DEPARTMENT:    Pt. Care Services 4TE    JOB TITLE: Registered Nurse

DISCIPLINARY ACTION:

    ___  PERSONNEL MEMORANDUM
    x__  FORMAL WRITTEN WARNING
    ___  FINAL WARNING/SUSPENSION FOR ____ DAY(S)
    ___  TERMINATION

REASON FOR DISCIPLINARY ACTION (Attach additional sheets or documentation):

On January 26, 2001, you were suspended for insubordination and abandonment of your patient assignment.

On February 3, 2001 you and your husband exhibited rude and intimidating behavior toward the two co-workers, who had reported your troublesome behavior, that resulted in your suspension.

The Administrative Supervisor confronted you concerning your inappropriate behavior and emphasized that you should take your breaks with your husband in the cafeteria. During the meeting she also made it abundantly clear that, under the circumstances, your husband's presence on the unit exhibited extremely poor judgment on your part. The following day your husband preceded to visit the unit on three (3) separate occasions.

Your actions created a high level of anxiety for your co-workers, which interfered with patient care and resulted in an unacceptable work environment and demonstrated poor judgment and unprofessional behavior on your part.

PLAN OF CORRECTIVE ACTION:

In the future, if you perceive a conflict with your co-workers it is imperative that you contact your supervisor to arrange to deal with the situation in a professional and constructive manner.

NOTE: Failure to follow Plan of Corrective Action and/or other violation of Medical Center Policies and Procedures or work rules will result in further disciplinary action, including termination.

**D0029**

Charlotte Kirton, RN
Written Warning
Page 2
February 20, 2001

**EMPLOYEE COMMENTS (Attach additional sheets or documentation):**

I was Not Rude nor was I intimidating to anyone, my husband was at the Hospital to visit me for my Break and/or lab work. My Husband Never said or exhibited any signs of rudeness or intimidation to anyone. The Supervisor was very Rude to me and to this date I have yet to get an apology.

_Laurel Gallitch_ 3/12/01
Manager/Supervisor Signature

Human Resources Approval _[signature]_ Date 3/8/01
Date

_Charlotte Kirton_
Employee Signature*

Witness (If applicable)                 Date
Date

* Employee signature acknowledges only receipt of this notice.

D0030

# EXHIBIT E

# ALTA BATES SUMMIT MEDICAL CENTER

## NOTICE OF DISCIPLINARY ACTION

Date: 1/9/03
Employee:    Name <u>Charlotte Kirton</u> # <u>21315510</u>
Department: Name <u>4 east Renal</u>  # <u>26185</u>
Job:         Title <u>R.N.</u>  Code <u>21120010</u>

**DISCIPLINARY ACTION:**
☐ PERSONNEL MEMORANDUM/DOCUMENTED VERBAL
☒ FORMAL WRITTEN WARNING
☐ FINAL WRITTEN WARNING/SUSPENSION FOR _____ DAY(S)
☐ TERMINATION

<u>REASON FOR DISCIPLINARY ACTION ( ATTACH ADDITIONAL SHEETS OR DOCUMENTS):</u>
                UNSATISFACTORY JOB PERFORMANCE; UNSAFE NURSING PRACTICE

ON 12/24/02 THE R.N. FOLLOWING YOU FOUND ONE OF YOUR PATIENTS WITH THEIR GOWN & BED SATURATED WITH BLOOD FROM A LEAKING PERMACATH. YOU WERE UNABLE TO TELL ME IF YOU EVER ASSESSED THE CATHETER AND NOTHING IS DOCUMENTED. THIS PLACED THE PATIENT'S SAFETY AT RISK.

YOU ALSO HAD ANOTHER RN PULL MEDICATIONS FROM THE PYXIS FOR YOU. YOU OPENED THE MEDICATIONS AND DOCUMENTED AT THE PYXIS PRIOR TO GOING INTO PATIENTS ROOMS AND ADMINISTERING THE MEDICATIONS. YOU DOCUMENTED CHANGING THE FENTNYL PATCH ON A PATIENT WHICH WAS NOT CHANGED CAUSING A SERIOUS MEDICATION ERROR. IT IS NEVER ACCEPTABLE NURSING PRACTICE TO HAVE TWO RN'S INVOLVED IN THE MEDICATION PROCESS AS IT LEADS TO ERRORS AS IT DID ON 12/24. FURTHER MEDICATIONS ARE TO BE OPENED IN THE PATIENT'S ROOM FOLLOWING THE FIVE RIGHTS OF MEDICATION ADMINISTRATION. DOCUMENTATION OF MEDICATIONS OCCURS AFTER THE PATIENT HAS TAKEN THEM.

FURTHER, YOU PULLED TWO VICODIN FROM THE PYXIS AT 0409 WHICH YOU DID NOT DOCUMENT AS BEING GIVEN TO THE PATIENT ON THE M.A.R. HOWEVER, ON THE SAME M.A.R. IT IS DOCUMENTED THAT TWO VICODINS WERE GIVEN AT 0930 WHICH PYXIS RECORDS SHOW WERE NOT REMOVED FROM THE PYXIS FOR THIS SAME PATIENT. YOU ARE UNABLE TO SAY WHO MAY HAVE MADE THE 0930 ENTRY ON THE M.A.R.

<u>PLAN OF CORRECTIVE ACTION:</u>

**D0024**

YOU ARE TO ASSESS ALL PATIENTS COMPLETELY PER B.R.N. NURSE PRACTICE ACT AND HOSPITAL POLICY.

YOU ARE TO FOLLOW CORRECT MEDICATION PROCEDURE (THE FIVE RIGHTS OF MEDICATION ADMINISTRATION) NO ONE IS TO PULL MEDICATIONS FOR YOU UNLESS THEY VERIFY, ADMINISTER AND DOCUMENT GIVING THE MEDICATIONS. OPENING MEDICATIONS AND CHARTING MEDICATIONS IS TO OCCUR AT THE BEDSIDE.

FUTURE INCIDENTS OF UNSAFE NURSING PRACTICE MAY RESULT IN FURTHER DISCIPLINARY ACTION UP TO AND INCLUDING TERMINATION.

NOTE: Failure to follow Plan of corrective action and/or other violation of Medical Center Policies and Procedures or work rules will result in further disciplinary action, including termination.
** Referral made to the Alta Bates Summit Employee Assistance program (EAP)?  ☐ YES  ☐ NO

EMPLOYEE COMMENTS (ATTACH ADDITIONAL SHEETS OR DOCUMENTATION):

_____   2/5/03        _Laurel Galletch_ 1/29/03
Human Resources Approval          Date         Manager/Supervisor Signature
Date

_____               _____
Witness (If applicable)           Date         Employee Signature*
Date

* Employee signature acknowledges only receipt of this notice.

_Employee declined union representative_

# EXHIBIT F

# ALTA BATES SUMMIT MEDICAL CENTER

## NOTICE OF DISCIPLINARY ACTION

Date: 10/26/04

Employee:   CHARLOTTE J. KIRTON

EE# 21315510

Department: ___5TE    _X__4TE    ___HDU

Job:  R.N.                    Title:  R.N.

**DISCIPLINARY ACTION:**

☐  PERSONNEL MEMORANDUM/DOCUMENTED VERBAL

☐  FORMAL WRITTEN WARNING

X☐  **LAST & FINAL WRITTEN WARNING/SUSPENSION DATES:       3 DAY SUSPENSION DATES TO BE ASSIGNED UPON RETURN TO WORK.**

☐  TERMINATION

REASON FOR DISCIPLINARY ACTION ( ATTACH ADDITIONAL SHEETS OR DOCUMENTS):

CONDUCT UNBECOMING AN EMPLOYEE OF ABSMC: RUDE, UNPROFESSIONAL, INAPPROPRIATE AND THREATENING BEHAVIOR.

ON 8/13/04, TWO EMPLOYEES, A CHARGE NURSE AND A RESPIRATORY THERAPIST, COMPLAINED ABOUT YOUR BEHAVIOR. AFTER CAREFUL INVESTIGATION, IT HAS BEEN DETERMINED THAT YOU ACTED IN VIOLATION OF HOSPITAL POLICY, THE ABSMC CUSTOMER SERVICE STANDARDS AND VIOLENCE IN THE WORK PLACE POLICY BY EXHIBITING THREATENING, UNPROFESSIONAL, RUDE BEHAVIOR ON 8/13/04. YOU DEMONSTRATED RUDE, UNPROFESSIONAL BEHAVIOR TOWARD THE CHARGE NURSE BY IGNORING HER IN REPORT AND EMBARASSING HER IN FRONT OF A PATIENT. YOU DEMONSTRATED RUDE, THREATENING AND UNPROFESSIONAL BEHAVIOR TOWARD THE RESPIRATORY THERAPIST IN SNATCHING A MEDICAL RECORD FROM HIM, SPEAKING DISRESPECTFULLY TO HIM, AND CHASING HIM IN THE HALL.

FURTHERMORE, AS A RESULT OF THE INVESTIGATION, WE HAVE CONCLUDED YOU FAILED TO BE FORTHRIGHT DURING THE COURSE OF THE INVESTIGATION.

ANY FUTURE CONDUCT OF THIS NATURE WILL NO LONGER BE TOLERATED. FUTURE VIOLATIONS WILL RESULT IN TERMINATION.

PLAN OF CORRECTIVE ACTION:

- YOU ARE TO FOLLOW THE ABSMC CUSTOMER SERVICE STANDARDS AT ALL TIMES.

- YOU ARE TO FOLLOW THE POLICIES AND PROCEDURES IN THE SUMMIT EMPLOYEE HANDBOOK CONCERNING HARRASSMENT AND VIOLENCE IN THE WORKPLACE.

- YOU ARE TO READ THE SUMMIT EMPLOYEE HANDBOOK AND THE VALUES FOCUSED STANDARDS OF PERORMANCE AND SIGN OFF ON BOTH AND RETURN TO ME 1-WEEK AFTER RETURN TO WORK.

D0022

NOTE:  Failure to follow Plan of corrective action and/or other violation of Medical Center Policies and Procedures or work rules will result in further disciplinary action, including termination.

** Referral made to the Alta Bates Summit Employee Assistance program (EAP)?   X☐ YES   ☐ NO

## EMPLOYEE COMMENTS (ATTACH ADDITIONAL SHEETS OR DOCUMENTATION):

| | | | |
|---|---|---|---|
| *Jim DeAngelo*    10/26/04 | | *Laurel Gallckh*    10/26/04 | |
| Human Resources Approval    Date | | Manager/Supervisor Signature    Date | |
| *Maxine K*    10/26/04 | | *Charlotte Kirton*    10/26/04 | |
| Witness (If applicable)    Date | | Employee Signature*    Date | |

* Employee signature acknowledges only receipt of this notice.

# EXHIBIT G

# ALTA BATES SUMMIT
# MEDICAL CENTER

## NOTICE OF DISCIPLINARY ACTION

Date: 3/25/05

Employee:     Name Charlotte J. Kirton  # 21315510
Department:   Name 4-East  # 26185
Job:          Title RN  Code 21120010

### DISCIPLINARY ACTION:
☐ PERSONNEL MEMORANDUM/DOCUMENTED VERBAL
☐ FORMAL WRITTEN WARNING
☒ **FINAL WRITTEN WARNING/SUSPENSION FOR 3 DAYS**
☐ TERMINATION

### REASON FOR DISCIPLINARY ACTION ( ATTACH ADDITIONAL SHEETS OR DOCUMENTS):
IN LIEU OF TERMINATION YOU ARE RECEIVING THIS LAST AND FINAL WARNING FOR UNACCEPTABLE
BEHAVIOR. ON SATURDAY, 1/22/05 YOU YELLED AT THE CHARGE NURSE IN FRONT OF FAMILY
MEMBERS AND STAFF BECAUSE YOU WERE BEING ASSIGNED AND ADDITIONAL PATIENT.
YOU PREVIOUSLY RECEIVED A LAST AND FINAL WARNING LETTER ON OCTOBER 26, 2005 FOR
UNACCEPTABLE CONDUCT. SINCE THIS RECENT INCIDENT MAY NOT RISE TO THE LEVEL OF
TERMINATION YOU ARE BEING ISSUES THIS WARNING IN LIEU OF TERMINATION.
BE ADVISED THAT YOUR CONTINUED UNACCEPTABLE BEHAVIOR WILL NOT BE TOLERATED.
FUTURE VIOLATIONS WILL RESULT IN TERMINATION.

### PLAN OF CORRECTIVE ACTION:
❑ BE RESPONSIBLE AND IN CONTROL OF YOUR BEHAVIOR
❑ IT IS RECOMMENDED THAT YOU SEEK ANGER MANAGEMENT TRAINING
❑ IT IS RECOMMENDED THAT YOU ATTEND EMPLOYEE ASSISTANCE FOR COUNSELING

NOTE:  Failure to follow Plan of corrective action and/or other violation of Medical Center Policies and Procedures or work
rules will result in further disciplinary action, including termination.
** Referral made to the Alta Bates Summit Employee Assistance program (EAP)?  xx☐ YES
### EMPLOYEE COMMENTS (ATTACH ADDITIONAL SHEETS OR DOCUMENTATION):


_____  3/25/05          _____  3/25/05
Human Resources Approval    Date           Manager/Supervisor Signature    Date

_____  3.25.05          Charlotte Kirton RN/BSN  03/25/05
Witness (if applicable)    Date            Employee Signature*    Date

\* Employee signature acknowledges only receipt of this notice.

**Exhibit H**

## NOTICE OF DISCIPLINARY ACTION

Date: 10/28/05
Employee:     Name <u>Charlotte Kirton</u>  # <u>21315510</u>
Department:  Name <u>4 East</u>  # <u>26185</u>
Job:          Title <u>RN</u>  Code <u>21120010</u>

### DISCIPLINARY ACTION:
[ ] PERSONNEL MEMORANDUM/DOCUMENTED VERBAL
[ ] FORMAL WRITTEN WARNING
[X] **FINAL WRITTEN WARNING**
[ ] TERMINATION

### REASON FOR DISCIPLINARY ACTION ( ATTACH ADDITIONAL SHEETS OR DOCUMENTS):
YOU ARE BEING WARNED FOR UNSATISFACTORY JOB PERFORMANCE AND FOR PERFORMING AN
UNSAFE NURSING PRACTICE.

ON 10/28/05 YOU LEFT A SYRINGE THAT CONTAINED 2 MG OF MORPHINE SULFATE IN A PATIENTS ROOM
WHILE YOU WENT ON YOUR BREAK.  THE MORPHINE WAS FOUND BY YOUR MANAGER "HIDDEN"
BEHIND THE SHARPS CONTAINER IN THE PATIENTS ROOM.  WHEN QUESTIONED HOW THIS HAPPENED
YOU STATED THAT THE PATIENT DID NOT WANT THE MEDICATION WHEN YOU BROUGHT IT INTO THE
ROOM SO RATHER THAN WASTE THE MEDICATION YOU PUT IT BEHIND THE SHARPS CONTAINER SO
YOU COULD GIVE IT TO THE PATIENT LATER.
THIS IS A SERIOUS VIOLATION OF SAFE MEDICATION ADMINISTRATION AND A VERY CARELESS
NEGLIGENT ACT ON YOUR PART. ANY RE-OCCURRENCE WILL RESULT IN IMMEDIATE TERMINATION.

### PLAN OF CORRECTIVE ACTION:
- YOU ARE TO FOLLOW CORRECT MEDICATION ADMINISTRATION PROCEDURE AS PER HOSPITAL
  POLICY AND THE B.R.N. NURSE PRACTICE ACT.
- YOU ARE NEVER TO LEAVE A CONTROLLED SUBSTANCE OR ANY OTHER MEDICATION
  UNSUPERVISED.

**NOTE:** Failure to follow Plan of corrective action and/or other violation of Medical Center Policies and Procedures or work
rules will result in further disciplinary action, including termination.
** Referral made to the Alta Bates Summit Employee Assistance program (EAP)?   [ ] YES   [ ] NO

### EMPLOYEE COMMENTS (ATTACH ADDITIONAL SHEETS OR DOCUMENTATION):

Δ π EXHIBIT 500
Deponent Kirton
Date 3/8/08
WWW.DEPOBOOK.COM

_____  11/1/05
Human Resources Approval    Date

_____  11/18/05
Manager/Supervisor Signature   Date

_____
Witness (If applicable)     Date

_____  11/8/05
Employee Signature*         Date

p.2

Nov 18 05 07:27a

# Exhibit I

IN ARBITRATION PROCEEDINGS PURSUANT TO
THE PARTIES' COLLECTIVE BARGAINING AGREEMENT

CALIFORNIA NURSES ASSOCIATION,

                    Union,

        and

SUMMIT MEDICAL CENTER,

                    Employer.
————————————————————————————/

Grievance of Charlotte Kirton.
————————————————————————————/

Thursday, April 11, 1996

10:00 a.m.

Reported by:
ERA FARNSWORTH
CSR #3208

RADOCY & ASSOCIATES
63 Mullen Avenue, San Francisco, CA 94110
(415) 285-4396

1

CNA & SUMMIT - GRIEVANCE OF CHARLOTTE KIRTON

1      MR. ROBINSON:  Mr. Arbitrator, would it

2  be possible for you and Mr. Lindsay and I to have a

3  minute?

4      THE ARBITRATOR:  Yes, you can.

5      (Recess taken.)

6      THE ARBITRATOR:  Let's go on the record,

7  please.

8      I've been authorized, I believe, at least

9  tacitly, to announce a settlement.

10      THE GRIEVANT:  What is she doing?

11      MR. LINDSAY:  She is just sitting here.

12  I wanted to get Gerard, that's why --

13      THE ARBITRATOR:  I want her here, that's

14  why.  I want everyone to hear what we have to say.

15  It's important for both of your protection.

16      THE GRIEVANT:  For whom?

17      THE REPORTER:  Do you want this on the

18  record?

19      THE ARBITRATOR:  No, that's all right.

20      (Discussion off the record.)

21      (Mr. Brogan enters the hearing room.)

22      THE ARBITRATOR:  Let me note a couple of

23  things first.  This settlement was reached without,

24  obviously, hearing all of the witnesses.  In fact, not

25  hearing all of Mr. Kirton's testimony because she would

1   have been asked further questions by Mr. Lindsay.

2   Nonetheless, certain facts emerged which may not have

3   been either known or totally appreciated by all

4   concerned.  So while this settlement, while it is a

5   settlement, is also partially at least based on what we

6   did here today.  A settlement, it's important to

7   understand, is not necessarily an admission or

8   nonadmission of any of the allegations involved, but it

9   is my understanding that the elements of this

10  settlement are as follows, not necessarily in order.

11          That Ms. Kirton will be reinstated with

12  her seniority as an RN on the unit that she came from

13  and at the same point 8 position that she held

14  effective today, but she will not return until

15  scheduled three weeks from now.

16          It will be your responsibility to check

17  with Ms. Thompson to make sure you know when the

18  schedule starts, so that there's no communication

19  dispute.  That will be done directly with Ms. Thompson

20  because she is your manager.  You're on the unit, and

21  you have to communicate.

22          Secondly, that there will be back pay

23  that you would have received had you worked your point

24  8 position from, what was it, the 25th?

25          MR. ROBINSON:    27th.

1    THE ARBITRATOR:    27th of March, the same

2    day that you came back to Children's, to today.

3    MR. ROBINSON:    Based on the point 8?

4    THE ARBITRATOR:    Right.    The point 8,

5    and that the record of discharge will be expunged from

6    your record.    As to the warning and three days'

7    suspension, those -- the warning will remain in the

8    record with the notation to be added to it which will

9    be the transcript of this settlement, that no finding

10    is made with respect to whether or not the call between

11    Ms. Kirton and Ms. Lee-Tom was as either Ms. Lee-Tom

12    stated it or as Ms. Kirton stated it.    Because,

13    frankly, we do not have all the testimony and we do not

14    know yet, and we're not going to find out.    What is

15    noted is that for the charting errors, and even with

16    that, that there was still a suspension.    There was no

17    discharge over that particular issue.

18    There is something here that I'm going to

19    reemphasize, without necessarily saying -- Charlotte, I

20    want you to understand this, that I'm not saying you

21    did it or didn't do it.    And Ms. Lee-Tom, I'm not

22    saying that you heard what you said you heard or you

23    didn't hear it.    It is clear, and I don't think anybody

24    will argue with this, that if there is an intimidating

25    or threatening phone call from one employee to another

CERTIFICATE OF THE REPORTER

I, ERA FARNSWORTH, A Certified Shorthand Reporter No. 3208, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth and nothing but the truth in the within-entitled cause;

That said deposition was taken at the time and place therein stated; that the testimony of the said witness was reported by me, a Certified Shorthand Reporter, and was thereafter transcribed into typewriting, by computer, under my direction and supervision;

I FURTHER CERTIFY that I am not in any way interested in the outcome of this action.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my signature this 8th day of May, 1996.

ERA FARNSWORTH
Certified Shorthand Reporter
State of California

108

# Exhibit J

37.6    Just Cause

.37.6.1 The Medical Center shall have the right to discharge or assess disciplinary action for just cause.

37.6.2 A Nurse may request to have an Association representative present at a meeting with the Medical Center when the Nurse reasonably believes such meeting may result in disciplinary action. Furthermore, the Medical Center shall advise a Nurse in advance if a requested meeting may result in suspension or discharge of the Nurse.

37.7    Disciplinary Investigations

Prior to a final determination by the Medical Center that discipline is for just cause, the Medical Center may place an employee on an unpaid investigatory suspension only due to significant allegations of misconduct, supported by evidence the Medical Center believe in good faith to be reliable, such that allowing the employee to remain on the job could jeopardize patient or employee safety.

37.7.1 Examples of such alleged incidents are serious clinical errors that bring into question the Nurse's clinical competency, alleged patient abuse or neglect, significant incidents of sexual or other forms of prohibited harassment, threats or acts of violence in or related to the workplace, being under the influence or the use of drugs or alcohol in the workplace, or substantial evidence of drug diversion.

37.7.2 The parties agree that whether or not a Nurse has been placed on an investigatory suspension shall be irrelevant to any later arbitration or other proceeding in which the employee challenges the legitimacy of the Medical Center' disciplinary actions.

37.7.3 Prior to placing a Nurse on disciplinary investigation, the Medical Center will use all reasonable efforts (1) to notify the Nurse of the reasons that he or she is being placed on investigatory suspension and, (2) consistent with the Nurse's right of representation, to obtain the Nurse's version of events that relate to the alleged misconduct.

37.7.4 Disciplinary investigations shall be concluded by the Medical Center as expeditiously as reasonably possible. Except by mutual agreement of the parties, no Nurse shall remain on unpaid investigatory suspension longer than 5 days, excluding weekends and holidays and any time period that the Nurse and/or the Nurse representative is unable to meet with the Medical Center to discuss the alleged misconduct. The Association's consent to the Medical Center's request to extend the period of the unpaid investigatory suspension shall not be unreasonably withheld.

37.7.5 These provisions regarding disciplinary investigations shall not affect the customary rules of admissibility of evidence in any proceeding challenging any discipline imposed by the Medical Center.

70

# Exhibit K

<u>APPENDIX A</u>
<u>CLUSTERS FOR REDUCTIONS IN FORCE (RIFS) AND DAILY CANCELLATIONS AND
CLINICAL CLUSTERS FOR FLOATING</u>

Limitations on Floating, Training, and Orientation to Work in Specialized Areas:

Nurses may volunteer to float to any unit in the Hospital. Nurses may be required to float within the nursing areas outlined in this appendix, provided they have the requisite competencies as outlined in the document entitled "Side Letter Regarding Staffing and Patient Care Issues," (2) Patient Care Assignment, referring to Competency Validation, attached to this agreement.

Registry and Traveling Nurses shall be required to float before the permanent staff of the Medical Center. Floating shall occur according to the written guidelines established by staff nurses for each unit.

Nurses who have transferred from a clinical cluster (viewed as lettered sections of I, and II below) to another clinical cluster may be floated back to their former clinical cluster for up to six months, provided they still retain their competencies.

I. <u>Summit Units:</u>

    A. Emergency Department
    B. ICU, CPU
    C. Telemetry: 3North, 3West, 5West, Special Care Unit (SCU), Pre-Post Cardiovascular Unit
    D. Non-Invasive Cardiology, Cath Lab
    E. Medical-Surgical: 4East, 4West, 5East, 5South, 2East, 2North, M/S Float Pool, SNF, Short Stay, Infusion, PICC*
    F. Antepartum Testing
    G. Operating Rooms
    H. PACU, Same Day Surgery, GI Lab**
    I. Chemical Dependency (MPI)
    J. Dialysis
    K. Cancer Education and Prevention
    L. Adult Day Health / Alzheimer's Units

\* There will be no floating in or out of the PICC position.
\*\* PACU/SDS may float into GI Lab to provide Moderate Sedation procedures or recovery. GI Lab does not float into PACU/SDS.

II. Alta Bates Units:
   A. Emergency Department
   B. Critical Care East, West and ITC
   C. Cath Lab, Radiology
   D. Medical-Surgical: 6North, 6Southwest, 4East, 4North-East, M/S Float Pool, (EBAC, Outpatient Infusion Center, IV Therapy/PICC*)
   E. Perinatal: Labor and Delivery, 3West, 3Southwest, NICU, Antepartum Testing, Perinatal Float Pool, 3NW Antepartum
   F. Operating Room
   G. PACU, Same Day Surgery, GI Lab**, Pre-op Testing
   H. Behavioral Health, 4East, 3East A, 3East B, 3North, 4North
   I. ECT
   J. Pulmonary Subacute
   K. 5E Rehab

   \* There will be no floating into or out of EBAC, OPIC, IV Therapy/PICC
   \*\* OR staff may float to the GI Lab, but GI Lab staff do not float to Same Day Surgery, PACU or the OR.

III. Cross Campus Floats

The Medical Center may establish designated cross-campus float pool positions, paid at the rates in Article 5.1.

### TRAINING AND ORIENTATION FOR WORK IN SPECIALIZED UNITS

The Medical Center and the Association recognize that Nurses may not have training and/or experience in Intensive Care Unit (ICU), Intensive Care Nursery (ICN), Cardio-Pulmonary Unit (CPU), Post Anesthesia Recovery Room (PAR), Renal Dialysis, or in other areas when special training and/or experience may be needed. Except in case of emergency declared by a civil authority or acts of God or riots or terrorist acts or internal or external disaster, Nurses without appropriate training, orientation and/or experience shall not be assigned to such areas. Nurses may request to be assigned to ICU, ICN, CCU, PAR, Renal Dialysis, and/or other specialty areas for training purposes. However RNs shall not be required to float outside the nursing care areas listed under limitations to Floating.

In order to provide a greater number of qualified personnel to work in such specialized areas, the Medical Center shall:

(a)     provide an in-service program or other program for Nurses on staff;
(b)     utilize a pool of regular, Short-hour, and Casual Nurses qualified to be assigned to such units as relief.