1  C. DONALD AMAMGBO, ESQ SBN 164716
   ALIEU ISCANDARI, ESQ SBN 184307
2  DANIEL ETOH, ESQ SBN 236563
   NICK AGBO, ESQ SBN 236523
3  **AMAMGBO & ASSOCIATES, PLC**
   7901 Oakport Street, Suite 4900
4  Oakland, CA 94621
5  Tel.   (510)615-6000
   Fax.   (510)615-6025
6  EMAIL.  detoh@amamgbolaw.com

7  Attorneys for Plaintiff
   **CHARLOTTE KIRTON**

8

9

10                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
11

12  CHARLOTTE KIRTON;                    )   CASE No. CV 07-05863 MHP
                                         )
13             Plaintiff,                )
                                         )
14  v.                                   )   **DECLARATION OF CHARLOTTE
                                         )   KIRTON IN OPPOSITION TO
15                                       )   DEFENDANT'S MOTION FOR
                                         )   SUMMARY JUDGMENT, OR IN THE
16                                       )   ALTERNATIVE PARTIAL SUMMARY
                                         )   JUDGMENT**
17  ALTA BATES SUMMIT MEDICAL            )
    CENTER; and DOES 1 - 20,             )   Action Filed: Oct. 22, 2007
18                                       )   Trial Date: None
               Defendants                )   Courtroom: 15, 18th Floor
19                                       )   Judge: Hon. Marilyn Hall Patel

20

21

22      I Charlotte Kirton, hereby declare:

23  1.  I am the plaintiff in the above mentioned lawsuit, by which reason and by reason that I

24          worked

25  with the defendant for several years  I am conversant with the facts hereto declared to. I have

26  personal knowledge of the information set forth in this declaration, and if called as a witness,

27  would be competent to testify concerning the information.

28  2.  In or about April, 1992, I entered into an employment agreement with defendant, Alta Bates

1  as a Clinical Nurse 1. Parts of the employment agreement were memorialized in writing by such

2  things as defendants' letter of offer of employment, but not limited to, Summary of Benefits, Policies,

3  Employee Handbook, Standards For Business Conduct Handbook, Service Excellence and Recovery

4  Standards, Collective Bargaining Agreement and/or Practices. Attached hereto as Exhibit 1 are the

5  true copies of the various acknowledgment of receipt of the said documents.

6  3.    I worked with defendant for several years until I was purportedly terminated in or about

7  September of 1996. I was re-instated following an arbitration which found that plaintiff' purported

8  termination was wrongful.

9  4.    I continued to work for defendant, Alta Bates and was elevated to Clinical Nurse 2, until

10  December 14, 2005 when I was terminated.

11  5.    On November 20, 2005, I was on my day off, when I got a call from defendant's

12  Staffing office to come and work an extra shift. I agreed to work the extra shift but with the rider

13  that I will only work on my unit 4 East.  Staffing co-ordinator agreed to my request. While

14  working this  extra shift, I was asked to float to another unit by Carol Grappo (who was in charge

15  that night), I politely turned down the request and informed Carol of the agreement I had reached

16  with Staffing in regards to  working the extra shift that night. Carol seemed to have no problems

17  with it as she said nothing about me floating that night.

18  6.    The practice at Alta Bates is that when you are called to work extra shift you can make a

19  deal

20  with Staffing like I did on November 20, 2005 not to float to another unit.  Attached as Exhibit 2

21  is a true and correct copy of a note from Sarah Quismondo Staffing Coordinator at all times

22  relevant to this case acknowledging the practice of making deals with staffing. Also attached as

23  part of Exhibit 2 are relevant portions of my deposition testimony in this regard.

24  7.    In addition the units themselves determine how floating is handled at Summit Medical

25  center.

26  Floating is done in turns by the nurses and there is a float list. The floating is coordinated by the

27  nurses in each unit and the decision on who is to float is determined from the list. They do this by

28

- 2 -

1  checking who last floated on the float list. Attached as Exhibit 3 are relevant portions of my

2  deposition testimony.

3  8. Also attached as Exhibit 4 is a true and correct copy of a note by Paula Ganns also

4  acknowledging the practice of making deals as above referred in paragraph 5.

5  9.    Again on November 21, 2005, while working an extra shift, I was asked by Carol Grappo

6  (charge nurse for 4 East that night) to float to another unit, as on the previous occasion, I politely

7  turned down the request and informed Carol of the agreement I had reached with Staffing in

8  regards to her working the extra shift that night. Surprisingly, Carol Grappo called the night

9  supervisor Ceann McNamara (a friend of hers) and informed her that I refused to float. The

10  supervisor came over to the floor where I was, and without bothering to ascertain what happened

11  asked me to go home. I felt completely humiliated and embarrassed at the way I was treated by my

12  Supervisor.

13  10.    I was still trying to recover from the shock of the incident of November 21, 2005, when

14  I received a phone call from Jennifer Stroud, a Nurse Manager with defendant Alta Bates. She

15  told me that she had called regarding the incidents of November 20 and 21, 2005. Whatever hope

16  I had that the phone call by Ms. Stroud was to resolve the issue was dashed, when rather than

17  asking to know exactly what happened,  she was very short with me  and told her that I was

18  suspended, and hung up on me. Attached hereto as Exhibit 5 is the relevant portion of my

19  deposition testimony to that effect.

20  11.    When I resumed work following my suspension, I could not concentrate, as I felt

21  beaten down depressed and less-than owing to the conduct of defendant's employee's above

22  described.

23  12.    The conduct of defendant Alta Bates employees as above described forced me to seek

24  medical help and culminated in my filing for Worker's Compensation on or about December 2,

25  2005. I was taken off work from November 27, 2005 following my filing of  Worker's

26  Compensation claim, until an "undetermined" period. Attached hereto as Exhibit 6 is a true and

27  correct copy of the document placing me on leave of absence following my filing a Worker's

28  Compensation claim.

- 3 -

13.    I was on leave of absence awaiting the outcome of my Worker's Compensation claim when I was terminated by defendant Alta Bates on December 14, 2005 for purportedly refusing to float on November 20, 21, 2005. Attached hereto as Exhibit 7 is the letter of termination.

14.    Defendants action in terminating my employment for purportedly refusing to float is discriminatory and based on my race because Paula Ganns a Registered Nurse like myself of American Indian descent who was and still is an employee of defendant had refused to float in the past just as described in paragraph 8 above and was not fired. Attached hereto as Exhibit 8 is the relevant portion of my deposition testimony to that effect.

15.    Defendant's action in terminating my employment was in retaliation for my insistence on complying with the floating rules and for filing a Worker's Compensation claim as above alleged.

16.    I continued to work with defendant inspite of the discriminatory treatment I was receiving from my supervising nurses because I enjoy the people that I work with at Alta Bates. Attached hereto as Exhibit 9 is the relevant portion of my deposition testimony to that effect.

17.    I am an excellent Registered Nurse, always willing to help out, and a team player. Defendant have repeatedly acknowledged this as shown on the comments on my 2001, 2002, 2003, and 2004 employee/Nurse competency evaluation. Attached and marked as Exhibit 10 are true and correct copies of my 2000, 2002 and 2004 employee/Nurse competency evaluations.

18.    As a direct and proximate result of defendant's conduct, in terminating my employment I have suffered damages which includes but is not limited to  loss of earnings, and other employment benefits.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 12 day of May, 2008 at Oakland, California.

_____
Charlotte Kirton

- 4 -

EXHIBIT 1

D0579

SUMMIT MEDICAL CENTER

ACKNOWLEDGMENT OF RECEIPT/EMPLOYEE HANDBOOK

I acknowledge receipt of the Summit Medical Center Employee Handbook. I understand that I have an obligation to read this handbook and familiarize myself with its contents and will contact my supervisor or the Human Resources Department if I have any questions.

_5/10/93_
Date

_Charlotte Green_
Employee Signature

_Charlotte Green_
Employee Name (Printed)

_Nursing_
Department

ER3



### Alta Bates Summit Medical Center

A Sutter Health Affiliate

Receipt of Customer Service Standards:

This acknowledges that I have received and read a copy of the Alta

Bates Summit Medical Center Customer Service Standards. I agree

to adhere to the Standards.

Signed: _____  Dated: 1/27/02

Printed Name: _____Charlotte Kirton____

**Return to Nurse Manager no later than** ▮▮▮▮▮▮

D0164

## ACKNOWLEDGMENT OF STANDARDS
## FOR BUSINESS CONDUCT HANDBOOK
### 3RD EDITION

My signature on this form acknowledges that I have received and agree to read the Sutter Health *Standards for Business Conduct* handbook.

I agree to comply fully with the standards contained in this book. I understand that compliance with these standards, policies and procedures is a condition of my continued employment or association with Sutter Health. I also understand that Sutter Health reserves the right to occasionally amend, modify and update the *Standards for Business Conduct* handbook and principles contained in the handbook.

I also acknowledge that the handbook is only a statement of principles for individual and business conduct and does not, in any way, constitute an employment contract or an assurance of continued employment.

_____
Signature

Kirton Charlotte Mulithe Rrton
Name (Please Print)

8/22/07        N 4E Renal Metabolic
Date            Department

2114
Last four numbers of
Social Security Number

D0220

D0221

*Alta Bates Summit Medical Center*

A Sutter Health Affiliate

# Alta Bates Summit Medical Center

## Receipt of Service Excellence and Recovery Standards:

This acknowledges that I have received and read a copy of the Medical Center

Service Excellence and Recovery Standards. I agree to adhere to these Standards.

Signed: _____  Dated 3/17/03

Printed Name: Charlotte Kiehn

Manager Name: Laurel Galletta

Unit/Dept: N 4E / Nursing  Campus _____

EXHIBIT 2

STAFFING

12/3/2005

I'VE BEEN WORKING AT SUMMIT MEDICAL CENTER AS A STAFF COORDINATOR SINCE 1999 AND STAFFING COORDINATOR SINCE 1986. AND ANY ALL STAFF THAT MAKE THEMSELVES AVAILABLE TO COME IN ON THEIR DAY OFF WILL ALWAYS ASK TO ONLY WORK ON THEIR UNIT. IF NOT THEY WILL COME IN OR THEY WILL NOT FLOAT AND USUALLY TRAVELERS OR SUPPLEMENTAL REGISTRY WILL FLOAT OFF. IF THERE ARE NONE TO FLOAT THE OPTION IS THAT OF THE NURSE.

SARAH QUISMONDO
STAFFING COORDINATOR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

    Plaintiff,    Case No.: C 07-05863
                           MHP

-vs-

ALTA BATES SUMMIT MEDICAL CENTER;
and DOES 1-20,

    Defendants.



DEPOSITION OF CHARLOTTE KIRTON

MARCH 28, 2008

8:06 A.M.

Reported by: LINDA VACCAREZZA, RPR, CRP, CLR,
           CSR NO. 10201

PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19229 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

PREFERRED REPORTERS
1-866-372-3376

2

```
 1           A P P E A R A N C E S
 2   FOR THE PLAINTIFF
 3   AMAMGBO & ASSOCIATES
     BY:  DANIEL ETOH, ESQUIRE
 4   7901 Oakport St. Suite 4900
     Oakland, California 94621
 5   (510) 615-6000
     detoh@amamgbolaw.com
 6
 7   FOR THE DEFENDANTS
 8   KAUFF, McCLAIN & McGUIRE
     BY:  MATTHEW C. VANDALL, ESQUIRE
 9   BY:  DANIELLE M. ELLIS, ESQUIRE
     One Post Street, Suite 2600
10   San Francisco, California 94104
     (415) 421-3111
11
12
13
14
15
16
17
18
19   ALSO PRESENT:  Jim De Angelis,
                    Alta Bates Medical Center
20
21   AT TAKEN:  KAUFF, McCLAIN & McGUIRE
                One Post Street, Suite 2600
22              San Francisco, California 94104
23
24
25
```

72

1    A    Extra shift.  It was not my regular day

2    to work, it was my day off.

3    Q    So you were being called in for an extra

4    shift, correct?

5    A    Yes.

6    Q    And the floating rules require that you

7    go to the top of the floating list when you get

8    called in on your day off, typically, right?

9    A    No.

10    Q    How is that not the case?

11    A    Because at Summit -- and I was there for

12    almost 15 years, so when they call you on your

13    day off and ask you to come in, you have an

14    option to stay home or come in and work.  And

15    most people, when they want to come in to work an

16    extra shift, they want to work on their own

17    unit.

18         So it's common practice to make deals

19    with staffing.  Okay, on my day off, I'll work --

20    I'll come in for my unit only.  That's common

21    practice.

22         MR. VANDALL:  Okay.  We have been going for

23    about an hour and a half.  Let's take a short

24    five-minute break, okay?

25         THE VIDEOGRAPHER:    In the deposition of

EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

          Plaintiff,                    Case No.: C 07-05863
                                                   MHP
-vs-

ALTA BATES SUMMIT MEDICAL CENTER;
and DOES 1-20,

          Defendants.



APR 14 2008

DEPOSITION OF CHARLOTTE KIRTON

MARCH 28, 2008

8:06 A.M.

Reported by:   LINDA VACCAREZZA, RPR, CRP, CLR,
               CSR NO. 10201

PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19229 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

PREFERRED REPORTERS
1-866-372-3376

1

```
 1                    A P P E A R A N C E S
 2
 3    FOR THE PLAINTIFF
 4    AMAMGBO & ASSOCIATES
      BY:  DANIEL ETOH, ESQUIRE
 5    7901 Oakport St. Suite 4900
      Oakland, California 94621
 6    (510) 615-6000
      detoh@amamgbolaw.com
 7
 8    FOR THE DEFENDANTS
 9    KAUFF, McCLAIN & McGUIRE
      BY:  MATTHEW C. VANDALL, ESQUIRE
10    BY:  DANIELLE M. ELLIS, ESQUIRE
      One Post Street, Suite 2600
11    San Francisco, California 94104
      (415) 421-3111
12
13
14
15
16
17
18
19    ALSO PRESENT:  Jim De Angelis,
                     Alta Bates Medical Center
20
21    AT TAKEN:  KAUFF, McCLAIN & McGUIRE
22              One Post Street, Suite 2600
                San Francisco, California 94104
23
24
25
```

139

1  Q    The units themselves determine how

2  floating is handled at Summit Medical Center,

3  correct?

4  A    Yes.

5  Q    Generally, there are two methods for

6  determining how floating is handled; by seniority

7  and by floating in turn; is that your

8  understanding?

9  A    By floating in turn.  Floating in turn.

10 Q    And seniority is the other way that it

11 can be handled?

12 A    No.  It's just usually floating in turn.

13 Q    At four east?

14 A    Yes.

15 Q    Four east practice, then, was to float

16 in turn, correct?

17 A    Yes.

18 Q    And that means there's a running list,

19 right?

20 A    Yes.

21 Q    And each time a nurse floats, her name

22 is taken from the top of the list, is that right,

23 and then put to the end of the list?

24 A    No.

25 Q    What is -- how is that not true?

140

1    A    When they float, they write their names

2    in.  And sometimes if they don't write their

3    names in, then their names won't get there.  So

4    that's the way four east did it when I was

5    there.

6              (Pause in proceedings.)

7              (Record read as follows:

8              Question:  And each time a

9         nurse floats, her name is taken

10        from the top of the list, is that

11        right, and then put to the end of

12        the list?

13             Answer:  No.

14             Question:  What is -- how is

15        that not true?

16             Answer:  When they float,

17        they write their names in.  And

18        sometimes if they don't write

19        their names in, then their names

20        won't get there.  So that's the

21        way four east did it when I was

22        there.)

23   BY MR. VANDALL:

24        Q    So who is in charge of the float list?

25        A    No one really.

141

1    Q    How does it work?

2    A    There's a book.  When someone floats,

3    they write their name down.

4    Q    And who -- how is it determined who

5    floats, the person at the top of the list?

6    A    No.

7    Q    That's not how it works?

8    A    When someone floats, they write their

9    name in the book.  But I don't think anybody is,

10   like, in charge of the book.  It's just there in

11   the drawer.

12   Q    So how do they know whose turn it is to

13   float?

14   A    Depends on the last, like, the last name

15   in the book, I think.

16   Q    The last name in the book?

17   A    Yeah.

18   Q    By alphabetically the last name?

19   A    No.

20   Q    What do you mean?

21   A    If James floated, then they need someone

22   to float the next night and James is there and,

23   say, Paula is there -- Paula won't float, because

24   she's PCC -- but just for example --

25   Q    What is PCC?

142

```
 1      A    The patient care --

 2      Q    -- coordinator?

 3      A    -- coordinator.  Yeah.  So that it would

 4    be Paula's turn to float because James already

 5    floated.

 6      Q    So let me back up and ask you a couple

 7    other questions.

 8      A    Okay.

 9      Q    So there is a list of names, people on

10    four east; is that right?

11      A    As far as the float book?

12      Q    Yes.

13      A    Okay.  There's a book with names in it.

14      Q    And they stay in order.  And what is

15    your understanding of how the floating works from

16    that perspective, relative to the actual list of

17    names?  Is that what you think that you're

18    explaining to me?  I'm having trouble

19    understanding what your understanding of the

20    floating is.

21      A    Okay.  So it doesn't go according to

22    seniority.

23      Q    In four east, I understand that.

24      A    It doesn't go in alphabetical order.

25      Q    Okay.
```

143

1    A    It goes according to the last time that

2   you floated, it reference to who is there.

3    Q    Okay.  But the names don't change on the

4   list?

5    A    No.

6    Q    Okay.  So it's a list that just exists,

7   and a supervisor or a nurse manager will look

8   through the list and decide who is there and who

9   last floated?

10   A    The supervisor and the manager don't

11  have anything to do with it; it's all about the

12  nurses.  That phone-in book is in the drawer, the

13  nurses are, you know, when they float, they write

14  their names in the book.  The charge nurse -- I

15  mean, the supervisor or the manager don't have

16  anything to do with the floating book.  It's in

17  the drawer.

18        When someone floats, they write their

19  name in the book.  And when the next person

20  float, they write their name in the book.  The

21  manager don't have anything to do with the book.

22  It's all -- the nurses are in control of the

23  book.

24   Q    So nurses decide on their own whether or

25  not they want to float; is that your testimony?

144

1    A    If it's their turn. We are pretty fair

2    about it, you know. If it's their -- if it's

3    their turn to float, then they'll float.

4    Q    Unless you don't want to, right?

5    A    Normally they float.

6    Q    Has anyone from the staffing office ever

7    communicated to you that deals are not made for

8    employees who are coming in on their day off not

9    to float?

10    A    Never.

11    Q    Has anyone ever communicated to you from

12    the staffing office that deals are not made at

13    all --

14    A    Never.

15    Q    -- regarding floating?

16    A    Never.

17    Q    How many times in your recollection --

18    strike that.

19    How often has it ever occurred that

20    someone has had a deal not to float and has been

21    asked to float, to your knowledge?

22    A    Once with Paula.

23    Q    Okay. Just the two times?

24    A    Yeah.

25    Q    And how many times -- do you have any

EXHIBIT 4

I Have been on 4B for over 10 years and it has always been a policy that if you are asked to come in on your day off, you can Let Staffing know that you are only available to work on 4B and if Something changes, you will not Float to another floor, but if you aren't needed for your floor, you can go home. in the Time I have been here, This has happened on a few occasions and The RN who came in extra either went home or a regularly scheduled person Floated

Payla J. Gann RN

Paula J. Gann RN

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

    Plaintiff,      Case No.: C 07-05863
                                      MHP

-vs-

ALTA BATES SUMMIT MEDICAL CENTER;
and DOES 1-20,

    Defendants.



DEPOSITION OF CHARLOTTE KIRTON

MARCH 28, 2008

8:06 A.M.

Reported by:  LINDA VACCAREZZA, RPR, CRP, CLR,
              CSR NO. 10201

PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19229 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

2

```
 1                  A P P E A R A N C E S
 2
 3   FOR THE PLAINTIFF
 4   AMAMGBO & ASSOCIATES
     BY:  DANIEL ETOH, ESQUIRE
 5   7901 Oakport St. Suite 4900
     Oakland, California 94621
 6   (510) 615-6000
     detoh@amamgbolaw.com
 7
 8   FOR THE DEFENDANTS
 9   KAUFF, McCLAIN & McGUIRE
     BY:  MATTHEW C. VANDALL, ESQUIRE
10   BY:  DANIELLE M. ELLIS, ESQUIRE
     One Post Street, Suite 2600
11   San Francisco, California 94104
     (415) 421-3111
12
13
14
15
16
17
18
19   ALSO PRESENT:   Jim De Angelis,
                     Alta Bates Medical Center
20
21   AT TAKEN:  KAUFF, MCCLAIN & MCGUIRE
22              One Post Street, Suite 2600
                San Francisco, California 94104
23
24
25
```

112

1    response?

2        A    Yes.  I guess.  I don't even remember

3    the question now.

4        Q    The question was:  Do you believe your

5    supervisor needs to explain to you why she issued

6    a directive for you to float to five east?

7        A    My supervisor -- like I said, if it was

8    a problem the first night and I was made aware of

9    that being a problem, being that that's what we

10   all do on our day off if we want to come in or

11   not, then it would not have been a second day.

12   It would not have been a second day.

13       Jennifer led me to -- Carol led me to

14   believe that that was fine.  She never said

15   anything else about floating.

16       Q    I'm going to strike that as

17   nonresponsive and ask you the question again.

18       Do you believe your supervisor needs to

19   explain to you why you were being asked to float

20   on any given time?

21       A    Yes.

22       Q    Why is that?

23       A    Because we all make deals at Summit on

24   our day off that was outside of the collective

25   bargaining agreement.

113

1   Q    Okay.  Other than you and Paula Gann,
2   can you tell me who else makes these deals?
3   A    Everybody.
4   Q    Who?
5   A    Carol, herself.  Carol Grappo, herself.
6   Q    Who else?
7   A    Faye.
8   Q    Faye.  What's Faye's last name?
9   A    I believe Borgiano, I think, something
10  like that.
11  Q    Who else?
12  A    Everybody that works in Summit.
13  Q    You're going to have to identify them.
14  A    Okay.  James, he works on four east.  I
15  don't remember his last name.
16  Q    Who else?
17  A    Rajwant Sidhu.
18  Q    Who else?
19  A    Remi.
20  Q    How do you spell that?
21  A    I don't know Remi's last name, but it's
22  R-e-m-i.
23  Q    All these individuals work on four east,
24  correct?
25  A    Yes.

EXHIBIT 5

1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

    Plaintiff,    Case No.: C 07-05863
                        MHP

-vs-

ALTA BATES SUMMIT MEDICAL CENTER;
and DOES 1-20,

    Defendants.

COPY

APR 1 4 200

DEPOSITION OF CHARLOTTE KIRTON

MARCH 28, 2008

8:06 A.M.

Reported by:  LINDA VACCAREZZA, RPR, CRP, CLR,
              CSR NO. 10201

PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19929 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

PREFERRED REPORTERS
1-866-372-3376

2

A  P  P  E  A  R  A  N  C  E  S

1

2   FOR THE PLAINTIFF

3   AMAMGBO & ASSOCIATES
    BY:   DANIEL ETOH, ESQUIRE
4   7901 Oakport St.. Suite 4900
    Oakland, California 94621
5   (510) 615-6000
    detoh@amamgbolaw.com
6

7   FOR THE DEFENDANTS

8   KAUFF, McCLAIN & McGUIRE
    BY:   MATTHEW C. VANDALL, ESQUIRE
9   BY:   DANIELLE M. ELLIS, ESQUIRE
    One Post Street, Suite 2600
10  San Francisco, California 94104
    (415) 421-3111

11

12

13

14

15

16

17

18

19  ALSO PRESENT:   Jim De Angelis,
                    Alta Bates Medical Center
20

21  AT TAKEN:   KAUFF, McCLAIN & McGUIRE
                One Post Street, Suite 2600
22              San Francisco, California 94104

23

24

25

181

1    Q    What exactly did Jennifer Stroud say to

2   you during that telephone conversation on

3   November 28th, 2005, which you contend was

4   harassing?

5    A    Okay.  Jennifer called, and if I'm not

6   mistaken, I think I had worked that night

7   before.  She called that morning and she said

8   what's this about you not floating or refusing to

9   float?  And I said -- this is the way I'm

10  remembering the conversation, I don't remember

11  word-for-word.  But I said something to the

12  effect of, I made a deal with staffing that I

13  would come in on my day off for my unit only.

14  Then she said, her exact words, "staffing doesn't

15  have the right to make deals."

16       I said, Jennifer, you know that's the

17  way we do it.  Because Jennifer hasn't been a

18  manager that long, we used to all work together.

19  I said, Jennifer, you know that's how we do it.

20  And I said, you need to be talking to staffing

21  then.  And she said, you're suspended, click, and

22  hung up the phone.

23   Q    Can you recall any other bits of that

24  conversation, other than what you've just spoken

25  about?

1    acceptable for a manager.  She hung up in my

2    face.  She lied saying we don't make those kind

3    of deals.  Her tone was not acceptable for a

4    manager.  And, yes, to me, that was harassing.

5    Q    Was there anything that she said that

6    indicated that she had a racial motivation?

7    A    No.

8    Q    So basically she was short with you on

9    the phone.  Short and you didn't appreciate her

10   tone and she hung up the phone before you were

11   finished speaking; is that the sum and substance

12   of the harassment claim against Jennifer Stroud

13   with respect to this call?

14   A    Yes.  Very rude.

15   Q    Did you have any other telephone calls

16   with Jennifer Stroud after that one?

17   A    No, not that I can recall.  No.  I

18   recall -- no.

19   Q    Is there anything else that you can

20   think of or recall about that telephone

21   conversation, other than what you've already

22   testified to?

23   A    No, not that I can recall.

24   Q    What is your national origin?

25   A    What race am I?

EXHIBIT 6

**Alta Bates Summit Medical Center**

A Sutter Health Affiliate

December 27, 2005

## Workers' Compensation Letter

Charlotte Kirton
416 B Street
Richmond, CA 94801

Dear Charlotte:

You notified the Disability Management Department of your need to take a leave from work due to a **work related injury**, and/or your need to extend your leave from a work related injury which prevents you from performing the essential functions of your position. You notified us that you need this leave or extension of leave to begin from **November 27, 2005** (see below for approved dates). The Medical Center **has received the Leave of Absence Request.**

Except as explained below, you may have the right under the federal Family Medical Leave Act (FMLA) and the California Family Rights Act (CFRA) for up to 12 weeks of unpaid leave in a 12-month period to care for your own serious condition. The Medical Center uses a rolling 12-month calendar preceding the request period to determine that you have actually worked 1,250 hours and have worked a minimum of 12 months. Under Medical Center Policy or your Collective Bargaining Agreement (CBA), you may take a leave of absence for a period not to exceed the earlier of (12) months or as allowed under your CBA for a leave of absence due to a work related injury. The Medical Center reserves the right to run concurrently all leave entitlements under FMLA/CFRA and/or Medical Center Policy and/or your CBA, and will be counted towards and deducted from any leave you may be entitled to the extent allowed by law.

**This is to inform you that:**

1.  Your leave or extension of leave **does** qualify under FMLA/CFRA entitlement
2.  Your leave or extension of leave does qualify under your Collective Bargaining Agreement (CBA) if applicable.
3.  Your leave or extension of leave for a work related injury has been approved starting **November 27, 2005** and ending once your treating physician releases you back to work on modified or full duties or your leave entitlement exhausts.
4.  You **have** requested to use your accrued PTO/Vacation time once your ESL/Sick time is exhausted. We will integrate your accrued ESL/Sick time with your TTD payments as appropriate.
5.  The Medical Center's policy requires that you must provide work status reports after every doctor's appointment. Failure to provide the work status reports will result in your leave being seen as unauthorized and is subject to discipline up to termination.
6.  If circumstances of your leave change or you are able to return to your regular work schedule earlier than anticipated, you are required to notify the Disability Management department as soon as possible.
7.  The Medical Center will continue your health insurance coverage until the earlier of depletion of your leave entitlement or a change in your employment status. If you lose coverage due to depletion of your leave entitlement or termination of employment, you will be notified of your right to continue coverage under COBRA.
8.  Failure to return to work on your scheduled return to work date will be considered voluntary termination of your employment.

> **YOU ARE RESPONSIBLE FOR REGULARLY COMMUNICATING WITH DISABILITY MANAGEMENT AND YOUR SUPERVISOR OR MANAGER REGARDING THE STATUS OF YOUR LEAVE AND WORK RELATED INJURY.**

If you have any questions, please don't hesitate to contact me @ 510/655-4000 ext. 4171.

Sincerely,

Yvette R. Gonzales
Disability Technician

Cc:    Manager
       File

EXHIBIT 7



*Alta Bates Summit*
*Medical Center*

A Sutter Health Affiliate

December 14, 2005

Ms. Charlotte Kirton, RN
416 "B" Street
Richmond, CA 94801

Re: Employment Status

Dear Ms. Kirton,

You were suspended on November 26, 2005. An investigation into the circumstances around your refusal to float has been completed.

Your Nurse Manager, Jennifer Stroud, has attempted unsuccessfully to contact you several times since December 8, 2005. Your voicemail is full and not accepting messages.

Therefore, we are notifying you that your employment with Alta Bates Summit Medical Center is being terminated effective with this letter dated December 14, 2005.

Your final paycheck and documents are being sent to you by certified mail.

If you have any questions please call your Manager or the number listed below.

Sincerely,

Jim De Angelis
Alta Bates Summit Medical Center
Employee & Labor Relations Specialist
Phone: 510-655-4000 ext. 4247

CC:   Jennifer Stroud, Nurse Manager
      Shawn Bartlett, C.N.A. Representative

530 Hawthorne Avenue
Oakland, CA 94609

EXHIBIT 8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

                    Plaintiff,          Case No.: C 07-05863
                                                    MHP
        -vs-

ALTA BATES SUMMIT MEDICAL CENTER;
and DOES 1-20,

                    Defendants.



APR 1 2008

DEPOSITION OF CHARLOTTE KIRTON

MARCH 28, 2008

8:06 A.M.

Reported by:  LINDA VACCAREZZA, RPR, CRP, CLR,
              CSR NO. 10201

PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19229 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

PREFERRED REPORTERS
1-866-372-3376

1

```
 1            A P P E A R A N C E S

 2   FOR THE PLAINTIFF

 3   AMAMGBO & ASSOCIATES

 4   BY:  DANIEL ETOH, ESQUIRE
     7901 Oakport St. Suite 4900
 5   Oakland, California 94621
     (510) 615-6000
 6   detoh@amamgbolaw.com

 7   FOR THE DEFENDANTS

 8   KAUFF, McCLAIN & McGUIRE

 9   BY:  MATTHEW C. VANDALL, ESQUIRE
     BY:  DANIELLE M. ELLIS, ESQUIRE
10   One Post Street, Suite 2600
     San Francisco, California 94104
11   (415) 421-3111

12

13

14

15

16

17

18

19   ALSO PRESENT:  Jim De Angelis,
                    Alta Bates Medical Center
20

21   AT TAKEN:  KAUFF, MCCLAIN & MCGUIRE
                One Post Street, Suite 2600
22              San Francisco, California 94104

23

24

25
```

103

1   a writing that you review and sign off with other

2   representatives?

3       A   Yes.

4       Q   Okay.   And do you have the opportunity

5   to bring a union representative with you to those

6   meetings?

7       A   Yes.

8       Q   And sometimes you do and sometimes you

9   don't bring a union representative, correct?

10      A   Yes.

11      Q   Okay.   And you have an opportunity to

12  provide your own comments on those written

13  notices, if you so choose; is that correct?

14      A   Yes.

15      Q   Okay.   So when you do not provide

16  written comments, is there any reason for that

17  generally?

18      A   It all depends on the circumstances.   It

19  all depends on how busy I am, when I'm called

20  into the office.

21      Q   You mentioned earlier that there was one

22  other nurse who had agreed to work on her unit on

23  a day off and she was sent home rather than

24  fired; is that right?

25      A   Yes.

1    Q    Who was that?

2    A    Paula Gann.

3    Q    Paula Gann?

4    A    Yes.

5    Q    She's one of your best friends at

6    Summit; is that right?

7    A    Actually, she's a very close coworker.

8    Q    What is her ethnicity?

9    A    I think she's American Indian.

10   Q    But you're not sure?

11   A    I believe she's American Indian.

12   Q    Is there any other nurse that you can

13   identify who attempted to adhere to the floating

14   policy that you've described, which is to say

15   that they came in on their day off and had an

16   agreement not to float and were sent home --

17   A    No.

18   Q    -- or terminated?

19   Q    So it's only happened twice?

20   A    To my knowledge.

21   Q    Can you go back in your mind to the

22   night of November 20th, 2005, when you first

23   refused to float?  Do you remember that time

24   period?

25   A    I never refused to float.

EXHIBIT 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLOTTE KIRTON,

          Plaintiff,          Case No.: C 07-05863
                                         MHP
-vs-

ALTA BATES SUMMIT MEDICAL CENTER;
and DOES 1-20,

          Defendants.



APR __ __

DEPOSITION OF CHARLOTTE KIRTON

MARCH 28, 2008

8:06 A.M.

Reported by:  LINDA VACCAREZZA, RPR, CRP, CLR,
              CSR NO. 10201

PREFERRED REPORTERS
CERTIFIED SHORTHAND REPORTERS
19229 Sonoma Highway, Suite 112
Sonoma, California 95476
Phone (707) 938-9227

1

2

A P P E A R A N C E S

1

2  FOR THE PLAINTIFF

3  AMAMGBO & ASSOCIATES
4  BY:  DANIEL ETOH, ESQUIRE
   7901 Oakport St. Suite 4900
5  Oakland, California 94621
   (510) 615-6000
6  detoh@amamgbolaw.com

7  FOR THE DEFENDANTS

8  KAUFF, McCLAIN & McGUIRE
   BY:  MATTHEW C. VANDALL, ESQUIRE
9  BY:  DANIELLE M. ELLIS, ESQUIRE
   One Post Street, Suite 2600
10 San Francisco, California 94104
   (415) 421-3111

11

12

13

14

15

16

17

18

19 ALSO PRESENT:  Jim De Angelis,
                 Alta Bates Medical Center
20

21 AT TAKEN:  KAUFF, McCLAIN & McGUIRE
             One Post Street, Suite 2600
22           San Francisco, California 94104

23

24

25

```
 1    Summit Medical Center?

 2    A    I did.

 3    Q    Okay.   Throughout which period of time?

 4    A    All the time.

 5    Q    So 2005 you were enjoying your job at

 6    Alta Bates Summit Medical Center?

 7    A    Yes.

 8    Q    In 2004 you were enjoying your job at

 9    Alta Bates Summit Medical Center?

10    A    Yes.

11    Q    2003 you were enjoying your job at Alta

12    Bates Summit Medical Center?

13    A    Yes.

14    Q    2002 you were enjoying your job at Alta

15    Bates Summit Medical Center?

16    A    Yes.

17    Q    And you were happy during all these

18    years?

19    A    I was happy with the people that I

20    worked with.   Yes.   The patients.

21    Q    So then when did you start to feel that

22    you were being discriminated against and

23    harassed?

24    A    From the first time I was terminated in

25    1996.   The first time I was terminated.
```

63

1    Q    Until 2002, when you were happy and

2    enjoying your job, there was a time period when

3    you were not happy and not enjoying your job?

4    A    I enjoyed my job at Summit.  I enjoyed

5    the people that I worked with.  I enjoyed the

6    patients.  But, no, I didn't enjoy the

7    suspensions and the harassment and the other

8    terminations, no.  I didn't.  But overall, I

9    loved my job at Summit.

10    Q    So were you happy or weren't you happy

11    at Summit?

12    A    I was happy in my job, with my job at

13    Summit.

14    Q    Okay.

15    MR. VANDALL:  I'm going to hand the court

16    reporter a document entitled "Charlotte Kirton

17    Responses to Defendant Alta Bates Summit Medical

18    Center's Request for Production of Documents."

19    It's going to be marked as first in order to your

20    deposition transcript.

21    (Exhibit 100 was marked for identification.)

22    BY MR. VANDALL:

23    Q    Do you have the document in front of

24    you?

25    A    I do.

EXHIBIT 10

SMART
D0964

File

# CONTRACTUAL PERFORMANCE APPRAISAL/COMPETENCY REVIEW

☑ Annual   ☐ Probationary   ☐ Other

**Employee Name:** Katen, Charlotte
**Employee #:** 5465
**Position Title:** Staff Nurse II

**Unit:** 4TC
**Department:** Renal Network N4G
**Review Period:** 2001
**Date Review Due/NUE:**
**Date Review Completed/NUE:** 5/1/01

**Reviewer's Name:** Jr V. Burgess RN 3870

**For HR Use Only**
Review: _____
Rating: _____
EE's Next Review Date: _____
Expiration Date: _____

**License Type**
RN — License #: 446074 — Expiration Date: 9/30/01

| Annual Requirements | Date Completed |
|---|---|
| Hospital/Dept. Specific Manual Review | May 2002 |
| deMedici (Safety) | |
| PPD (TB) Screening | May 2000 |
| BLS (if required) | 4/2000-01 |
| ACLS (if required) | |
| PBDS Assessment (if required) | |
| Dept. Specific Requirements (if app.) | |
| Other: | |
| 1 | |
| 2 | May 2000 |

**Age Specific Competencies** (✓ appropriate categories)
☐ Not Applicable
☐ All Age Groups   ☐ Adolescent (13 - 20 yrs)
☐ Neonate/Infant (up to 12 mos)   ☑ Adult (21 - 60 yrs)
☐ Pediatric/early childhood (1 - 12 yrs)   ☑ Older Adult (over 60 yrs)

**Job Specific Competencies** (✓ competency level satisfied – this
☐ Not Applicable
☑ Meets Standards
☐ Needs Improvement
☐ Does Not Meet Standards

**Summary of Performance:**
Job-Specific Competencies
**OVERALL POINTS:** _____

Commitment to the Organization: _____

**Employee's Comments** (a separate sheet may be attached): ☐ I agree/ ☑ I do not agree (circle one), with the overall appraisal of my performance.
As stated in my annual eval, I was asked to be in charge 5E during the strike + I did for 3 nws. A very stressful situation though I did my best and made the best out of a stressful situation. It is no way to be compared to the past when I am still trying to get over it. As stated in the meeting union grievances I was the victim who was victimized + obviously no one has accepted that I was suspended for 3 days + harassed by 3 months after wards.

**Reviewer's Comments:** _____ can we set on with the task at hand? grievance ____
The job description dated _____ on which this evaluation is based has been reviewed with the employee and is current.
Charlotte Katen
Pls. see reverse side of comments

D0965

Employee's Signature _____ Charlotte Kittu RN  1/1/01  Jk VB  5/1/01

Date

Reviewer's Signature _____  Date

Employee's signature does not infer agreement or disagreement with this performance appraisal. The signature merely signifies that employee was provided the opportunity to discuss their past performance and future development needs with the reviewer. (Reviewer: If employee does not sign, please indicate so on signature line.)

## CONTRACTUAL PERFORMANCE APPRAISAL/COMPETENCY REVIEW

| COMMITMENT TO THE ORGANIZATION | Rating 2 |
|---|---|
| 1. Applies the principles of Performance Improvement to support the Mission of the Medical Center. Provides compassionate care, respects the dignity of others and demonstrates a positive attitude toward the Medical Center, its services and staff. | 1 |
| 2. Is dependable in terms of attendance, punctuality and availability; adheres to work schedule. | 2.0 |
| 3. Performs all duties utilizing established protocols, guidelines, procedures, and policies of the Medical Center. | 2 |
| Total Points | 5.0 |

Comments: (Ratings other than "Meets Standards" require supporting comments.)

Charlotte continues to actively support the unit when short staffed by working extra shifts. Also for not recently accepted assigned task of being in charge for 3 nights in 5 EAST during nurses strike

## ACTION PLAN

This section must be completed if employee is rated at the "Does Not Meet" or "Needs Improvement" level for Commitment to Organization and/or Department and Job-Specific Competencies.

Pls. refer to Development Plan for Performance Improvement

D0967

Staff Nurse II Competency Checklist

| Competency Checklist | self assess | Competency date init | Codes | Comments | Reassess date init | codes | Reassess date init | codes |
|---|---|---|---|---|---|---|---|---|
| **Medication Administration** | | | | | | | | |
| Use of pumps and controllers | C | 5/1/01 | C | | | | | |
| IV administration of drugs | C | 5/1/01 | C | | | | | |
| Medication administration | C | 5/1/01 | C | | | | | |
| PCA for pain control | C | 5/1/01 | C | | | | | |
| **Nursing Process** | | | | | | | | |
| Physical Assessment | C | 5/1/01 | C | | | | | |
| Standards of Care/Plan of Care | C | 5/1/01 | C | | | | | |
| Patient Education | C | 5/1/01 | C | | | | | |
| **Patient Safety** | | | | | | | | |
| Restraint Procedure | C | 5/1/01 | C | | | | | |
| Falls Precautions/Seizure Precautions | C | 5/1/01 | C | | | | | |
| Universal Precautions | C | 5/1/01 | C | | | | | |
| **Respiratory Function** | | | | | | | | |
| Breath Sounds | C | 5/1/01 | C | | | | | |
| Oxygen Therapy | C | 5/1/01 | C | | | | | |
| Care of Pt with Chest Tubes | C | 5/1/01 | C | | | | | |
| **Resuscitation and Emergencies** | | | | | | | | |
| Checks Code Blue Cart | C | 5/1/01 | C | | | | | |
| Advance Directives | C | 5/1/01 | C | | | | | |
| Code Blue team member | C | 5/1/01 | C | | | | | |
| **Transfusions** | | | | | | | | |
| Transfusion Policy | C | 5/1/01 | C | | | | | |
| | | | | | | | | |

| Signature | initials |
|---|---|
| [signature] | CK |
| [signature] RN | [initials] |

| signature | initials |
|---|---|
| | |
| | |

Staff Nurse II Competency Checklist

Employee: CHARLOTTE KIRTON RN

Self Assessment Codes: (A) No experience (B) limited experience, (C) Competent

Competency Code: (C) Fully competent, (S) skill development needed, (I) improvement needed

Unit: NAE

BLS ______

ACLS ______

## Unit Orientation Checklist

| Topic | date |
|---|---|
| Unit/Hospital Tour | |
| Documentation System | |
| Physician On-Call System | |
| Forms and Paperwork | |
| Nurse call system | |
| Unit Organization/Routine | |
| MAPS | |
| Patient Belongings List | |

| Topic | date |
|---|---|
| Utilization of equipment | |
| Format of orientation/training | |
| Unit specific P&P, CQI | |
| Unit Resources | |
| Admit/transfer/discharge | |
| Emergency equipment, supplies, | |
| Unit Disaster Plan | |
| | |

| Competency Checklist *see unit specific competency checklist also | self assess | Competency date init | Competency Codes 5/1/01 | Comments | RE-ASSESS DATE INIT | RE-ASSESS CODES | REASSESS DATE INIT | REASSESS CODES |
|---|---|---|---|---|---|---|---|---|
| **INTERVENTIONS-INVASIVE** | | | | | | | | |
| Management of pt with NG/tube feedings | C | 5/1/01 | C | | | | | |
| Management of Pt on TPN | C | 5/1/01 | | | | | | |
| Management of CVL and Ports | C | 5/1/01 | | | | | | |
| Managing Vascular access for HD | C | 5/1/01 | | | | | | |
| Ostomy and wound care | C | 5/1/01 | | | | | | |
| Blood Glucose monitoring | C | 5/1/01 | | | | | | |
| Peripheral IV management | C | 5/1/01 | | | | | | |
| **INTERVENTIONS-NON INVASIVE** | | | | | | | | |
| Management of geriatric pt. | C | 5/1/01 | C | | | | | |
| Fluid and Electrolyte Balance | C | 5/1/01 | | | | | | |
| Patient Comfort Management | C | 5/1/01 | | | | | | |
| Management of Surgical Patient | C | 5/1/01 | | | | | | |
| Management of Cardiovascular Pt | C | 5/1/01 | | | | | | |
| Management of Respiratory Pt | C | 5/1/01 | | | | | | |
| Management of GI/GU pt | C | 5/1/01 | | | | | | |
| Management of Neuro/Ortho Pt | C | 5/1/01 | | | | | | |
| Management of Oncological Pt | C | 5/1/01 | | | | | | |
| Management of OB/GYN Pt | C | 5/1/01 | | | | | | |
| Management of Renal/Metabolic Pt | C | 5/1/01 | | | | | | |

D0968

Staff Nurse II Competency Checklist

Employee: Kirton Charlotte

Self Assessment Codes: (A) No experience, (B) limited experience, (C) Competent

Competency Code: (C) Fully competent, (S) skill development needed, (I) improvement needed

## Unit Orientation Checklist

| Topic | date |
|---|---|
| Unit/Hospital Tour | |
| Documentation System | |
| Physician On-Call System | |
| Forms and Paperwork | |
| Nurse call system | |
| Unit Organization/Routine | |
| MAPS | |
| Patient Belongings List | |

| Topic | date |
|---|---|
| Utilization of equipment | |
| Format of orientation/training | |
| Unit specific P&P, CQI | |
| Unit Resources | |
| Admit/transfer/discharge | |
| Emergency equipment, supplies, | |
| Unit Disaster Plan | |
| | |

Unit:

BLS

ACLS

| Competency Checklist *see unit specific competency checklist also | self assess | Competency date 4/20/02 Init TG | Codes | Comments | RE ASSESS DATE INIT | CODES | REASSESS DATE INIT | CODES |
|---|---|---|---|---|---|---|---|---|
| **INTERVENTIONS-INVASIVE** | | | | | | | | |
| Management of pt with NG/tube feedings | ✓ | C | | | | | | |
| Management of Pt on TPN | ✓ | C | | | | | | |
| Management of CVL and Ports | ✓ | C | | | | | | |
| Managing Vascular access for HD | ✓ | C | | | | | | |
| Ostomy and wound care | ✓ | C | | | | | | |
| Blood Glucose monitoring | ✓ | C | | | | | | |
| Peripheral IV management | ✓ | C | | | | | | |
| **INTERVENTIONS-NON INVASIVE** | | | | | | | | |
| Management of geriatric pt. | ✓ | C | | | | | | |
| Fluid and Electrolyte Balance | ✓ | C | | | | | | |
| Patient Comfort Management | ✓ | C | | | | | | |
| Management of Surgical Patient | ✓ | C | | | | | | |
| Management of Cardiovascular Pt | ✓ | C | | | | | | |
| Management of Respiratory Pt | ✓ | C | | | | | | |
| Management of GI/GU pt | ✓ | C | | | | | | |
| Management of Neuro/Ortho Pt | ✓ | C | | | | | | |
| Management of Oncological Pt | ✓ | C | | | | | | |
| Management of OB/GYN Pt | ✓ | C | | | | | | |
| Management of Renal/Metabolic Pt | ✓ | C | | | | | | |

D0933

D0957

Sample

# STAFF COMPETENCY TOOL FOR 2002
## 4 EAST, 5EAST

Employee _Charlotte Kitson_ Title _RN_ Unit _4 W_ Date _5-1-02_

Evaluated by _Tk Bongani R_

## RN EVALUATION

### CUSTOMER SERVICE

**PCC OBSERVES RN:**

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | Introduces self by name and title. |
| Yes ☑ | No ☐ | Maintains privacy, maintain eye contact. |
| Yes ☑ | No ☐ | Listens without interrupting. |
| Yes ☑ | No ☐ | Asks "is there anything more I can do for you before I leave room." |
| Yes ☑ | No ☐ | Uses communication techniques appropriate to the age of the patient. |

## SKIN & WOUND ASSESSMENT AND CARE:

**PCC OBSERVES RN:**

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | Doing a physical assessment of a patient's skin &/or wound. |
| Yes ☑ | No ☐ | RN makes appropriate & complete assessment. |
| Yes ☑ | No ☐ | RN utilizes age-appropriate techniques, tools, or equipment. |
| Yes ☑ | No ☐ | RN correctly identifies patients at high risk and knows to obtain. special bed, triple cream, and heel protectors. |

## PCC READS DOCUMENTATION OF RN OF AT AT LEAST ONE PATIENT WITH A WOUND AND A DRESSING CHANGE.

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | RN documents dressing change and wound appearance consistently. |
| Yes ☑ | No ☐ | Braden scale is documented and skin assessment sheet is initiated appropriately. |

D0958

## PAIN MANAGEMENT:

### PCC OBSERVES RN ASSESSING A PATIENT FOR PAIN

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | RN makes appropriate and completes assessment. |
| Yes ☐ | No ☐ | RN interprets data and modifies care appropriate to the age of the patient. |

### PCC READS DOCUMENTATION

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | RN documents completely assessment and intervention on two patients. |

## MAINTAINING THE ENVIRONMENT:

### PCC OBSERVES ROOM OF RN PATIENT:

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | No meds left at bed-side table and call light within reach. |
| Yes ☑ | No ☐ | When leaves room, removes all unused equipment from room. |

### COMPLETING REQUIRED INSERVICES/PAPERWORK:
RN AND C.N.A. COMPLETE PAPERWORK, EVALUATIONS, DEMEDICI, INSERVICES, COMPETENCIES BY DEADLINE.

D0952

# CONTRACTUAL PERFORMANCE APPRAISAL/COMPETENCY REVIEW

☒ Annual    ☐ Probationary    ☐ Other

**Employee Name:** Kirton, Charlotte

**Employee #:** 5165

**Position Title:** RN

**Review Period:** 2002

**Dept. Reviewed w/EE:** 5/1/02

**Dept. #:**

**Department:** Nursing

**Reviewer's Name:** Te Bulcavid

**Reviewer's EE#:** 3870

☐ * For HR use Only *

**Rating:** 8/02

**License Type:** RN

**License #:** 4160019

**Expiration Date:** 4/1/04

**EE's Next Review Date:**

**Certification Type:** CPR

**Evaluation Date:** 04/04

## Board Requirements

| Dates Completed |
|---|
| Hospital/Dept. Specific Manual |
| Review |
| de Medici (Safety) |
| PPD (TB) Screening |
| BLS (if required) |
| ACLS (if required) |
| PBDS Assessment (if required) |

Dept. Specific Requirements (if app.)
Other:
1
2

Dates Completed: 2001, 4/11-15/01, 4/23/01-5/01, 4/23/01-5/01

## Age Specific Competencies (Age related category)

| | |
|---|---|
| ☐ Not Applicable | ☒ Adolescent (13 - 20 yrs) |
| ☐ All Age Groups | ☒ Adult (21 - 60 yrs) |
| ☐ Neonate/Infant (up to 12 mos) | ☒ Older Adult (over 60 yrs) |
| ☐ Pediatric/early childhood (1 - 12 yrs) | |

## Job-Specific Competencies (✓ competency level & attach criteria list)

| | |
|---|---|
| ☐ Not Applicable | |
| ☒ Meets Standards | |
| ☐ Needs Improvement | |
| ☐ Does Not Meet Standards | |

## Summary of Performance

| Commitment to the Organization: | Job-Specific Competencies: | OVERALL POINTS: |
|---|---|---|

I concur / I do not concur (circle one) with the overall appraisal of my performance

**Employee's Comments** (a separate sheet may be attached)

**Reviewer's Comments** _____ on which this evaluation is based has been reviewed with the employee and is current.
The job description dated

Pls. per Minor pick for comments

_Employee's Signature_ _____ _Date_ 3/01/02

_Reviewer's Signature_ _____ 8/1/02

Employee's signature does not infer agreement or disagreement with the performance appraisal. The signature merely signifies that employee was provided the opportunity to discuss the evaluation performance and future development needs with the reviewer. (Reviewer: If employee does not sign, please indicate so on signature line.)

## CONTRACTUAL PERFORMANCE APPRAISAL/COMPETENCY REVIEW

| COMMITMENT TO THE ORGANIZATION | Rating |
|---|---|
| 1. Applies the principles of Performance Improvement to support the Mission of the Medical Center. Provides compassionate care, respects the dignity of others and demonstrates a positive attitude toward the Medical Center, its services and staff | 2 |
| 2. Is dependable in terms of attendance, punctuality and availability; adheres to work schedule. | 2 |
| 3. Performs all duties utilizing established protocols, guidelines, procedures, and policies of the Medical Center | 1 |
| **Total Points** | 5 |

**Comments:** (Ratings other than "Meets Standards" require supporting comments.)

Charlotte gives good support for the front sign-in when staff short staffed & willing to work other jobs. Able to balance unit & school c great desire for professional / career growth.

## ACTION PLAN

This section must be completed if employee is rated at the "Does Not Meet" or "Needs Improvement" level for Commitment to Organization and/or Department and Job-Specific Competencies

Pls. per developmental plan.

D0953

Staff Nurse II Competency Checklist

Employee: Charlotte Kirton

Self Assessment Codes: (A) No experience, (B) limited experience, (C) Competent

Competency Code: (C) Fully competent, (S) skill development needed, (I) improvement needed

## Unit Orientation Checklist

| Topic | date |
|---|---|
| Unit/Hospital Tour | C |
| Documentation System | ↓ |
| Physician On-Call System | ↓ |
| Forms and Paperwork | ↓ |
| Nurse call system | ↓ |
| Unit Organization/Routine | ↓ |
| MAPS | ↓ |
| Patient Belongings List | ↓ |

| Topic | date |
|---|---|
| Utilization of equipment | C |
| Format of orientation/training | ↓ |
| Unit specific P&P, CQI | ↓ |
| Unit Resources | ↓ |
| Admit/transfer/discharge | ↓ |
| Emergency equipment, supplies, | ↓ |
| Unit Disaster Plan | ↓ |
| | ↓ |

Unit:

BLS

ACLS

| Competency Checklist *see unit specific competency checklist also | self assess | Competency date 7/20/02 init | Codes | Comments | RE ASSESS DATE INIT | CODES | REASSESS DATE INIT | CODES |
|---|---|---|---|---|---|---|---|---|
| **INTERVENTIONS-INVASIVE** | | | | | | | | |
| Management of pt with NG/tube feedings | C | C | | | | | | |
| Management of Pt on TPN | C | ↓ | | | | | | |
| Management of CVL and Ports | C | ↓ | | | | | | |
| Managing Vascular access for HD | C | ↓ | | | | | | |
| Ostomy and wound care | C | ↓ | | | | | | |
| Blood Glucose monitoring | C | ↓ | | | | | | |
| Peripheral IV management | C | ↓ | | | | | | |
| **INTERVENTIONS- NON INVASIVE** | | | | | | | | |
| Management of geriatric pt. | C | C | | | | | | |
| Fluid and Electrolyte Balance | C | ↓ | | | | | | |
| Patient Comfort Management | C | ↓ | | | | | | |
| Management of Surgical Patient | C | ↓ | | | | | | |
| Management of Cardiovascular Pt | C | ↓ | | | | | | |
| Management of Respiratory Pt | C | ↓ | | | | | | |
| Management of GI/GU pt | C | ↓ | | | | | | |
| Management of Neuro/Ortho Pt | C | ↓ | | | | | | |
| Management of Oncological Pt | C | ↓ | | | | | | |
| Management of OB/GYN Pt | C | ↓ | | | | | | |
| Management of Renal/Metabolic Pt | C | ↓ | | | | | | |

D0949

D0929

# CONTRACTUAL PERFORMANCE APPRAISAL/COMPETENCY REVIEW

☐ Annual    ☐ Probationary    ☐ Other

**Employee Name** Kirson, Charlotte

**Employee #**

**Position Title** RN II

**Dept. #:** 6092

**Department** - NSG

**Review Period** 4/02 - 4/05

**Date Reviewed w/EE** 4/20/63

**Reviewer's Name** Paula J Gann RN Msc 213/5514

**Reviewer's EE#**

FOR HR USE ONLY

**EE's Next Review** 5 **Date:** 204

**Rating:**

| Release Type | License # | Expiration Date |
|---|---|---|
| RN | 440079 | 4/03 |
| NatSteller | | |

**Dates Completed**

| Annual Requirements | |
|---|---|
| Hospital/Dept. Specific Manual Review | |
| deMedici (Safety) | |
| PPD (TB) Screening | 3/03 |
| BLS (if required) | |
| ACLS (if required) | |
| PBDS Assessment (if required) | |
| Dept. Specific Requirements (if app.) | |
| Other: | |
| 1  HIPPA | |
| 2  Customer Service | |

**Age Specific Competencies (✓ appropriate category)**

☐ Not Applicable          ☐ Adolescent (13 - 20 yrs)
☐ All Age Groups          ☐ Adult (21 - 60 yrs)
☐ Neonate/Infant (up to 12 mos)   ☐ Older Adult (over 60 yrs)
☐ Pediatric/early childhood (1 - 12 yrs)

**Job-Specific Competencies (✓ competency level & attach criteria** list)

ACLS

☐ Not Applicable
☐ Meets Standards
☐ Needs Improvement
☐ Does Not Meet Standards

## Summary of Performance

| Commitment to the Organization: | 4 | Job-Specific Competencies | 4 | OVERALL POINTS: | 5 |
|---|---|---|---|---|---|

I concur / I do not concur (circle one) with the overall accuracy of my performance on which this evaluation is based/has been reviewed with the employee and is current.

**Employee's Comments** (a separate sheet may be attached)

She been making a great effort to annie on
fine to work + will continue to show
improvements.

**Reviewer's Comments**
The job description dated _____

Charlotte is an excellent RN with a high level of skill.
She is always willing to help out when needed. She add
extra shifts in order to help achieve core staffing
levels. She is a self-learn and will be receiving her BSN
in May. She continues to improve on punctuality

D0918

Employee: ------------

# Unit Orientation Checklist

| Topic | date |
|---|---|
| Unit/Hospital Tour | √ |
| Documentation System | N/A |
| Physician On-Call System | N/A |
| Forms and Paperwork | N/A |
| Nurse call system | N/A |
| Unit Organization/Routine | N/A |
| MAPS | √ |
| Patient Belongings List | √ |

Unit: 

| Topic | date |
|---|---|
| Utilization of equipment | N/A |
| Format of orientation/training | N/A |
| Unit specific P&P, COI | N/A |
| Unit Resources | √ |
| Admit/transfer/discharge | |
| Emergency equipment, supplies, | |
| Unit Disaster Plan | √ |

BLS

ACLS

Self Assessment Codes: (A) No experience, (B) limited experience, (C) Competent

Competency Code: (C) Fully completion, (S) Skill development needed, (I) Improvement needed

Competency Checklist: see unit specific competency checklist also

| self assess | Competency date 7/16/09 | Comments | RF ASSESS DATE INIT CODES | REASSESS DATE INIT CODES |
|---|---|---|---|---|
| **INTERVENTIONS INVASIVE** | Init PG- Codes | | | |
| C | Management of pt with NG/tube feedings | | | |
| C | Management of Pt on TPN | | | |
| C | Management of CVL and Ports | | | |
| C | Managing Vascular access for HD | | | |
| C | Ostomy and wound care | | | |
| C | Blood Glucose monitoring | | | |
| C | Peripheral IV management | | | |
| **INTERVENTIONS NON-INVASIVE** | | | | |
| C | Management of geriatric Pt. | | | |
| C | Fluid and Electrolyte Balance | | | |
| C | Patient Comfort Management | | | |
| C | Management of Surgical Patient | | | |
| C | Management of Cardiovascular Pt | | | |
| C | Management of Respiratory Pt. | | | |
| C | Management of GI/GU Pt. | | | |
| C | Management of Neuro/Ortho Pt. | | | |
| C | Management of Oncological Pt | | | |
| C | Management of OB/GYN Pt. | | | |
| C | Management of Renal/Metabolic Pt. | | | |

D0919

## Staff Nurse II Competency Checklist

| Competency Checklist | self assess | Competency date 7/4/04 init PG | Codes | Comments | Reassess date init | codes | Reassess date init | codes |
|---|---|---|---|---|---|---|---|---|
| **Medication Administration** | | | | | | | | |
| Use of pumps and controllers | C | C | | | | | | |
| IV administration of drugs | C | ↓ | | | | | | |
| Medication administration | C | ↓ | | | | | | |
| PCA for pain control | C | ↓ | | | | | | |
| **Nursing Process** | | | | | | | | |
| Physical Assessment | C | C | | | | | | |
| Standards of Care/Plan of Care | C | ↓ | | | | | | |
| Patient Education | C | ↓ | | | | | | |
| **Patient Safety** | | | | | | | | |
| Restraint Procedure | C | C | | | | | | |
| Falls Precautions/Seizure Precautions | C | ↓ | | | | | | |
| Universal Precautions | C | ↓ | | | | | | |
| **Respiratory Function** | | | | | | | | |
| Breath Sounds | C | C | | | | | | |
| Oxygen Therapy | C | ↓ | | | | | | |
| Care of Pt with Chest Tubes | C | ↓ | | | | | | |
| **Resuscitation and Emergencies** | | | | | | | | |
| Checks Code Blue Cart | C | C | | | | | | |
| Advance Directives | C | ↓ | | | | | | |
| Code Blue team member | C | ↓ | | | | | | |
| **Transfusions** | | | | | | | | |
| Transfusion Policy | C | C | | | | | | |
| | | | | | | | | |

| Signature | initials |
|---|---|
| [signature] | [initials] |
| P. Gam RN PCC | PG |

| signature | initials |
|---|---|
| | |
| | |

# STAFF COMPETENCY TOOL FOR 2002 - 2003
## 4 EAST, 5EAST

Employee __Karen Chuvalas__ Title __RN__ Unit __4E__ Date __4/18/03__

Evaluated by __Paula J. Gann RN MC__

## RN EVALUATION

### CUSTOMER SERVICE

PCC OBSERVES RN:

**MEETS STANDARD**

| Yes | No | |
|---|---|---|
| ☑ | ☐ | Introduces self by name and title. |
| ☑ | ☐ | Maintains privacy. |
| ☑ | ☐ | Listens without interrupting. |
| ☑ | ☐ | Asks "is there anything more I can do for you before I leave room." |
| ☐ | ☐ | Verbalizes understanding of LAST technique & gives example. |

### SKIN & WOUND ASSESSMENT AND CARE:

PCC OBSERVES RN:

**MEETS STANDARD**

| Yes | No | |
|---|---|---|
| ☑ | ☐ | Doing a physical assessment of a patient's skin &/or wound. |
| ☑ | ☐ | RN makes appropriate & complete assessment. |
| ☑ | ☐ | RN utilizes age-appropriate techniques, tools, or equipment. |
| ☑ | ☐ | RN correctly identifies patients at high risk and knows to obtain special bed, triple cream, and heel protectors. |

### PCC READS DOCUMENTATION OF RN OF AT LEAST ONE PATIENT WITH A WOUND AND A DRESSING CHANGE. Medical Record # _____ of class wound care

**MEETS STANDARD**

| Yes | No | |
|---|---|---|
| ☑ | ☐ | RN documents dressing change and wound appearance consistently. |
| ☑ | ☐ | Braden scale is documented and skin assessment sheet is initiated appropriately. |

D0937

**D0938**

## PAIN MANAGEMENT:

### PCC OBSERVES RN ASSESSING A PATIENT FOR PAIN

**MEETS STANDARD**

| Yes | No | |
|-----|-----|---|
| ☑ | ☐ | RN assesses pain before and after pain medication. |
| ☑ | ☐ | RN medicates patient within 10 minutes. |
| ☑ | ☐ | RN interprets data and modifies care appropriate to the age of the patient. |
| ☑ | ☐ | RN incorporates pain on plan of care as appropriate. |
| ☑ | ☐ | RN documents patient teaching related to pain on every patient on education plan. MR _100039_     MR. _655069_ |

## FALL PREVENTION:

### PCC OBSERVES DOCUMENTATION OF RN:

**MEETS STANDARD**

| Yes | No | |
|-----|-----|---|
| ☑ | ☐ | Fall assessment completed on admission. |
| ☑ | ☐ | Documentation in nurses notes of fall prevention method being utilized. |
| ☑ | ☐ | Care plan completed related to falls. |
| ☑ | ☐ | Patient and family education documented as related to falls. 2 MRs _051310_    _1620474_ |

### COMPLETING REQUIRED INSERVICES/PAPERWORK:
RN AND C.N.A. COMPLETE PAPERWORK, EVALUATIONS,
DEMEDICL, INSERVICES, COMPETENCIES BY DEADLINE.

D0932

Staff Nurse II Competency Checklist

| Competency Checklist | self assess | Competency date init Codes | Comments | Reassess date init codes | Reass date init |
|---|---|---|---|---|---|
| **Medication Administration** | | | | | |
| Use of pumps and controllers | | ✓ | | | |
| IV administration of drugs | | ✓ | | | |
| Medication administration | | ✓ | | | |
| PCA for pain control | | | | | |
| **Nursing Process** | | | | | |
| Physical Assessment | | ✓ | | | |
| Standards of Care/Plan of Care | | ✓ | | | |
| Patient Education | | ✓ | | | |
| **Patient Safety** | | | | | |
| Restraint Procedure | | ✓ | | | |
| Falls Precautions/Seizure Precautions | | ✓ | | | |
| Universal Precautions | | | | | |
| **Respiratory Function** | | | | | |
| Breath Sounds | | ✓ | | | |
| Oxygen Therapy | | ✓ | | | |
| Care of Pt with Chest Tubes | | | | | |
| **Resuscitation and Emergencies** | | | | | |
| Checks Code Blue Cart | | ✓ | | | |
| Advance Directives | | ✓ | | | |
| Code Blue team member | | | | | |
| **Transfusions** | | | | | |
| Transfusion Policy | | ✓ | | | |

Signature _____    initials ____

signature _____    initials ____

D0950

| Competency Checklist | self assess date | Init Codes | Comments | Reassess date codes init | Reassess date codes init |
|---|---|---|---|---|---|
| **Medication Administration** | | | | | |
| Use of pumps and controllers | ✓ | ✓ | | | |
| IV administration of drugs | ✓ | ↑ | | | |
| PCA for pain control | ✓ | ↑ | | | |
| **Nursing Process** | | | | | |
| Physical Assessment | ✓ | ✓ | | | |
| Standards of Care/Plan of Care | ✓ | ↑ | | | |
| Patient Education | ✓ | ↑ | | | |
| **Patient Safety** | | | | | |
| Restraint Procedure | ✓ | ✓ | | | |
| Falls Precautions/Seizure Precautions | ✓ | ↑ | | | |
| Universal Precaution is | ✓ | ↑ | | | |
| **Respiratory Function** | | | | | |
| Breath Sounds | ✓ | ✓ | | | |
| Oxygen Therapy | ✓ | ↑ | | | |
| Care of Pt with Chest Tubes | ✓ | ↑ | | | |
| **Resuscitation and Emergencies** | | | | | |
| Checks Code Blue Cart | ✓ | ✓ | | | |
| Advance Directives | ✓ | ↑ | | | |
| Code Blue team member | ✓ | ↑ | | | |
| **Transfusions** | | | | | |
| Transfusion Policy | ✓ | ✓ | | | |

| Signature | Initials | | Signature | Initials |
|---|---|---|---|---|
| | | | | |
| | | | | |

Staff Nurse II Competency Checklist

D0915

# CONTRACTUAL PERFORMANCE APPRAISAL/COMPETENCY REVIEW

☑ Annual  ☐ Probationary  ☐ Other

**Employee Name:** Kurtz Charlotte
**Employee #:** 23185110
**Position/Title:** RN II

**Dept. #:** 26185
**Department:** Summit N 4B
**Review Period:** 7/03 – 7/04
**Date Reviewed w/EE:** 7/9/04

**Reviewer's Name:** Paula J. Gann
**Reviewer's:** EE#: 2131554

**EE's Next Review Date:**  Rating: 1

**License Type:** R.N.  **License #:** 410079  **Expiration Date:** 9/30/05

**For HR Use Only**
Classification Types (check one)  Expiration Date:

### Mandatory Requirements

| | Date Completed |
|---|---|
| Hospital/Dept. Specific Manual Review | |
| de Medici (Safety) | 7/1/04 |
| PPD (TB) Screening | 02/1/04 |
| BLS (if required) | 05/04 |
| ACLS (if required) | 05/21/04 |
| PBDS Assessment (if required) | |
| Dept. Specific Requirements (if app.) | |
| Other: | |
| 1 | |
| 2 | |

### Job-Specific Competencies (Applicable Age Groups)

☑ Not Applicable

☐ All Age Groups         ☐ Adolescent (13 - 20 yrs)
☐ Neonate/Infant (up to 12 mos)   ☑ Adult (21 - 60 yrs)
☐ Pediatric/early childhood (1 - 12 yrs)  ☐ Older Adult (over 60 yrs)

### Job-Specific Competencies (Competency - check & attach criteria list)

☐ Not Applicable
☑ Meets Standards
☐ Needs Improvement
☐ Does Not Meet Standards

**OVERALL POINTS:** 4

| Summary of Performance | | |
|---|---|---|
| Commitment to the Organization. | Job-Specific Competencies | |
| 4 | 4 | 4 |

(Concur) Do not concur   circle one   with the overall appraisal of my performance

**Employee's Comments** (a separate sheet may be attached)

It is a pleasure to work with such knowledge able staff on 4 East staff is very motivating and during these stressful times of changes the staff and management on 4 East markes my job worth the effort.

**Reviewer's Comments** 4B  on which this evaluation is based has been reviewed with the employee and is current. The job description dated _____

Charlotte is highly skilled RN who continues to improve her knowledge base through higher education obtained Her BSN. She is working towards her MSN she is a team player who willingly shares new information with other staff members.

Cerner

D0922

# STAFF COMPETENCY TOOL FOR 2004 - 2005
## 4 EAST, 5EAST

Employee _Charlotte Krisel_  Title _RN_  Unit _N4E_  Date _7/4/04_

Evaluated by _Paula J. Elam RN PCC_

### RN EVALUATION

#### CUSTOMER SERVICE

PCC OBSERVES RN:

**MEETS STANDARD**

| Yes | No | |
|-----|----|--|
| ☑ | ☐ | Introduces self by name and title. |
| ☐ | ☐ | Maintains privacy. |
| ☑ | ☐ | Listens without interrupting. |
| ☑ | ☐ | Asks "is there anything more I can do for you before I leave room." |
| ☑ | ☐ | Verbalizes understanding of LAST technique & gives example. |

### SKIN & WOUND ASSESSMENT AND CARE:

PCC OBSERVES RN:

**MEETS STANDARD**

| Yes | No | |
|-----|----|--|
| ☑ | ☐ | Doing a physical assessment of a patient's skin &/or wound. |
| ☑ | ☐ | RN makes appropriate & complete assessment |
| ☑ | ☐ | RN utilizes age-appropriate techniques, tools, or equipment. |
| ☑ | ☐ | RN correctly identifies patients at high risk and knows to obtain special bed, triple cream, and heel protectors. |

PCC READS DOCUMENTATION OF RN OF AT LEAST ONE PATIENT WITH A WOUND
AND A DRESSING CHANGE.  Medical Record # _0952565_

**MEETS STANDARD**

| Yes | No | |
|-----|----|--|
| ☑ | ☐ | RN documents dressing change and wound appearance consistently. |
| ☑ | ☐ | Braden scale is documented and skin assessment sheet is initiated appropriately. |

C:\Documents and Settings\Parton\D1\My Documents\CBOLA\WORD FILES\Evaluations\Competency Files\STAFF COMPETENCY TOOL FOR 2002-2003.doc

1

## PAIN MANAGEMENT:

### PCC OBSERVES RN ASSESSING A PATIENT FOR PAIN

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | RN assesses pain before and after pain medication. |
| Yes ☑ | No ☐ | RN medicates patient within 10 minutes. |
| Yes ☑ | No ☐ | RN interprets data and modifies care appropriate to the age of the patient. |
| Yes ☑ | No ☐ | RN incorporates pain on plan of care as appropriate. |
| Yes ☑ | No ☐ | RN documents patient teaching related to pain on every patient on education plan. MR 1152465   MR. 1 2 4 1 9 7 0 |

## FALL PREVENTION:

### PCC OBSERVES DOCUMENTATION OF RN:

**MEETS STANDARD**

| | | |
|---|---|---|
| Yes ☑ | No ☐ | Fall assessment completed on admission. |
| Yes ☑ | No ☐ | Documentation in nurses notes of fall prevention method being utilized. |
| Yes ☑ | No ☐ | Care plan completed related to falls. |
| Yes ☑ | No ☐ | Patient and family education documented as related to falls. 2 MRs 1617935   0938233 |

## COMPLETING REQUIRED INSERVICES/PAPERWORK:
### RN, LVN AND C.N.A. COMPLETE PAPERWORK, EVALUATIONS, DEMEDICI, INSERVICES, COMPETENCIES BY DEADLINE.

C:\Documents and Settings\Patton\D1\My Documents\CEOLA\WORD FILES\Evaluations\Competency Files\STAFF COMPETENCY TOOL FOR 2002-2003.doc

2

D0923