C. DONALD AMAMGBO, ESQ SBN 164716
ALIEU ISCANDARI, ESQ SBN 184307
DANIEL ETOH, ESQ SBN 236563
NICK AGBO, ESQ SBN 236523
**AMAMGBO & ASSOCIATES, PLC**
7901 Oakport Street, Suite 4900
Oakland, CA 94621
Tel.   (510)615-6000
Fax.  (510)615-6025
EMAIL.  detoh@amamgbolaw.com

Attorneys for Plaintiff
**CHARLOTTE KIRTON**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE KIRTON;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ALTA BATES SUMMIT MEDICAL CENTER; and DOES 1 - 20,<br><br>　　　　　Defendants | CASE No. CV 07-05863 MHP<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT**<br><br>Action Filed: Oct. 22, 2007<br>Trial Date: None<br>Courtroom: 15, 18th Floor<br>Judge: Hon. Marilyn Hall Patel |

COME NOW, plaintiff Charlotte Kirton (Plaintiff) files this memorandum of points and authorities (MPA) in opposition to defendants motion for Summary Judgment (SMJ).

**I. Introduction**

Plaintiff's causes of action as endorsed in her complaint is for (1) discrimination, (2) Retaliation, (3) Breach of Covenant of Good Faith and Fair Dealing, (4) Intentional infliction of Emotional Distress, (5) Negligence, (6) Wrongful Termination, and (7) Harassment. As will be shown shortly, defendants assertion that plaintiffs claims are preempted by section 301 of the Labor Management Relations Act (LMRA) is without merit as the issues surrounding her claims will not necessitate the interpretation of the Collective Agreement, thereby rendering the six-month

statute of limitations set forth by section 301 LMRA in applicable. Further, plaintiff states that defendants request for partial summary judgment is equally without merit as far as plaintiff's first to 6 causes of action are concerned.

Plaintiff concedes that she has no evidence to substantiate her 7 cause of action for harassment at this time.

## II. Statement of the Facts

In or about April, 1992, plaintiff entered into an employment agreement with defendant, Alta Bates as a Clinical Nurse 1. Parts of the employment agreement were memorialized in writing by such things as defendants' letter of offer of employment, but not limited to, Summary of Benefits, Policies, Employee Handbook, Standards For Business Conduct Handbook, Service Excellence and Recovery Standards, Collective Bargaining Agreement and/or Practices. See decl. of Charlotte Kirton 2 and Exhibit 1 attached thereto. Plaintiff worked with defendant for several years until she was purportedly terminated in or about September of 1996. She was re-instated following an arbitration which found that plaintiff' purported termination was wrongful. See decl. of Charlotte Kirton 3. Plaintiff continued to work for defendant, Alta Bates and was elevated to Clinical Nurse 2 , until December 14, 2005 when she was terminated. See decl. of Charlotte Kirton 4. On November 20, 2005, plaintiff was on her day off, when she got a call from defendant's Staffing office to come and work an extra shift. She agreed to work the extra shift but with the rider that she will only work on her unit 4 East. The Staffing co-ordinator agreed to plaintiff's request. While working this extra shift, she was asked to float to another unit by Carol Grappo (who was in charge that night), she politely turned down the request and informed Carol of the agreement she had reached with Staffing in regards to working the extra shift that night. Carol seemed to have no problems with it as she said nothing about plaintiff floating that night. See decl. of Charlotte Kirton 5. The practice at Alta Bates is that when you are called to work extra shift you can make a deal with Staffing like plaintiff did on November 20, 2005 not to float to another unit. See decl. of Charlotte Kirton 6 and Exhibit 2 attached thereto. See also relevant portions of plaintiff's deposition testimony which forms part of Exhibit 2 page 72 lines 10 - 21.

In addition the units themselves determine how floating is handled at Summit Medical center. Floating is done in turns by the nurses and there is a float list. The floating is coordinated by the nurses in each unit and the decision on who is to float is determined from the list. They do this by checking

who last floated on the float list. See decl. of Charlotte Kirton 7 and Exhibit 3 attached thereto (this is plaintiff's deposition transcript pages 139 - 144. See also See decl. of Charlotte Kirton 8 and Exhibit 4 attached thereto.

Also attached as Exhibit 4 is a true and correct copy of a note by Paula Ganns also acknowledging the practice of making deals as above referred in paragraph 5. Again on November 21, 2005, while working an extra shift, plaintiff was asked by Carol Grappo (charge nurse for 4 East that night) to float to another unit, as on the previous occasion, plaintiff politely turned down the request and informed Carol of the agreement she had reached with Staffing in regards to her working the extra shift that night. Surprisingly, Carol Grappo called the night supervisor Ceann McNamara (a friend of hers) and informed her that plaintiff refused to float. The supervisor came over to the floor where plaintiff was, and without bothering to ascertain what happened asked her to go home. Plaintiff felt completely humiliated and embarrassed at the way she was treated by her Supervisor. See decl. of Charlotte Kirton 9. Plaintiff was still trying to recover from the shock of the incident of November 21, 2005, when she received a phone call from Jennifer Stroud, a Nurse Manager with defendant Alta Bates. She told plaintiff that she had called regarding the incidents of November 20 and 21, 2005. Whatever hope plaintiff had that the phone call by Ms. Stroud was to resolve the issue was dashed, when rather than asking to know exactly what happened, she was very short with plaintiff and told her that she was suspended, and hung up on her. See decl. of Charlotte Kirton 10 and Exhibit attached 5 thereto pages 181 lines 1 -22, and 183 lines 1 - 4. When plaintiff resumed work following her suspension, she could not concentrate, as she felt beaten down depressed and less-than owing to the conduct of defendant's employee's above described. See decl. of Charlotte Kirton 11.

The conduct of defendant Alta Bates employees as above described forced plaintiff to seek medical help and culminated in her filing for Worker's Compensation on or about December 2, 2005. Plaintiff was taken off work from November 27, 2005 following her filing of Worker's Compensation claim, until an "undetermined" period. See decl. of Charlotte Kirton 12 and Exhibit 6 attached thereto. Plaintiff was on leave of absence awaiting the outcome of her Worker's Compensation claim when she was terminated by defendant Alta Bates on December 14, 2005 for purportedly refusing to float on November 20, 21, 2005. See decl. of Charlotte Kirton 13 and Exhibit 7 attached thereto.

Defendants action in terminating plaintiff's employment for purportedly refusing to float is discriminatory and based on her race African American because Paula Ganns a Registered

Nurse like plaintiff of American Indian descent who was and still is an employee of defendant had refused to float in the past just as above described and was not fired. See decl. of Charlotte Kirton 14 and Exhibit 8 attached thereto, pages 103 lines 21 -25, and 104 lines 1 -20.

Defendant's action in terminating plaintiff's employment was in retaliation for her insistence on complying with the floating rules and for filing a Worker's Compensation claim as above stated. See decl. of Charlotte Kirton 15.

Plaintiff continued to work with defendant inspite of the discriminatory treatment she was receiving from her supervising nurses because she enjoy the people that she work with at Alta Bates. See decl. of Charlotte Kirton 16 and Exhibit 9 attached thereto pages 62 lines 1 - 20, 63 lines 4 - 5.  Plaintiff is an excellent Registered Nurse, always willing to help out, and a team player. Defendant have repeatedly acknowledged this as shown on the comments on her 2001, 2002, 2003, and 2004 employee/Nurse competency evaluations. See decl. of Charlotte Kirton 17 and Exhibit 10 attached thereto.

As a direct and proximate result of defendant's conduct, in terminating plaintiff's employment she has suffered damages which includes but is not limited to loss of earnings, and other employment benefits. See decl. of Charlotte Kirton 18.

### III. Legal Discussions

In ruling on a motion for Summary Judgment, the court must consider all of the evidence and all of the inferences reasonable drawn therefrom, and must view such evidence, in the light most favorable to the opposing party. A defendant moving for SMJ must present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain evidence. Where as here, the defendant moves for SMJ against the plaintiff, it must present evidence that would require a reasonable trier of fact not to find any underlying material fact more likely than not, otherwise it would not be entitled to judgment as a matter of law, but would have to present his evidence to the trier of fact. *Aguilar et al v. Atlantic Richfield Company et al* 25 Cal. 4th 826.4 Summary Judgment is a drastic measure depriving the losing party of trial on the merits; therefore, such procedure may not be invoked unless it is clear from the affidavits or declarations that there is no triable issue of fact. *Crescenta Valley Moss Lodge No. 808 v. Bunt* (1970), 2nd 8 Cal. App. 3d 682. Summary Judgment may be rendered only when no triable issue of fact is presented, and, if any triable issue of fact exists,

it is error for the trial court to grant a party's motion for summary judgment. *Robinson v. San Francisco* 1974, 1st Dist) 41 Cal. App. 3d 334.

**A. Defendant's Arguments that Plaintiff's Claims for Discrimination, Retaliation, Breach of Covenant of Good Faith and Fair Dealing, Intentional infliction of Emotional Distress, (Negligence, and Wrongful Termination is Preempted by LMRA Section 301 is Without Merit**

Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C.S. §§ 185(a), preempts a state-law claim if the resolution of that claim depends upon the meaning of a collective-bargaining agreement. A plaintiff's claim is the touchstone for this analysis; the need to interpret the collective bargaining agreement must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, preemption under §§ 301 of the LMRA is not mandated simply because the defendant refers to the collective bargaining agreement in mounting a defense. A reference to or consideration of the terms of a collective bargaining agreement is not the equivalent of interpreting the meaning of the terms. **Causes of action that only tangentially involve a provision of a collective-bargaining agreement are not preempted by §§ 301**. Nor are causes of action which assert nonnegotiable state-law rights independent of any right established by contract. **A discrimination claim need not be preempted merely because certain aspects of the collective bargaining agreement govern work assignments and discharges**. *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199 (9th Cir. 2007). Emphasis added.

Here, plaintiff's causes of action for racial discrimination, retaliation, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, and wrongful termination will not involve the intrepretation of the meaning of floating in the Collective Bargain Agreement (CBA). What we have here is a reference to the word floating in the CBA. In other words the CBA by itself does not prescribe how floating is to be done in this case. Defendant concedes this point in its MPA in support of its summary judgment motion page 7 lines 1 to 8 thereof quoting from the declaration of DeAngelis paragraph 13, it stated thus:

"Nurses may volunteer to float to any unit in the Hospital. Nurses may be required to float within the nursing areas outlined in Appendix A... **Floating shall occur according to the written guidelines established by staff nurses for each unit**"

Emphasis added. The emphasized language clealry shows that the floating rules are not contained in the CBA, but rather it is left to the staff nurses themselves to determine. Thus in determining plaintiff's causes of action for racial discrimination, retaliation, breach of covenant of good

faith and fair dealing, intentional infliction of emotional distress, negligence, and wrongful termination, so far as it touches on floating , the court will not have recourse to the CBA but to the guidelines as established by the staff nurses themselves. Plaintiff both in her declaration in opposition to this motion and her deposition testimony stated what defendant's floating policy is as far as her unit is concerned. See. See decl. of Charlotte Kirton  6 and Exhibit 2 attached thereto. See also relevant portions of plaintiff's deposition testimony which forms part of Exhibit 2 page 72 lines 10 - 21.

Also see decl. of Charlotte Kirton 7 and Exhibit 3 attached thereto (this is plaintiff's deposition transcript pages 139 - 144. See also See decl. of Charlotte Kirton  8 and Exhibit 4 attached thereto.

Furthermore, plaintiff's claims for racial discrimination and retaliation assert nonnegotiable state-law rights independent of any right established by contract unde the provisions of the California Fair Employment and Housing Act (FEHA).

From the foregoing, it is clear that defendants assertion that plaintiffs claims for  racial discrimination, retaliation, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, and wrongful termination  are preempted by section 301 of the Labor Management Relations Act (LMRA) is without merit as the issues surrounding her claims will not necessitate the interpretation of the Collective Agreement, thereby rendering the six-month statute of limitations set forth by section 301 LMRA in applicable.

**B. Defendants Request for partial Summary Judgment Is Equally Without Merit As Plaintiff Can Establish triable issues of fact as far as her claims for   racial discrimination, retaliation, breach of covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, and wrongful termination are Concerned**

**i. There is a triable issue of Fact as regards plaintiff's claim for racial discrimination**

California Government Code § 12940(a) provides that it shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: (a) For an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading

to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

The specific elements of a prima facie case of discrimination may vary depending on the particular facts. Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive.

*Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317 (Cal. 2000). Here it is not in dispute that plaintiff as African American is in a protected class. There is a trialbe issue of fact from the declaration of plaintiff and defendant as to whether she was performing her job as a registered nurse competently See decl. of Charlotte Kirton 17 and Exhibit 10 attached thereto. Clearly plaintiff's termination is an adverse employment action. See decl. of Charlotte Kirton 13 and Exhibit 7 attached thereto. The *Mcdonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. *Guz v. Bechtel Nat.*; Inc; 24 Cal. 4th 317 (Cal. 2000). Here there is equally a triable issue of fact whether plaintiff's termination was based on race since Paula Ganns an American Indian who refused to float was not terminated. See decl. of Charlotte Kirton 14 and Exhibit 8 attached thereto, pages 103 lines 21-25, and 104 lines 1-20.

### ii. Plaintiff can establish that her termination was Retaliatory

California Government Code § 12940(h) makes it an unlawful employment practice for an employer to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under the Fair Employment and Housing Act (FEHA) or because the person has filed a complaint, testified, or assisted in any proceeding under FEHA.

In other to establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a "protected activity", (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. *Iwekaogwu v. City of Los Angeles* (1999) 75 Cal. App. 4th 803, 814-815; *Flait v. North America Watch Corp.* (1992) 3 Cal App. 4th 467, 476.

It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory, even

- 7 -

when a court later determines the conduct was not actually prohibited by the FEHA. *Flait v. North America Watch Corp* supra, *Moyo v. Gomez* (9th Cir. 1994) 40 F. 3d 982, 985; *Gifford v. Atchison, Topeka & Santa Fe Ry. Co* ( 9th Cir. 1982) 685 F. 2d 1149, 1157. As the California Supreme Court recently noted in the case of *Elysa J. Yanowitz v. L'Oreal USA, Inc* 2005 36 Cal 4th 1028 " A rule that permits an employer to retaliate against an employee with impunity whenever the employee's reasonable belief turns out to be incorrect would significantly deter employees from opposing conduct they believe to the discriminatory".

Here the protected activity which plaintiff engaged in was her insistence on having defendant comply with the floating rules. See decl. of Charlotte Kirton 15.. As a result of which she suffered adverse employment action (her termination). Clearly there is a causal link between defendant's firing plaintiff and her protected activity. Plaintiff's letter of termination clearly stated that she was fired for refusing to float.See decl. of Charlotte Kirton 13 and Exhibit 7 attached thereto

### iii. Plaintiff can establish her claim for Breach of Covenant Good Faith and Fair Dealing

The nature of Covenant of Good Faith and Fair Dealing is that, if the cooperation of the other party is necessary for successful performance of an obligation, a promise to give that cooperation and not to do anything that prevents realization of the fruits of performance will often be implied. (Restat 2d of Contracts §205). "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (Rest.2d, Contracts §205);.

Defendant, breached this covenant with regard to plaintiff through its conduct in:

a. subjecting plaintiff to differential standards of conduct from other employees by discriminating against plaintiff based on her race as regards its floating policy; and

b. and by terminating plaintiff's employement despite her justifiable reason for not floating. See Charlotte Kirton 13 and Exhibit 7 attached thereto.

### iv. Plaintiff can establish her Claim for Intentional Infliction of Emotional Distress

The California Fair Employment and Housing Act (FEHA) does not provide the exclusive remedy for employment discrimination claims but that common law tort actions and other statutory actions also may be brought. *Silo v. CHW Med. Found.*, 27 Cal. 4th 1097 (Cal. 2002).

The tort of intentional infliction of emotional distress is comprised of three elements: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the defendant's outrageous conduct. *Cochran v. Cochran*, 65 Cal. App. 4th 488 (Cal. Ct. App. 1998).

There is no bright line standard for judging outrageous conduct and its generality hazards a case-by-case appraisal of conduct filtered through the prism of the appraiser's values, sensitivity threshold, and standards of civility. The process evoked by the test appears to be more intuitive than analytical. *Cochran v. Cochran*, 65 Cal. App. 4th 488 (Cal. Ct. App. 1998).

Defendant's conduct in refusing to abide by its floating policy and firing plaintiff while she was on leave of absence, as described above was extreme and outrageous, and went beyond all bounds of decency.

### v. Plaintiff's Claim for Negligence is not Preempted by the Workers' Compensation Law

The operative word of the exclusive provisions of the Worker's Compensation Law is where the "conditions of compensation exists, the right to recover compensation is "the exclusive remedy". *Labor Code § 3601*. The main condition for compensation is that the injury must be job-related because the touchstone of the Worker's Compensation system is injury which results in occupational disability. *Shoemaker v. Myers*, 52 Cal 3d. 1, 16.

Thus if the conduct cannot be viewed as the risk of employment it falls outside of the purview of the exclusivity rule. *Lopez v. Sikkema*, 229 Cal. App. 3d 31, 44. Clearly defendant's negligent conduct permitting discrimintion against plaintiff based on her, and reliating against her as already discussed above cannot be viewed as the risk of employment.

### vi. Plaintiff's Claim for Wrongful Termination is viable

Termination of employment in contravention of principles of public policy, whether statutory or nonstatutory, is conceptually a tortious act, not merely a breach of a contractual promise. *Koehrer v. Superior Court*, 181 Cal. App. 3d 1155 (Cal. Ct. App. 1986). California Government Code § 12920 makes it a contravention of public policy to terminate a person the basis of his race, religion creed, color, national origin, ancestry amongst others. That section provides thus: It is hereby declared as

the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation. It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general.

As already discussed above, defendants termination of plaintiff is in flagrant disregard of public policy. Plaintiff adopts those arguments completely in regards to his claim for wrongful termination.

### IV. Conclusion

For the reasons set forth above, defendants motion for summary judgment or partial summary judgment as far as plaintiff's claims for for racial discrimination, retaliation, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, negligence, and wrongful termination is without merit. Plaintiff therefore respectfully urge the court to deny the said motion in regards to those causes of action, and grant it in regards to the claim for harassment.

Dated: May 12, 2008                                  Respectfully Submitted
                                                     AMAMGBO & ASSOCAITES



                                                     By_____/S/_____
                                                           Daniel Etoh, Esq
                                                     Attorney for Plaintiff Charlotte Kirton